UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANARIA CABRERA,<br>  Turner Job Corps Center<br>  2000 Schilling Avenue<br>  Albany, Georgia 31705,<br><br>DEONDRE BURKES,<br>  Job Corps Center Dorms<br>  3300 20th Street<br>  Gulfport, Mississippi 39501,<br><br>MADDEX DAVIS-NEWMAN,<br>  37573 Old Highway 30<br>  Astoria, Oregon 97103,<br><br>ATHENA SASSER,<br>  Quentin N. Burdick Job Corps Center<br>  1500 University Avenue W<br>  Minot, North Dakota 58703,<br><br>LOGAN CHRISTENSEN,<br>  Quentin N. Burdick Job Corps Center<br>  1500 University Avenue W<br>  Minot, North Dakota 58703,<br><br>ABIGAIL SHAUGER,<br>  206 Breda Court<br>  Columbia, South Carolina 29212,<br><br>  and<br><br>C.D., a minor, by and through his next friend<br>TIFFANY DAVIS,<br>  Detroit Job Corps Center<br>  11801 Woodrow Wilson Street<br>  Detroit, Michigan 48206<br><br>        *Plaintiffs*, *on behalf of themselves and others similarly situated*,<br><br>            v.<br><br>U.S. DEPARTMENT OF LABOR,<br>  200 Constitution Avenue, NW | Civil Action No. 25-1909 |

Washington, DC 20210,

and

LORI CHAVEZ-DeREMER, in her official
capacity as Secretary of Labor,
200 Constitution Avenue, NW
Washington, DC 20210,

*Defendants*.

**CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. In 1964, Congress established the Job Corps, a system of "rural and urban residential centers" that provide youth "with education, vocational training, useful work experience" and other activities. Economic Opportunity Act of 1964, Pub. L. 88-452, §§ 101–110 (Aug. 20, 1964). Congress has maintained that program for more than sixty years, now under the auspices of the Department of Labor (DOL) and governed by the Workforce Innovation and Opportunity Act of 2014 (WIOA), 29 U.S.C. §§ 3191–3212.

2. "The objective of Job Corps is to support responsible citizenship and provide young people with the skills they need to lead to successful careers that will result in economic self-sufficiency and opportunities for advancement in in-demand industry sectors or occupations or the Armed Forces, or to enrollment in postsecondary education." 20 C.F.R. § 686.110. Under current law, Job Corps enrollment is limited to low-income individuals, ages 16 to 24, who face one or more specified barriers to employment, including homelessness. 29 U.S.C. § 3184. Job Corps currently serves approximately 25,000 young people around the country—more than 4,500 of whom were homeless before joining Job Corps and receiving housing through the program.

3. Congress appropriated more than $1.6 billion dollars for the Job Corps program in 2024. *See* Pub. L. No. 118-47, 138 Stat. 460, 631–32.

4.     At the start of 2025, there were 99 Job Corps centers throughout the country operated by contractors pursuant to two-year contracts. There are also twenty-five centers, known as Civilian Conservation Centers, owned and operated by the U.S. Department of Agriculture in partnership with Job Corps, which are not the subject of the actions challenged here. Participants in the programs at the contractor-operated centers receive education and training, as well as housing, a biweekly living allowance, and medical, dental, and mental health services.

5.     Recognizing the impact that the sudden termination of Job Corps activities has on participants and their communities, WIOA allows the Secretary of Labor to close any Job Corps center only after advanced notice and an opportunity for public comment, and requires the formal adoption by DOL of criteria to be used in determining when a Job Corps center "is to be closed and how to carry out such closure." 29 U.S.C. §§ 3209(j), 3211(c).

6.     Despite the requirements set by Congress, on May 29, 2025, Defendants, the Secretary of Labor and DOL, without undertaking the process required by law, announced that the 99 Job Corps centers were to be shut down by June 30, 2025, and "suspen[ded]" the Job Corps program.

7.     Defendants instructed contractors who operated Job Corps centers to immediately begin shuttering those centers—which they did. As a result, tens of thousands of at-risk young people around the country were told they would immediately, or by June 30, 2025, lose access to Job Corps education and training, their place to live, and their access to health care and other services. Plaintiffs here are just some of the many students who were affected by this unlawful action.

8.     Defendants may not unilaterally suspend a program mandated by statute. And Defendants may not unilaterally close any Job Corps center or group of centers without following

the procedures mandated by 29 U.S.C. §§ 3209(j) and 3211(c). Plaintiffs thus bring this class action on behalf of themselves and similarly situated Job Corps enrollees, seeking an order halting the unlawful, sudden closure of Job Corps centers, and setting aside the suspension of the Job Corps program.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States, namely, the United States Constitution and the Administrative Procedure Act (APA), 5 U.S.C. §§ 702, 706.

10. Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1)(A) because Defendants are an officer and agency of the United States and reside in this district.

## PARTIES

11. Plaintiff Anaria Cabrera is a student at Turner Job Corps Center in Albany, Georgia, and has resided there since December 2024.

12. Plaintiff Deondre Burkes is a student at Gulfport Job Corps Center in Gulfport, Mississippi, and has resided there since August 2024.

13. Plaintiff Maddex Davis-Newman is a student at Tongue Point Job Corps Center in Astoria, Oregon, and has resided there since June 2024.

14. Plaintiff Athena Sasser is a student at Quentin-Burdick Job Corps Center in Minot, North Dakota, and has resided there since April 2025.

15. Plaintiff Logan Christensen is a student at Quentin-Burdick Job Corps Center in Minot, North Dakota, and has resided there since May 2025.

16. Plaintiff Abigail Shauger is a student at Gerald R. Ford Job Corps Center in Grand Rapids, Michigan, and resided there from February 27, 2024, through May 30, 2025, when she was informed that the Center would shut down and she would not be able return.

4

17. Plaintiff C.D. is a minor student at Detroit Job Corps Center, and has resided there since November 2024. He brings this action by and through his mother, Tiffany Davis, who is qualified to serve as his next friend and who will fully and actively advocate for his interests.

18. Defendant United States Department of Labor is an agency of the United States, headquartered in Washington, DC.

19. Defendant Lori Chavez-DeRemer is Secretary of Labor and is sued in her official capacity.

## FACTUAL ALLEGATIONS

### A. Job Corps Background

20. Job Corps was created by the Economic Opportunity Act of 1964, as part of President Lyndon B. Johnson's War on Poverty. Pub. L. 88-452, §§ 101–110 (Aug. 20, 1964). The program was designed to reduce youth unemployment by providing young people with education and training that would "increase [their] employability." *Id*. § 101. Under the statute, the Office of Economic Opportunity was tasked with contracting with partners to establish and operate residential centers where enrollees would be provided with education, training, useful work experience, clothing and equipment, and recreational, medical, and health services. *Id.* §§ 102, 103, 105.

21. By statute, Job Corps is open to students who, among other requirements, are between 16 and 24 at time of enrollment, are low income, and require either high school or lower-level education or vocational training. *See* 29 U.S.C. § 3194. Job Corps provides enrollees with a wide variety of supports necessary to succeed and thrive including housing, meals, clothing, an allowance, health care, mental health counseling, health and wellness programs, transportation, and recreational activities. Students at Job Corps can pursue a high school diploma or high school

equivalency degree, and obtain career technical training and education in career success and workplace skills.

22. After program completion, Job Corps helps students find a job, obtain necessary licenses, and get housing, childcare, and other transitional supports appropriate to their situation and location. Job Corps graduates are eligible for those services for one year after their graduation, while those who leave without graduating are eligible for up to three months of services.

23. The first Job Corps center opened in January 1965, and while the program has greatly expanded and the responsibility for the program has been shifted to the Department of Labor, its basic structure remains the same. The current authorizing statute is the Workforce Innovation and Opportunity Act of 2014 (WIOA), which overhauled the nation's workforce development system. Pub. L. 113-128, 128 Stat. 1425 (July 22, 2014). In the Job Corps provisions of WIOA, Congress continued the program, while imposing new standards of conduct, revising enrollment criteria and procedure, updating the requirements for what services must be provided to enrollees, and adding a new performance accountability and management system. *Id.* §§ 141–162, *codified at* 29 U.S.C. §§ 3191–3212.

24. WIOA carried forward a provision from the Workforce Investment Act of 1998, Pub. L. 105-220 (1998), which had required DOL to involve interested parties in any decision to close a Job Corps center. That provision requires that DOL provide advance notice and the opportunity for public comment before closing any Job Corps center. 29 U.S.C. § 3209(j).

25. WIOA also requires DOL to establish and use written criteria "to determine when a Job Corps center … is to be closed and how to carry out such closure," and shall submit such criteria to the applicable House and Senate committees. 29 U.S.C. § 3211(c).

26. DOL has established such criteria, specifying that any decision to close Job Corps centers will be based on (1) "[a] methodology for selecting a center for closure based on its chronic low performance"; (2) "[a]n agreement between the Secretaries of Labor and Agriculture to close a [USDA-operated center]; (3) "[a]n evaluation of the effort required to provide a high-quality education and training program at the center"; or (4) a conclusion that "the deactivation of a center or group of centers" may advance efforts "to reform and strengthen the overall management and operation of the Job Corps program" "by focusing program resources on higher performing centers and improving student access to these centers, increasing cost efficiency, and enhancing the geographic match between student demand for the program and center availability." DOL, Employment & Training Admin., Notice, Job Corps Center Proposal for Deactivation, 84 Fed. Reg. 25071, 25072 (May 30, 2019) (adopting fourth criterion); *see* DOL, Employment & Training Admin., Notice, Updated Methodology for Selecting a Job Corps Center for Closure and Center Selected for Closure, 81 Fed. Reg. 12529, 12530–31 (Mar. 9, 2016) (adopting first three criteria).

27. DOL has also promulgated detailed regulations as to the funding and selection of center operators and service providers, 20 C.F.R. §§ 386.300–360; the recruitment, screening, selection, and assignment of young people to Job Corps centers, *id*. §§ 686.400–490; and the services that both Centers and DOL must provide to enrollees, *id.* §§ 686.500–760. DOL regulations also specify how the performance of Job Corps centers will be assessed and provide for the use of performance improvement plans where specific centers fall short. *Id.* §§ 686.1000–1070.

28. Congress has continued to appropriate funding for the Job Corps program. In the Further Consolidated Appropriations Act of 2024, Congress appropriated $1.6 billion for Job Corps operations, available for July 1, 2024, through June 30, 2025, and $123 million for the

construction, rehabilitation and acquisition of Job Corps centers, available for July 1, 2024, through June 30, 2027. Pub. L. 118-47, 138 Stat. 460, 631–32 (Mar. 23, 2024). These funding levels were maintained through September 30, 2025, in the operative Full-Year Continuing Appropriations and Extensions Act. Pub. L. 119-4, § 1101(a)(8), 139 Stat. 9, 11 (Mar. 15, 2025).

> **B.  Defendants' Closure of Job Corps Centers and Suspension of the Job Corps Program**

29. Despite these statutory provisions, Defendants began in March 2025 to take steps to end the Job Corps program. They terminated the background check process for new applicants, thereby effectively halting new enrollment. They terminated Career Transition Readiness (CTR) programs for students. They canceled all but three pending or outstanding Job Corps procurements. And they effectively terminated the provision of internet service to Job Corps centers.

30. On May 2, 2025, the President submitted to Congress his recommendations on discretionary funding levels for fiscal year 2026. *See* Letter from Russell T. Vought to Sen. Susan Collins, https://www.whitehouse.gov/wp-content/uploads/2025/05/Fiscal-Year-2026-Discretionary-Budget-Request.pdf. In those recommendations, he proposed to "eliminate[] Job Corps," referring to it as "a failed experiment to help America's youth." *Id.* at 28. *See also* Off. of Mgmt. & Budget, Technical Supplement to the 2025 Budget, Appendix, May 2025, at 638, https://www.whitehouse.gov/wp-content/uploads/2025/05/appendix_fy2026.pdf (calling for a "shutdown of the program").

31. Defendants did not wait for Congress, however. Instead, on May 29, 2025, Defendants informed the operators of every contractor-operated Job Corps center that they would be issuing stop work orders to every one of them. That same day, Defendants posted on DOL's website a press release announcing a "pause in operations" of each of the 99 contractor-operated Job Corps centers nationwide, to occur by June 30, 2025. DOL, News Release, US Department of

8

Labor Pauses Job Corps Center Operations, May 29, 2025. The release announced that DOL's "decision aligns with the President's FY2026 budget proposal"—*i.e.*, the recommendation to eliminate the program—and justified the shutdown of Job Corps based on "a startling number of serious incident reports and [an] in-depth fiscal analysis." The "analysis" referred to was a methodologically flawed "Transparency Report" that DOL had posted on its website only a few weeks earlier. In a document accompanying the release, DOL stated it was "paus[ing] operations at all centers" because "the Job Corps program has been in a financial crisis for years, creating constant uncertainty for participants and administrators." That document directed that all students would be "transfer[red] … back to their homes of record by June 30, 2025."

32. Over the next few days, Defendants sent termination and non-renewal notices to the operators of each of the 99 centers. These notices directed operators to "begin immediately all work necessary to provide a safe, orderly, and prompt shutdown of center operations." They also told contractors to advise students that "[t]he US Department of Labor has decided to terminate all Job Corps operations contracts at this time," and that "[t]here should be no expectation of transfer to another center or return to their current center."

33. While DOL has referred to its action as a "pause" or "suspension" of each of the 99 contractor-operated Job Corps centers, Defendants do not intend to resume Job Corps program operations or for any of the 99 Job Corps centers to be open after June 30, 2025.

34. Defendants did not publicly announce a "proposed decision to close" any of these Centers, provide an opportunity for interested individuals to submit written comments on the proposed closure, or inform the Members of Congress who represent the districts in which the centers are located of a proposed closure "in advance of any final decision to close the center," as required by 29 U.S.C. § 3209(j).

35.     Consistent with DOL's directives, Job Corps centers, including those at which Plaintiffs are enrolled, have begun to shut down. Some of those efforts have been temporarily halted as a result of a temporary restraining order issued in another case, currently set to expire on June 24, 2025. *See Nat'l Job Corps Ass'n v. DOL*, No. 25-cv-04641 (ALC), 2025 WL 1577843 (S.D.N.Y. June 4, 2025) (*NJCA*).

### C.     Plaintiffs' Enrollment at Job Corps and the Impacts of the Shutdown

36.     Plaintiff Anaria Cabrera enrolled in the Turner Job Corps Center in Albany, Georgia, in December 2024 to earn her high school diploma, learn a trade, and obtain skills that would help her secure a job and achieve success. She had previously enrolled in Job Corps in 2019, but was unable to complete the program because of the COVID-19 pandemic. She struggled to find housing and work, and re-enrolled in the program when it resumed. Since then, she has earned her high school diploma and obtained her driver's permit through programs at the Center. She had just started Job Corps' Certified Nurse Assistant (CNA) trade program when, on May 30, 2025, the Center's director announced that the Center would be closing within 30 days as a result of Defendants' actions. On June 3, 2025, the director announced that students would have to leave the center the following week, though that has now been delayed as a result of the *NJCA* temporary restraining order. On June 6, 2025, Ms. Cabrera was told she would be unable to move on to the next phase of her CNA program as her instructor had been terminated as part of the DOL-directed shutdown in operations. She does not know where she would live if she were forced to leave the Center's dorms, and would likely end up at a homeless shelter.

37.     Plaintiff Deondre Burkes enrolled in an electrician program at the Gulfport Job Corps Center in Gulfport, Mississippi, in August 2024, and has lived there since. On June 6, 2025, Center staff informed him the Center would shut down, and students would have to find alternative housing by June 11, 2025. The Center later extended this deadline to June 17, 2025, as a result of

10

the *NJCA* temporary restraining order. Nonetheless, the Center has ceased providing many services to help students obtain jobs, including placement services, interview coaching, transportation, and other services to help transition out of the program.

38. Plaintiff Maddex Davis-Newman enrolled at the Tongue Point Job Corps Center in Astoria, Oregon, in June 2024 to make a better life for himself. He found a passion for carpentry through the Job Corps program, which is one of the chief ways to obtain high-paying job in that field. As a result of Defendants' direction that the Tongue Point Center shutdown and the suspension of Job Corps program operations, his coursework had been halted, until the issuance of the temporary restraining order in the New York litigation. Center staff had also directed students to pack and be ready to leave no later than June 13, 2025. If the Tongue Point Center is shutdown and Job Corps program operations are suspended, he would not complete his training, obtain certifications, or receive the transitional services that he planned to use, and he would lose the housing and services on which he relies.

39. Plaintiff Athena Sasser enrolled in the Quentin N. Burdick Job Corps Center in Minot, North Dakota, in April 2025 to obtain training in carpentry and escape an abusive home. Plaintiff Logan Christensen enrolled in the Burdick Center for the first time in 2022, obtaining a certificate in food service, and, unable to find a food services position in Minot, re-enrolled in May 2025 to obtain a carpentry certificate. When Defendants announced the shutdown of the Job Corps centers and suspension of program operations, Sasser, Christensen, and their classmates were given only until June 4 to find another place to live. Sasser had to return to an abusive home. Although the Burdick Center has reopened in light of the temporary restraining order in the New York litigation, it is no longer providing medical and mental health care—Job Corps services on which Sasser and Christensen have relied. If the Burdick Center is shut down and Job Corps

11

program operations are suspended, Sasser and Christensen will be unable to complete their training programs, and will lose the housing and services on which they rely.

40. Plaintiff Abigail Shauger enrolled in the Gerald R. Ford Job Corps Center in Grand Rapids, Michigan, in February 2024, to earn her high school diploma and to secure housing. She earned her high school diploma with honors and was on track to complete her training in the Certified Nurse Assistant and Medical Administrative Assistant program by August 2025. She then planned to enroll in the Advanced Career Training program to earn a college degree. She also relied on Job Corps transportation to take her to physical therapy and mental health appointments. On May 30, 2025, when she was visiting family in Texas, she learned that the Center would shut down and she would not be able to return to her dormitory or training program. She has not been able to return since. If the Gerald R. Ford Job Corps Center remains shut down and Job Corps programs remain suspended, Shauger will be unable to complete her training program, and will lose the housing and services on which she has relied.

41. Plaintiff C.D. enrolled in the Detroit Job Corps Center in Detroit, Michigan, in November 2024, to earn his high school diploma and training in cable and network installation. At the end of the May, Center staff told him that the Center would close immediately and cease all programs, and that students needed to leave Center housing. He and a friend from the Center stayed with his mother in her temporary housing for two weeks, as they had nowhere else to go. The Center reopened in response to the temporary restraining order in the New York litigation. If the Detroit Job Corps Center closes and Job Corps programs are suspended, he will not be able to complete his education and training and continue to reside at the Center.

## CLASS ACTION ALLEGATIONS

42. Plaintiffs bring this action under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure on behalf of themselves and all other individuals similarly situated.

43. Plaintiffs seek to represent the following class (the Proposed Class):

> All individuals enrolled, as of May 29, 2025, in Job Corps programs at centers operated by contractors that were subject to the suspension of Job Corps program operations announced by the Department of Labor on that date.

44. The Proposed Class is so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). On information and belief, there were approximately 25,000 people enrolled in Job Corps as of May 29, 2025—the vast majority of whom were enrolled at the 99 Centers impacted by Defendants' suspension of Job Corps program operations.

45. The Proposed Class's claims turn on common questions of fact and law that are capable of class-wide resolution. *See* Fed. R. Civ. P. 23(a)(2). Specifically, the legality of Defendants' actions in closing all 99 Job Corps centers and indefinitely suspending Job Corps program operations may be resolved on a class-wide basis.

46. Plaintiffs' claims are typical of the claims of members of the Proposed Class. *See* Fed. R. Civ. P. 23(a)(3). Each class member's claims arise from the same course of events: Defendants' unlawful closure of Job Corps centers and suspension of Job Corps program operations. And absent injunctive relief, each class member has experienced or will experience the same injury: a loss of education, training, housing, and other services provided by Job Corps.

47. Plaintiffs will fairly and adequately represent the Proposed Class. *See* Fed. R. Civ. P. 23(a)(4). They seek a declaration and injunction that will benefit all members of the Proposed Class equally, requiring the reopening of all 99 Job Corps centers and the resumption of Job Corps program operations. Plaintiffs are aware of their obligations as class representatives and willing to dedicate the time and effort necessary to pursue this matter on behalf of every member of the Proposed Class.

48. Plaintiffs are represented by counsel with experience in administrative law and class-action litigation, and who are committed to zealously representing the class. *See* Fed. R. Civ. P. 23(a)(4), 23(g).

49. Defendants have acted on grounds that apply generally to the Proposed Class, violating the APA and WIOA in the same way as to all class members and subjecting all class members to the same unlawful closure of their Job Corps centers. Final injunctive relief and corresponding declaratory relief is therefore appropriate with respect to the Class as a whole. *See* Fed. R. Civ. P. 23(b)(2).

## CLAIMS FOR RELIEF

### COUNT I

**(Administrative Procedure Act – 5 U.S.C. § 706(2)(D) – Failure to Observe Procedure Required by Law)**

50. The APA directs courts to hold unlawful and set aside agency actions taken without observance of procedure required by law. 5 U.S.C. § 706(2)(D).

51. Defendants' closure of the 99 Job Corps centers attended by Plaintiffs and members of the proposed class constitutes final agency action.

52. Defendants did not follow the public notice and participation procedures required by 29 U.S.C. § 3209(j) prior to closing the 99 Job Corps centers.

### COUNT II

**(Administrative Procedure Act – 5 U.S.C. § 706(2)(A) – Action Contrary to Law – WIOA)**

53. The APA directs courts to hold unlawful and set aside agency actions that are contrary to law. 5 U.S.C. § 706(2)(A).

54. Defendants' closure of the 99 Job Corps centers and indefinite suspension of the Job Corps program constitute final agency actions.

55. Defendants' closure of the 99 Job Corps centers and indefinite suspension of Job Corps program operations is contrary to the provisions of WIOA which mandate the existence of the Job Corps program, 29 U.S.C. § 3193, and require DOL to ensure the provision of services to Job Corps enrollees, *id.* §§ 3197(c) 3198(a), 3199(a)–(c).

56. DOL's termination of all agreements to operate Job Corps centers without the intent to enter into any new agreements is contrary to 29 U.S.C. § 3197(a)(1).

57. DOL's closure of the 99 Job Corps centers without using the written criteria it had previously adopted for deciding whether to close a center or group of centers and how to carry out any such closure is contrary to 29 U.S.C. § 3211(c).

## COUNT III

**(Administrative Procedure Act – 5 U.S.C. § 706(2)(A) – Arbitrary and Capricious Action)**

58. The APA directs courts to hold unlawful and set aside agency actions that are found to be arbitrary and capricious. 5 U.S.C. § 706(2)(A).

59. Defendants' closure of Job Corps centers and indefinite suspension of the Job Corps program operations constitute final agency actions.

60. In deciding to close the 99 Job Corps centers and indefinitely suspend Job Corps program operations, Defendants failed to consider all relevant factors, including their own criteria for the closure of any center or group of centers, the interests of participants like Plaintiffs, the policies reflected in Congressional enactments, or less draconian alternatives to address Defendants' concerns or objectives.

61. Defendants' closure of Job Corps centers and indefinite suspension of Job Corps program operations were not the product of reasoned decisionmaking, and were arbitrary and capricious.

## COUNT IV

**(Administrative Procedure Act – 5 U.S.C. § 706(2)(B) – Action in Excess of Statutory Authority)**

62. The APA directs courts to hold unlawful and set aside agency actions that are in excess of statutory authority. 5 U.S.C. § 706(2)(B).

63. Defendants' indefinite suspension of Job Corps program operations constitutes final agency action.

64. Congress has established Job Corps and delegated to Defendants responsibility for implementing and operating the program. *See* 32 U.S.C. §§ 3191–3212.

65. Defendants lack authority to suspend or terminate the Job Corps program.

## COUNT V

**(Administrative Procedure Act – 5 U.S.C. § 706(2)(A) – Action Contrary to Law – Impoundment Control Act)**

66. The APA directs courts to hold unlawful and set aside agency actions that are not in accordance with law. 5 U.S.C. § 706(2)(A).

67. Defendants' impoundment of funds appropriated for Job Corps operations is a final agency action.

68. The Impoundment Control Act requires the executive to make appropriated funds "available for obligation" unless the President sends a special message to Congress detailing a request to rescind or reserve funds and Congress then passes a recission bill rescinding the funding. 2 U.S.C. § 683.

69. The President has not sent a special message to Congress requesting that the funds appropriated for Job Corps' operations be rescinded, and Congress has not rescinded the appropriations.

70. By refusing to spend funds that Congress has appropriated for Job Corps operations, Defendants have rescinded funds in a manner contrary to the Impoundment Control Act, in violation of the APA.

**DEMAND FOR RELIEF**

Plaintiffs respectfully demand that the Court:

A. Declare that Defendants' actions closing 99 Job Corps centers and suspending Job Corps program operations are unlawful;

B. Set aside the termination of the contracts for the 99 Job Corps centers and the "pause" of the Job Corps program;

C. Enjoin Defendants' efforts to close the 99 Job Corps centers, and order Defendants to take steps necessary to resume the functioning of the 99 Job Corps centers and Job Corps program operations;

D. Award Plaintiffs their costs, reasonable attorney's fees, and other disbursements as appropriate; and

E. Grant all further necessary or proper relief.

Dated: June 18, 2025

Respectfully submitted,

/s/ Adam R. Pulver
Adam R. Pulver (DC Bar No. 1020475)
Michael T. Kirkpatrick (DC Bar No. 486293)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

Arthur Ago (DC Bar No. 463681)
Aaron S. Fleisher*† (NY Bar No. 4431052)
Southern Poverty Law Center
1101 17th St. NW Ste. 705
Washington, DC 20036

17

Scott D. McCoy\* (FL Bar No. 1004965)
Sam Boyd\* (FL Bar No. 1012141)
Carli Raben\* (FL Bar No. 1036013)
Southern Poverty Law Center
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131

Michael Tafelski\* (GA Bar No. 507007)
Diego A. Soto\* (DC Bar No. 1029607)
Southern Poverty Law Center
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030

*Counsel for Plaintiffs*

\* *Motion for* pro hac vice *admission forthcoming*

† *Not admitted to practice law in DC*