**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ANARIA CABRERA, *et al.*,

    *Plaintiffs, on behalf of themselves and others similarly situated*,

        v.

U.S. DEPARTMENT OF LABOR, *et al.*,

    *Defendants*.

Civil Action No. 25-1909

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND STAY**

Arthur Ago (DC Bar No. 463681)
Aaron S. Fleisher*† (NY Bar No. 4431052)
Southern Poverty Law Center
1101 17th St. NW Ste. 705
Washington, DC 20036

Scott D. McCoy* (FL Bar No. 1004965)
Sam Boyd* (FL Bar No. 1012141)
Carli Raben* (FL Bar No. 1036013)
Southern Poverty Law Center
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131

Adam R. Pulver (DC Bar No. 1020475)
Michael T. Kirkpatrick (DC Bar No. 486293)
Public Citizen Litigation Group
1600 20th St. NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

Michael Tafelski* (GA Bar No. 507007)
Diego A. Soto* (DC Bar No. 1029607)
Southern Poverty Law Center
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030

*Counsel for Plaintiffs*

* *Motion for* pro hac vice *admission forthcoming*
† *Not admitted to practice law in DC*

June 18, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

FACTS .................................................................................................................. 5

I.     DOL unilaterally decided to close 99 Job Corps centers and suspend Job Corps operations. ........................................................................................................ 5

II.    Job Corps centers have begun to shutdown, terminating services to plaintiffs. ................. 7

LEGAL STANDARD ............................................................................................... 9

ARGUMENT .......................................................................................................... 10

I.     Plaintiffs are likely to succeed on the merits. .................................................... 10

     A.    Plaintiffs have shown a substantial likelihood of standing. .......................... 10

     B.    Plaintiffs are likely to succeed on the merits of their claims.......................... 11

          1.    DOL's actions are reviewable final agency actions................................. 11

          2.    DOL closed 99 Job Corps centers without complying with statutorily mandated procedures. ....................................................................... 13

          3.    DOL's closure of 99 Job Corps centers and indefinite suspension of the Job Corps program violated WIOA. .............................................. 14

          4.    DOL's closure of 99 Job Corps centers and indefinite suspension of the Job Corps program was arbitrary and capricious...................................... 15

          5.    DOL's indefinite suspension of the Job Corps program exceeded its statutory authority. ................................................................................. 17

          6.    DOL's indefinite suspension of the Job Corps program violated appropriations law. ................................................................................ 17

II.    Plaintiffs will suffer irreparable harm absent a preliminary injunction. .......................... 18

III.   The balance of equities and the public interest support the grant of a preliminary injunction. ....................................................................................................... 20

IV.   Nationwide relief without security is appropriate. ................................................. 20

CONCLUSION ....................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**

*AIDS Vaccine Advocacy Coalition v. United States Department of State*,
   No. CV 25-400 (AHA), 2025 WL 752378 (D.D.C. Mar. 10, 2025) ....................................... 18

*\*In re Aiken County*,
   725 F.3d 255 (D.C. Cir. 2013)..................................................................................... 14, 18

*American Federation of Teachers v. Department of Education*,
   No. CV SAG-25-628, 2025 WL 1191844 (D. Md. Apr. 24, 2025)........................................ 21

*American Radio Relay League, Inc. v. Federal Communications Commission*,
   524 F.3d 227 (D.C. Cir. 2008)................................................................................................ 15

*American Wild Horse Preservation Campaign v. Perdue*,
   873 F.3d 914 (D.C. Cir. 2017)................................................................................................ 15

*Aviel v. Gor*,
   No. CV 25-778 (LLA), 2025 WL 1009035 (D.D.C. Apr. 4, 2025) ......................................... 22

*Baker v. Masco Builder Cabinet Group, Inc.*,
   912 F. Supp. 2d 814 (D.S.D. 2012) ........................................................................................ 13

*\*Bennett v. Spear*,
   520 U.S. 154 (1997) ............................................................................................................... 11

*Biden v. Texas*,
   597 U.S. 785 (2022) ............................................................................................................... 11

*\*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) ............................................................................................................... 13

*Brown v. Artery Organization, Inc.*,
   654 F. Supp. 1106 (D.D.C. 1987)........................................................................................... 19

*\*Califano v. Yamasaki*,
   442 U.S. 682 (1979) ............................................................................................................... 20

*Career Colleges & Schools of Texas v. United States Department of Education*,
   98 F.4th 220 (5th Cir. 2024)................................................................................................... 20

*\*City of Arlington v. Federal Communications Commission*,
   569 U.S. 290 (2013) ............................................................................................................... 17

*Coalition for Basic Human Needs v. King,*
  654 F.2d 838 (1st Cir. 1981) ................................................................................. 19

*Cook County v. McAleenan,*
  417 F. Supp. 3d 1008 (N.D. Ill. 2019) .................................................................. 19

*\*Department of Commerce v. New York,*
  588 U.S. 752 (2019) ............................................................................................... 16

*\*Department of Education v. California,*
  145 S. Ct. 966 (2025) ............................................................................................ 13

*DSE, Inc. v. United States,*
  169 F.3d 21 (D.C. Cir. 1999) ................................................................................ 21

*Edwards v. Habib,*
  366 F.2d 628 (D.C. Cir. 1965) .............................................................................. 19

*Electronic Privacy Information Center v. Presidential Advisory Commission on Election*
  *Integrity,*
  878 F.3d 371 (D.C. Cir. 2017) .............................................................................. 10

*\*Encino Motorcars v. Navarro,*
  579 U.S. 211 (2016) ............................................................................................... 15

*Endo Par Innovation Co. v. Becerra,*
  No. CV 24-999 (TJK), 2024 WL 2988904 (D.D.C. June 10, 2024) ......................... 9

*Federal Communications Commission v. AT & T Inc.,*
  562 U.S. 397 (2011) ............................................................................................... 13

*\*Food & Drug Administration v. Wages & White Lion Investments, LLC,*
  145 S. Ct. 898 (2025) ............................................................................................ 15

*Franklin v. Massachusetts,*
  505 U.S. 788 (1992) ............................................................................................... 12

*Gomez v. Trump,*
  485 F. Supp. 3d 145 (D.D.C. 2020) ................................................................... 9, 20

*Green Oceans v. United States Department of the Interior,*
  No. 24-cv-00141-RCL, 2024 WL 3104945 (D.D.C. June 24, 2024) ......................... 9

*Guadamuz v. Ash,*
  368 F. Supp. 1233 (D.D.C. 1973) .......................................................................... 17

*Hardaway v. District of Columbia Housing Authority*,
843 F.3d 973 (D.C. Cir. 2016) ................................................................ 10

*International Dark-Sky Ass'n v. Federal Communications Commission*,
106 F.4th 1206 (D.C. Cir. 2024) ............................................................. 15

*J.W. Hampton, Jr. & Co. v. United States*,
276 U.S. 394 (1928) ............................................................................... 17

*League of United Latin American Citizens v. Executive Office of the President*,
No. CV 25-0946 (CKK), 2025 WL 1187730 (D.D.C. Apr. 24, 2025) .................... 21

*\*League of Women Voters of the United States v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ............................................................... 9, 20

*Local 2677, American Federation of Government Employees v. Phillips*,
358 F. Supp. 60 (D.D.C. 1973) .............................................................. 17

*\*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ............................................................................... 14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............................................................................... 10

*Lujan v. National Wildlife Federation*,
497 U.S. 871 (1990) ............................................................................... 12

*\*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982) ............................................................... 12

*Mexichem Specialty Resins, Inc. v. Environmental Protection Agency*,
787 F.3d 544 (D.C. Cir. 2015) .......................................................... 20, 21

*National Job Corps Association v. Department of Labor*,
No. 25-cv-04641 (ALC), 2025 WL 1577843 (S.D.N.Y. June 4, 2025) .................... 7

*Natural Resources Defense Council v. Morton*,
337 F. Supp. 167 (D.D.C. 1971) ............................................................ 22

*P.J.E.S. ex rel. Escobar Francisco v. Wolf*,
502 F. Supp. 3d 492 (D.D.C. 2020) ........................................................ 21

*Planned Parenthood South Atlantic v. Baker*,
941 F.3d 687 (4th Cir. 2019) ................................................................. 19

iv

*Prairie Protection Colorado v. USDA APHIS Wildlife Services*,
  No. 19-cv-2537-WJM-KLM, 2019 WL 4751785 (D. Colo. Sept. 30, 2019)...........................21

*Pursuing America's Greatness v. Federal Election Commission*,
  831 F.3d 500 (D.C. Cir. 2016).........................................................................................10

*Rhode Island v. Trump*,
  No. 1:25-cv-128-JJM-LDA, 2025 WL 1303868 (D.R.I. May 6, 2025) ...................................18

*Safari Club International v. Jewell*,
  842 F.3d 1280 (D.C. Cir. 2016).......................................................................................12

*Salazar v. King*,
  822 F.3d 61 (2d Cir. 2016) .............................................................................................12

*Simms v. District of Columbia*,
  872 F. Supp. 2d 90 (D.D.C. 2012)...................................................................................21

*Tootle v. Secretary of Navy*,
  446 F.3d 167 (D.C. Cir. 2006).........................................................................................12

*Transohio Savings Bank v. Director, Office of Thrift Supervision*,
  967 F.2d 598 (D.C. Cir. 1992).........................................................................................12

*United States Conference of Catholic Bishops v. U.S. Department of State*,
  No. 25-cv-00465 (TNM), 2025 WL 763738 (D.D.C. Mar. 11, 2025) ...................................12

*Utility Air Regulatory Group v. Environmental Protection Agency*,
  573 U.S. 302 (2014) .......................................................................................................17

*Washington v. Reno*,
  35 F.3d 1093 (6th Cir. 1994)...........................................................................................20

*\*Whitman-Walker Clinic, Inc. v. U.S. Department of Health and Human Services*,
  485 F. Supp. 3d 1 (D.D.C. 2020).....................................................................................19

*Widakuswara v. Lake*,
  No. 25-cv-1015-RCL, 2025 WL 1166400 (D.D.C. Apr. 22, 2025) .......................................21

**Statutes**

*2 U.S.C. § 683...............................................................................................................18

Administrative Procedure Act

  5 U.S.C. § 702 ...............................................................................................................11

5 U.S.C. § 704 ....................................................................................................... 11

*5 U.S.C. § 705 ....................................................................................................... 9

*5 U.S.C. § 706 ....................................................................................................... 11

28 U.S.C. § 1491(a)(1) ........................................................................................... 12

29 U.S.C. § 2899(g) (1998) ..................................................................................... 3

Workforce Investment and Opportunity Act of 2014, Pub. L. No. 113-128, 128 Stat. 1425 (July 22, 2014) ................................................................................................................. 3

*29 U.S.C. § 3193 ................................................................................................... 14

29 U.S.C. § 3194 ..................................................................................................... 18

*29 U.S.C. § 3197(a) ......................................................................................... 2, 14

*29 U.S.C. § 3197(c) .............................................................................................. 14

29 U.S.C. § 3197(d) ................................................................................................. 2

29 U.S.C. § 3198(a) ............................................................................................... 14

29 U.S.C. §§ 3199(a)–(c) ....................................................................................... 14

*29 U.S.C. § 3209(j) ...................................................................................... 3, 13, 14

*29 U.S.C. § 3211(c) ......................................................................................... 3, 14

Economic Opportunity Act of 1964, Pub. L. No. 88-452, 78 Stat. 508 (1964) ............................. 2

*Further Consolidated Appropriations Act of 2024, Pub. L. No. 118-47, 138 Stat. 460 (2024) .... 4

*Full-Year Continuing Appropriations and Extensions Act, Pub. L. No. 119-4, 139 Stat. 9 (2025) .................................................................................................................................... 5

Workforce Investment Act of 1998, Pub. L. No. 105-220, 112 Stat. 936 (Aug. 7, 1998) .............. 3

**Agency Rules and Regulations**

20 C.F.R. § 686.200(b) ............................................................................................. 4

20 C.F.R. §§ 686.300–360 ........................................................................................ 4

20 C.F.R. §§ 686.400–490 ............................................................................ 4

20 C.F.R. §§ 686.500–760 ............................................................................ 4

20 C.F.R. §§ 686.1000–1070 ........................................................................ 4

*Department of Labor, Employment & Training Admin., Notice, Job Corps Center Proposal for Deactivation, 84 Fed. Reg. 25071 (May 30, 2019) ............................................................ 4, 15

Department of Labor, Employment & Training Administration, Notice, Updated Methodology for Selecting a Job Corps Center for Closure and Center Selected for Closure, 81 Fed. Reg. 12529 (Mar. 9, 2016) ............................................................ 4

**Legislative History**

H.R. Rep. No. 105-93 (1998) ........................................................................ 3

H.R. Rep. No. 113-14 (2013) ........................................................................ 3

Workforce Innovation and Opportunity Act, 160 Cong. Rec. S3964-02 (June 25, 2014) ............ 3

**Other Authorities**

*Close*, Black's Law Dictionary (12th ed. 2024) .................................................... 13

*\*Close*, Merriam-Webster.com Dictionary (June 18, 2025), https://www.merriam-webster.com/dictionary/close .................................................... 13

Department of Labor, Job Corps Pause FAQs, May 29, 2025, https://www.dol.gov/sites/dolgov/files/OPA/newsreleases/2025/05/OSEC20250929.pdf ........ 6

Department of Labor, Job Corps Transparency Report 2025, Apr. 30, 2025, https://www.dol.gov/sites/dolgov/files/ETA/jobcorps/reports/JobCorps-Transparency-Report-2025.xlsx ........... 6, 16

*Department of Labor, News Release, *US Department of Labor Pauses Job Corps Center Operations* (May 29, 2025), https://www.dol.gov/newsroom/releases/osec/osec20250529 .. 5, 6

*Context for the Job Corps Transparency Report*, Nat'l Job Corps Ass'n (May 28, 2025), https://njcaweb.org/transparency-report-context .................................................... 16

* Office of Management and Budget, Technical Supplement to the 2025 Budget, Appendix (2025), https://www.whitehouse.gov/wp-content/uploads/2025/05/appendix_fy2026.pdf ........ 5

*Letter from Russell T. Vought, Director, Office of Management and Budget, to Sen. Susan Collins (May 2, 2025), https://www.whitehouse.gov/wp-content/uploads/2025/05/Fiscal-Year-2026-Discretionary-Budget-Request.pdf .......................................................................... 5

## INTRODUCTION

Where Congress creates and funds a program, and mandates that a federal agency administer it in accordance with specific statutory requirements, the Executive may not substitute its policy preferences and terminate that program. Here, Defendants the Department of Labor and the Secretary of Labor (collectively, DOL) have attempted to do just that with respect to the Job Corps program. As a result, Plaintiffs—a putative class of low-income young people enrolled in Job Corps across the country—are at imminent risk of losing, or already have lost, housing, health care, and job education and training upon which they rely. Preliminary injunctive relief and a stay pursuant to 5 U.S.C. § 705 are necessary to ensure that Plaintiffs are not irreparably harmed by Defendants' contravention of law.

Congress established the Job Corps program, granted DOL the authority to administer that program, and appropriated nearly $2 billion for that purpose. Among the mandatory duties delegated to DOL is the requirement to enter into agreements for the operation of residential Job Corps centers across the country, and to ensure that these centers provide services to vulnerable young people who face one or more specified barriers to employment. Although Congress did not mandate the operation of any particular center, DOL's authority to shut down existing centers is conditioned on the use of a public notice-and-comment process, and its adoption and use of specific criteria in deciding whether to do so.

Without engaging in the required process, DOL announced on May 29, 2025, the closure of all 99 Job Corps centers under its purview, and an indefinite suspension of Job Corps program operations effective June 30, 2025. In its announcement, DOL stated this action was in "alignment" with the President's proposal that Congress eliminate the Job Corps program and justified by what DOL referred to as a longstanding "financial crisis." As directed by DOL, these 99 Job Corps centers began the process of closing—terminating education and training programs, housing, and

health services provided to Plaintiffs and other Job Corps participants, and leaving many of them without a place to live. DOL's shuttering of the centers and its indefinite pause of the Job Corps program are arbitrary, capricious, and contrary to various provisions of the Workforce Investment and Opportunity Act of 2014 (WIOA). They also constitute an unlawful impoundment of appropriations for Job Corps program operations. Given the irreparable harm faced by Plaintiffs and the other equitable factors that weigh strongly in favor of preliminary injunctive relief and a section 705 stay, the Court should issue such relief to protect the proposed class and prohibit DOL from implementing its unlawful acts.[1]

## BACKGROUND

Job Corps was created by the Economic Opportunity Act of 1964, as part of President Lyndon B. Johnson's War on Poverty. Pub. L. 88-452, §§ 101–110, 78 Stat. 508, 508–11 (1964). The program was designed to reduce youth unemployment by providing young people with education and training that would "increase [their] employability." *Id*. § 101. The statute tasked the Office of Economic Opportunity with contracting with partners to establish and operate residential centers where enrollees would be provided with education, training, useful work experience, clothing and equipment, and recreational, medical, and health services. *Id.* §§ 102, 103, 105. The first Job Corps center opened in January 1965, and while the program has greatly expanded and the responsibility for the program has been shifted to DOL, its basic structure remains the same. Under current law, DOL is required to enter into contractual agreements for the operation of each Job Corps center, 29 U.S.C. § 3197(a), and may also enter into agreements with the Department of Agriculture for that Department to operate "Civilian Conservation Centers," *id.* § 3197(d).

---

[1] Plaintiffs are contemporaneously filing a motion requesting class certification.

2

In the Workforce Investment Act of 1998, Congress added a provision requiring DOL to undertake a notice-and-comment process "[p]rior to the closure of any Job Corps center." Pub. L. 105-220, § 159(g), 112 Stat. 936, 1020 (1998) (codified at 29 U.S.C. § 2899(g) (1998)). This provision was added to insure that "all Americans [have] the opportunity to have their voices heard regarding the possible loss of any of the [then-existing] invaluable Job Corps Centers." H.R. Rep. No. 105-93, at 553–54 (1998). While the closure of a Job Corps center had previously been committed to DOL's discretion, this provision sought to ensure that the decision to close any of the "scarce centers be closely scrutinized." *Id.*

This notice-and-comment requirement was carried over in WIOA, Job Corps' current authorizing statute. Pub. L. No. 113-128, § 159(j), 128 Stat. 1425, 1557–58 (July 22, 2014), *codified* at 29 U.S.C. § 3209(j)). WIOA also altered eligibility requirements, imposed new standards of conduct, revised enrollment criteria and procedure, updated the requirements for what services must be provided to enrollees, and added a new performance accountability and management system. *Id.* §§ 141–162, *codified at* 29 U.S.C. §§ 3191–3212; *see also* Workforce Innovation and Opportunity Act, 160 Cong. Rec. S3964-02 (Jun. 25, 2014) (Statement of the Managers to Accompany the Workforce Innovation and Opportunity Act); H.R. Rep. No. 113-14, at 93, 124–25 (2013). WIOA also required DOL to establish and use written criteria "to determine when a Job Corps center … is to be closed and how to carry out such closure." 29 U.S.C. § 3211(c).

Pursuant to this last statutory mandate, DOL has specified four criteria for closing a Job Corps center: "[a] methodology for selecting a center for closure based on its chronic low performance"; "[a]n agreement between the Secretaries of Labor and Agriculture to close a [USDA-operated center]"; "[a]n evaluation of the effort required to provide a high-quality education and training program at the center"; or a conclusion that "the deactivation of a center or

3

group of centers" may advance efforts "to reform and strengthen the overall management and operation of the Job Corps program … by focusing program resources on higher performing centers and improving student access to these centers, increasing cost efficiency, and enhancing the geographic match between student demand for the program and center availability." DOL, Employment & Training Admin., Notice, Job Corps Center Proposal for Deactivation, 84 Fed. Reg. 25071, 25072 (May 30, 2019) (adopting fourth criterion); *see also* DOL, Employment & Training Admin., Notice, Updated Methodology for Selecting a Job Corps Center for Closure and Center Selected for Closure, 81 Fed. Reg. 12529, 12530–31 (Mar. 9, 2016) (adopting first three criteria); 20 C.F.R. § 686.200(b) (2016) (recognizing DOL has "established procedures for making decisions concerning the … closing of contract centers").

DOL has also promulgated detailed regulations as to the funding and selection of center operators and service providers, 20 C.F.R. §§ 386.300–360; the recruitment, screening, selection, and assignment of young people to Job Corps centers, *id*. §§ 686.400–490; and the services that both centers and DOL must provide to enrollees, *id.* §§ 686.500–760. DOL regulations also specify how the performance of Job Corps centers will be assessed, and provide for the use of performance improvement plans where specific centers fall short. *Id.* §§ 686.1000–1070.

Congress has continued to authorize the Job Corps program. In the Further Consolidated Appropriations Act of 2024, Congress appropriated $1.6 billion for Job Corps Operations, available for July 1, 2024, through June 30, 2025, and $123 million for the construction, rehabilitation and acquisition of Job Corps Centers, available for July 1, 2024, through June 30, 2027. Pub. L. No. 118-47, 138 Stat. 460, 631–32 (2024). These funding levels have been maintained through September 30, 2025, in the operative Full-Year Continuing Appropriations

and Extensions Act. Pub. L. No. 119-4, § 1101(a)(8), 139 Stat. 9, 11 (2025). The President has not proposed the rescission of any funds appropriated for the operation of Job Corps.

FACTS

**I.     DOL unilaterally decided to close 99 Job Corps centers and suspend Job Corps operations.**

On May 2, 2025, the President submitted to Congress his discretionary funding level recommendations for fiscal year 2026. Letter from Russell T. Vought, Dir., Off. of Mgmt. & Budget, to Sen. Susan Collins (May 2, 2025), https://www.whitehouse.gov/wp-content/uploads/2025/05/Fiscal-Year-2026-Discretionary-Budget-Request.pdf. These recommendations proposed to "eliminate[] Job Corps," referring to it as "a failed experiment to help America's youth." *Id.* at 28; *see also* Off. of Mgmt. & Budget, Technical Supplement to the 2025 Budget, Appendix 638 (2025), https://www.whitehouse.gov/wp-content/uploads/2025/05/appendix_fy2026.pdf.

Less than four weeks later, without any Congressional action, DOL leadership "announce[d] that performance under the operations contracts at the 99 contractor-operated Job Corps Centers should be terminated immediately with all shutdown activities to be completed no later than June 30, 2025." Matz Decl. ¶ 12, *Nat'l Job Corps Ass'n v. DOL*, No. 25-cv-04641 (ALC) (S.D.N.Y. June 10, 2025), ECF 31 (submitted as Plaintiffs' Exhibit 1).[2] That same day DOL posted on its website a press release announcing a "pause in operations" of each of the 99 contractor-operated Job Corps centers nationwide, to occur by June 30, 2025. DOL, News Release, *US Department of Labor Pauses Job Corps Center Operations* (May 29, 2025), https://www.dol.gov/newsroom/releases/osec/osec20250529 (Ex. 2). The release stated that DOL's "decision aligns with the President's FY2026 budget proposal"—*i.e.*, the recommendation to eliminate the

---

[2] Except where stated otherwise, all exhibits are attached to the accompanying declaration of Adam R. Pulver.

program—and justified the shutdown of Job Corps based on "a startling number of serious incident reports and [an] in-depth fiscal analysis," referring to an April 2025 "Transparency Report" DOL had posted a few weeks earlier. *Id.* (referencing DOL, Job Corps Transparency Report 2025, Apr. 30, 2025, https://www.dol.gov/sites/dolgov/files/ETA/jobcorps/reports/JobCorps-Transparency-Report-2025.xlsx). In an accompanying document, DOL referred to "the suspension of program operations," and explained it was "paus[ing] operations at all centers" because "the Job Corps program has been in a financial crisis for years, creating constant uncertainty for participants and administrators." DOL, Job Corps Pause FAQs (Ex. 3), at 1–2, https://www.dol.gov/sites/dolgov/files/OPA/newsreleases/2025/05/OSEC20250929.pdf. DOL directed that all students be "transfer[red] … back to their homes of record by June 30, 2025." *Id.*

Over the next few days, Defendants sent termination and non-renewal notices to the operators of each of the 99 centers. *See* Ex. 1 (Matz Decl.) ¶ 13. These notices directed center operators to immediately halt all work except that "necessary to provide a safe, orderly and prompt shutdown of center operations." Letter from Jillian Matz to Susan Larson (May 29, 2025) (Ex. 4) at 1. Such "shutdown work" was to be completed by June 30, 2025. *Id.*; *see also* Letter from Jillian Matz to General Collins (May 29, 2025) (Ex. 5) at 1 (directing center operator "to commence immediately an orderly shutdown of operations"). In these notices, DOL directed that "every departing student must be told, 'The US Department of Labor has decided to terminate all Job Corps operations contracts at this time.'" Ex. 4 at 7; Ex. 5 at 3. DOL also directed that "[t]here should be no expectation of transfer to another center or return to their current center." *Id.* Before taking these actions, Defendants did not announce a proposal to close any of these 99 centers, did not provide an opportunity for comment on such closures, and did not inform the Members of Congress who represent the districts in which the centers are located of a proposed closure.

On June 3, 2025, the National Job Corps Association (a trade association that includes Job Corps contractors), five individual Job Corps contractors, and a student at a New York Job Corps center, commenced a suit in the United States District Court for the Southern District of New York challenging DOL's actions with respect to the program, and sought a temporary restraining order and preliminary injunction. *See* Compl., *NJCA v. DOL*, No. 25-cv-04641 (S.D.N.Y. June 3, 2025) ECF 19. The next day, that court issued a temporary restraining order, prohibiting DOL from taking steps to effectuate "the elimination of the Job Corps program, including the stop work orders and termination and non-renewal notices delivered to Job Corps center operators starting May 29, 2025." *NJCA*, 2025 WL 1577843, at *1 (S.D.N.Y. June 4, 2025). That court held a hearing on the plaintiffs' request for a preliminary injunction on June 17, 2025, and took the matter under submission, while extending the temporary restraining order until and including June 25, 2025. Minute Order, *NJCA*, ECF 54 (S.D.N.Y. June 17, 2025).

## II.    Job Corps centers have begun to shut down, terminating services to Plaintiffs.

In response to DOL's directives, Job Corps centers around the country have begun to shut down, putting Plaintiffs at imminent risk of significant harm.

Plaintiff Anaria Cabrera is a student enrolled and living at the Turner Job Corps Center in Albany, Georgia. Cabrera Decl. ¶ 3. On May 30, 2025, the Center's director announced to students and staff that Job Corps operations were paused, and students must leave within 30 days, but that DOL could force the center to shut earlier. *Id.* ¶ 9. Students were later told they had to leave the following week, June 13, 2025, though that was put on hold due to the *NJCA* temporary restraining order. *Id.* ¶ 10. On June 6, 2025, Ms. Cabrera was told that she would not be able to move onto the next phase of her Certified Nurse Assistant program, due to the shutdown of program operations. *Id.* ¶ 12. While Center staff has discussed transporting students to their "homes of record," there

has been little information about what people like Ms. Cabrera, who do not have homes to return to, should do. *Id.* ¶ 13.

Plaintiff Deondre Burkes is a student enrolled and living at the Gulfport Job Corps Center in Gulfport, Mississippi. Burkes Decl. ¶ 2. On June 6, 2025, Center staff informed him the Center would shut down and students would have to find alternative housing by June 11, 2025. *Id.* ¶ 4. The Center later extended this deadline to June 17, 2025, as a result of the *NJCA* temporary restraining order. *Id.* ¶ 5. Nonetheless, the Center has ceased providing many services to help students obtain jobs, including placement services, interview coaching, transportation, and otherwise transition out of the program. *Id.* ¶ 7.

Plaintiff Maddex Davis-Newman lives and studies at the Tongue Point Job Corps Center in Astoria, Oregon. Davis-Newman Decl. ¶ 2. After DOL directed the centers to close, his coursework was halted until the issuance of the *NJCA* temporary restraining order. *Id.* ¶ 6. Center staff had also directed students to pack and be ready to leave no later than June 13, 2025, *id.* ¶¶ 5–6—a deadline paused due to the *NJCA* temporary restraining order.

Plaintiffs Athena Sasser and Logan Christensen are students enrolled and living at the Quentin N. Burdick Job Corps Center in Minot, North Dakota. Sasser Decl. ¶ 2; Christensen Decl. ¶ 2. On May 29, 2025, staff at that center told them, and every other student, that they would need to find alternative housing by June 4. Sasser Decl. ¶ 7; Christensen Decl. ¶ 5. Ms. Sasser had no choice but to return to an abusive home she was only able to leave due to the Job Corps program. Sasser Decl. ¶ 8. Mr. Christensen went to stay with family and knows that at least one student had no home to go to and therefore had to sleep on the street. Christensen Decl. ¶ 6. While they and other Quentin Burdick students were able to return to center housing and resume their studies as a result of the *NJCA* temporary restraining order, the Center has not resumed the provision of health

care services, on which Ms. Sasser, Mr. Christensen, and others rely. *See* Sasser Decl. ¶ 9; Christensen Decl. ¶ 7.

Plaintiff Abigail Shauger lived and studied at the Gerald R. Ford Job Corps Center in Grand Rapids, Michigan. Shauger Decl. ¶ 2. On May 30, 2025, while visiting family in Texas, she was advised that that Center was shutting down and that she would not be able to return to her dormitory or resume her training. *Id.* ¶ 9. Despite the *NJCA* temporary restraining order, that Center remains closed. *Id.* ¶ 14.

As is explained by his mother and next friend, Plaintiff C.D. lives and studies at the Detroit Job Corps Center in Detroit, Michigan. Davis Decl. ¶ 2. In late May 2025, students there were told that the Center would shut down by June 30, 2025. *Id.* ¶ 10. The next day, Center staff informed students that all classes and services were canceled, and that they would have to find alternative housing that day. *Id.* C.D. was able to stay with his mother in temporary housing for approximately two weeks until the Center reopened in response to the *NJCA* temporary restraining order. *Id.* ¶¶ 13–14.

## LEGAL STANDARD

Courts consider the same four factors in determining whether to grant a preliminary injunction pursuant to Rule 65(a), and whether to grant a stay pursuant to 5 U.S.C. § 705. *See Endo Par Innovation Co., LLC v. Becerra*, No. CV 24-999 (TJK), 2024 WL 2988904, at *3 (D.D.C. June 10, 2024); *Green Oceans v. U.S. Dep't of the Interior*, No. 1:24-cv-00141-RCL, 2024 WL 3104945, at *2 n.3 (D.D.C. June 24, 2024); *Gomez v. Trump*, 485 F. Supp. 3d 145, 168 (D.D.C. 2020). "A movant must show (1) likely success on the merits; (2) likely irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tips in its favor; and that (4) the injunction is in the public interest." *Endo Par*, 2024 WL 2988904, at *3 (citing *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016)). In actions to enjoin the government, the

9

final two preliminary-injunction factors—balancing the equities and the public interest—merge. *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016).

## ARGUMENT

I.    **Plaintiffs are likely to succeed on the merits.**

A.    **Plaintiffs have shown a substantial likelihood of standing.**

A plaintiff seeking a preliminary injunction must show "a substantial likelihood of standing." *Elec. Privacy Inf. Ctr. v. Pres. Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017). Here, each named plaintiff, as well as all of the members of the proposed class, satisfy this requirement. Plaintiffs have suffered, or will imminently suffer, a loss of training, vocational services, housing, and health services as a result of the Defendants' actions to terminate Job Corps program operations and to shut the Job Corps centers in which they were enrolled. Cabrera Decl. ¶¶ 13–14; Burkes Decl. ¶¶ 7–10; Davis-Newman Decl. ¶¶ 7–9; Sasser Decl. ¶¶ 8–11; Christensen Decl. ¶¶ 7–10; Shauger Decl. ¶¶ 11–13; Davis Decl. ¶¶ 14–15. These losses are both "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical," as required to constitute an injury-in-fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *cf. Hardaway v. D.C. Housing Auth.*, 843 F.3d 973, 978 (D.C. Cir. 2016) (recognizing that "plaintiffs have long been empowered to challenge the rescission of government benefits in federal court"). They are also traceable to the challenged actions, without which Plaintiffs would still be receiving the services that they are now being denied. Finally, Plaintiffs' injuries are redressable by an order of this Court setting aside the unlawful suspension of Job Corps program operations and closures of the centers at which they are enrolled, and requiring that the program resume and that the centers reopen.

**B.    Plaintiffs are likely to succeed on the merits of their claims.**

The Administrative Procedure Act (APA) provides for judicial review of final agency actions, 5 U.S.C. §§ 702, 704, and directs courts to vacate such actions if they are, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C); or "without observance of procedure required by law," *id.* § 706(2)(D). Plaintiffs are likely to show that DOL's actions should be set aside under these standards.

**1.    DOL's actions are reviewable final agency actions.**

Plaintiffs challenge two separate, but related, final agency actions: (1) the closure of 99 Job Corps centers, and (2) the indefinite suspension of Job Corps program operations. Both are final agency actions reviewable under section 704 of the APA.

DOL's actions are final because they reflect "the consummation of the agency's decisionmaking process" and are ones "from which legal consequences flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). DOL has told Center Operators to terminate all operations by June 30, 2025, and to direct students not to have any "expectation of transfer to another center or return to their current center." *See*, *e.g.*, Ex. 4 at 1, 7. And DOL's actions plainly have legal consequences—ending any possibility of Plaintiffs receiving Job Corps program services from not only current Job Corps center operators, but from anyone else. *Cf. Biden v. Texas*, 597 U.S. 785, 802 (2022) (recognizing that an action that binds agency "staff by forbidding them to continue [a] program" is final). DOL's description of its termination of Job Corps program operations as both a "pause" and a "suspension," Ex. 3, does not make that act non-final. Even if such a suspension *were* temporary—which DOL plainly does not intend given its contemporaneous reference to the President's proposal to eliminate the Job Corps program—that "does not undermine the fact that

the decision to suspend or not suspend is a final agency action because the action had an immediate and substantial impact upon" Plaintiffs, among others. *Salazar v. King*, 822 F.3d 61, 83 (2d Cir. 2016) (cleaned up); *see also Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1289 (D.C. Cir. 2016) (holding that indefinite suspension of processing permits was a final agency action because it was "was not a 'moving target,' but a 'final and binding determination'" (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992))). Further, that DOL ordered the shutdown of 99 Job Corps centers at once does not make its action nonreviewable. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 n.2 (1990) (recognizing that a "specific order or regulation, applying some particular measure across the board" is a final agency action).

In addition, although DOL has carried out its decisions to shut down 99 Job Corps centers and suspend Job Corps programs operations in part by terminating contracts, the Tucker Act, 28 U.S.C. § 1491(a)(1), which directs to the Court of Federal Claims certain disputes concerning government contracts, does not apply here. Plaintiffs' claims are not "disguised contract claims." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 969 (D.C. Cir. 1982). And while the cancellation of contracts is one way in which Defendants effected their unlawful decision to terminate the Job Corps program, even a dispute that implicates a contract "may be heard in district court if it still 'stems from a statute or the Constitution.'" *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, No. 1:25-cv-00465, 2025 WL 763738, at *4 (D.D.C. Mar. 11, 2025) (quoting *Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609 (D.C. Cir. 1992)). Here, Plaintiffs' claims derive from WIOA, not from a contract with the federal government; indeed, they would not be able to bring any claims at all in the Court of Federal Claims based on the termination of contracts held by Job Corps contractors. *See Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006) ("categorically reject[ing] the suggestion that a federal district court can be deprived of jurisdiction

12

by the Tucker Act when no jurisdiction lies in the Court of Federal Claims"). In addition, proceeding in district court is appropriate because the relief that Plaintiffs seek is injunctive—relief that is not available in the Court of Federal Claims. *See Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) ("[A] district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds." (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988))).

## 2. DOL closed 99 Job Corps centers without complying with statutorily mandated procedures.

Under 29 U.S.C. § 3209(j), DOL is required to undertake a notice and comment procedure "prior to the closure of any Job Corps center." DOL did not do so as to any of the 99 Job Corps centers that DOL has ordered to shut down by June 30, 2025. Any argument that DOL has not "closed" any of the 99 Job Corps centers as that term is used in the statute is specious.

Where, as here, "a statute does not define a term, [courts] typically give the phrase its ordinary meaning." *FCC v. AT & T Inc.*, 562 U.S. 397, 403 (2011) (cleaned up). To "close" something is "to suspend or stop the operations of" it. *Close*, Merriam-Webster.com Dictionary (June 18, 2025), https://www.merriam-webster.com/dictionary/close; *see Close*, *Black's Law Dictionary* (12th ed. 2024) ("To conclude; to bring to an end"); *Baker v. Masco Builder Cabinet Grp., Inc.*, 912 F. Supp. 2d 814, 824 (D.S.D. 2012) (applying similar definitions in discerning "the plain meaning of the word 'close'"). That is exactly what DOL has done here with respect to each of the 99 centers. It has indefinitely "suspend[ed]" operations at each center. Ex. 3. And it has ordered every center "shutdown." *See* Ex. 3 ¶ 12; Ex. 4 at 1; Ex. 5 at 1–2. After June 30, none of the centers will be open; they will be closed.  It is irrelevant whether this closure is intended to be temporary—though DOL's statements that "there should be no expectation of…return" to the

centers, Ex. 4 at 7, and that its actions "align with" the President's proposal to eliminate the Job Corps program, Ex. 2 at 1, make clear it is not.

DOL has suggested that it views the word "closure" to mean something else. *See* Ex. 1 (Matz Decl. ¶ 15). But that view is owed no deference. *See Loper Bright Enterprs. v. Raimondo*, 603 U.S. 369, 400 (2024).

Since DOL did not undertake the process required by 29 U.S.C. § 3209(j) before closing the 99 centers, Plaintiffs are likely to prevail on their claim that such closures were taken without observance of procedure required by law.

> **3.    DOL's closure of 99 Job Corps centers and indefinite suspension of the Job Corps program violated WIOA.**

DOL's closure of the centers and indefinite suspension of Job Corps program operations violates other provisions of WIOA. 29 U.S.C. § 3193 mandates the existence of "a 'Job Corps.'" The indefinite suspension of Job Corps is contrary to that provision. Section 3197(a)(1) requires DOL to enter into agreements with third parties "for the operation of each Job Corps center." By terminating all such agreements, with no intent to enter into any new agreements, DOL has acted contrary to that provision. And by terminating the provision of services for Job Corps enrollees, DOL has acted contrary to the statutory provisions requiring those services to be provided. *Id.* §§ 3197(c), 3198(a), 3199(a)–(c). While DOL may think these statutory provisions reflect unwise policy choices, the Executive "may not decline to follow a statutory mandate or prohibition simply because of policy objections." *In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013) (Kavanaugh, J.).

DOL's closure of the centers also violates 29 U.S.C. § 3211(c), which requires DOL to "establish" and "use" specific written criteria to determine when a center is "to be closed and how

to carry out such closure." While DOL has established such criteria, *see* 84 Fed. Reg. at 25072, it did not use that criteria before closing the 99 centers, and thus has acted contrary to law.

> ### 4.    DOL's closure of 99 Job Corps centers and indefinite suspension of the Job Corps program was arbitrary and capricious.

"An action is arbitrary and capricious when the agency relies on inappropriate factors, fails to consider important aspects of the problem, or ignores relevant evidence." *Int'l Dark-Sky Ass'n v. FCC*, 106 F.4th 1206, 1213 (D.C. Cir. 2024). Where an agency fails "to consider or to adequately analyze the … consequences of" its actions, it has acted arbitrarily and capriciously. *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 932 (D.C. Cir. 2017). And while "agencies are free to change their existing policies," they must "consider 'serious reliance interests'" when doing so. *FDA v. Wages & White Lion Invs., LLC*, 145 S. Ct. 898, 917 (2025) (quoting *Encino Motorcars v. Navarro*, 579 U.S. 211, 221–22 (2016)).

DOL did not meet these standards. For one, DOL's closure of centers without engaging with the criteria it promulgated for doing so, pursuant to statute, is arbitrary and capricious. Moreover, while DOL's announcement cited "serious incident reports" and its "in-depth fiscal analysis" as the reasons for acting, Ex. 2 at 1, there is no indication that DOL considered less drastic measures than suspending the entire program on one month's notice and putting students on the street. *See Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 242 (D.C. Cir. 2008) ("An agency is required to consider responsible alternatives to its chosen policy and to give a reasoned explanation for its rejection of such alternatives." (cleaned up)). Moreover, DOL did not explain why what it described as "a financial crisis for years" that "has been publicly known" required such a sudden termination of the program, Ex. 3 at 9, nor did it recognize that Congress had required the program to continue despite its awareness of this "crisis." And while DOL stated it was committed to an "orderly transition for students, staff, and local communities," Ex. 2 at 1,

such a transition was impossible under the short timeline provided—as demonstrated by the predictable chaos that ensued for Plaintiffs. *See* Cabrera Decl. ¶¶ 9–10; Burkes Decl. ¶¶ 4–8; Davis-Newman Decl. ¶¶ 4–5; Sasser Decl. ¶ 7; Christensen Decl. ¶¶ 5, 7; Shauger Decl. ¶¶ 9–10; Davis Decl. ¶¶ 10–15. DOL failed to adequately analyze the consequences of its sudden "suspension" on students that relied on Job Corps programs for training, education, housing, and other services.

To the extent that DOL based its decision on the "Transparency Report," that spreadsheet applied a flawed methodology and reflects selective and inaccurate performance measures, costs, and statistics, intended to significantly understate Job Corps' performance and overstate its costs. For example, that report incorrectly allocates overhead costs of 38.65%, including the national costs of certain trade programs, to each Job Corps center, including centers that do not host those programs—thus inflating their reported costs. *See* Job Corps Transparency Report 2025. The report fails to contextualize costs and outcomes that reflect COVID-19 pandemic restrictions imposed by DOL in the years studied, and center operators have identified various other flaws in the Report. *See Context for the Job Corps Transparency Report*, Nat'l Job Corps Ass'n (May 28, 2025), https://njcaweb.org/transparency-report-context (Ex. 6); Supp. Larson Decl. ¶¶ 6–12, *NJCA,* ECF 47 (Ex. 7); Supp. Wild Decl. ¶¶ 6–12, *NJCA*, ECF 46 (Ex. 8). Finally, that the President's recommendation to eliminate the Job Corps program and DOL's suspension of the program came two and four weeks, respectively, after the release of the Transparency Report strongly suggests that any reliance on the Report is pretextual. *See Dep't of Commerce v. New York*, 588 U.S. 752 (2019) (holding agency action arbitrary and capricious where agency head had made decision irrespective of reason given). There could be no engagement with stakeholders or

other meaningful consideration of alternatives to address any problems that Report identified in such a short time period.

### 5. DOL's indefinite suspension of the Job Corps program exceeded its statutory authority.

When an agency is "charged with administering congressional statutes," its "power to act … is authoritatively prescribed by Congress." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013). "Any action that an agency takes outside the bounds of its statutory authority is ultra vires, and violates the [APA]." *Id.* (citation omitted). And while agencies have "executive discretion" to "interpret[] a statute and direct[] the details of its execution," *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 406 (1928), the "responsibility to carry out the Congressional objectives of a program does not give [an agency] the power to discontinue that program, especially in the face of a Congressional mandate that it shall go on." *Loc. 2677, Am. Fed'n of Gov't Emp. v. Phillips*, 358 F. Supp. 60, 77–78 (D.D.C. 1973); *see also Guadamuz v. Ash*, 368 F. Supp. 1233, 1240 (D.D.C. 1973) (holding that authority to administer a program does not grant "power to terminate the program"). *Cf. Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 325 (2014) ("An agency has no power to 'tailor' legislation to bureaucratic policy goals by rewriting unambiguous statutory terms.").

Here, DOL has been granted the authority to administer the Job Corps program—but not the authority to eliminate it. As such, DOL's indefinite suspension of the program is ultra vires and exceeds its statutory authority. While the President is free to ask Congress to eliminate the Job Corps program, as he has done, until and unless Congress does so, DOL must ensure the program's continued existence and operation.

### 6. DOL's indefinite suspension of the Job Corps program violated appropriations law.

By halting Job Corps program operations, DOL has also likely violated appropriations law. "Where the executive has policy reasons ... for wanting to spend less than the full amount appropriated by Congress for a particular project or program, … even the President does not have unilateral authority to refuse to spend the funds. Instead, the President must propose the rescission of funds, and Congress then may decide whether to approve a rescission bill," pursuant to the Congressional Budget and Impoundment Control Act of 1974 (ICA), 2 U.S.C. § 683. *In re Aiken Cnty.*, 725 F.3d at 261 n.1. Absent compliance with that procedure, congressionally appropriated funds "shall be made available for obligation." 2 U.S.C. § 683(b). That procedure has not been deployed here, and thus DOL lacks authority to withhold the funds appropriated by Congress for the program's operations. DOL's reference to its suspension of Job Corps program operations as a "pause" "does not avoid the problem." DOL has made clear its actions have been taken to "end [Job Corps] for policy reasons," not merely so that appropriate funds can be spent on other Job Corps programs. *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, No. CV 25-00400 (AHA), 2025 WL 752378 (D.D.C. Mar. 10, 2025); *see Rhode Island v. Trump*, No. 1:25-CV-128-JJM-LDA, 2025 WL 1303868, at *14 (D.R.I. May 6, 2025) (finding agencies likely violated "congressional appropriations acts when effectively absconding their statutory mandates by terminating core services and grant programs").

## II.     Plaintiffs will suffer irreparable harm absent a preliminary injunction.

As a result of DOL's actions, Plaintiffs have been, or will in the coming weeks be, cut off from housing, health care, and other services provided to them as part of the Job Corps program, and will struggle to find replacement housing and services. *See* Cabrera Decl. ¶¶ 13–14; Burkes Decl. ¶¶ 7–10; Davis-Newman Decl. ¶¶ 7–9; Sasser Decl. ¶¶ 8–11; Christensen Decl. ¶¶ 6–10; Shauger Decl. ¶¶ 12–14; Davis Decl. ¶¶ 10, 15. Such harm is predictable because, by statute, all Job Corps participants, and thus all members of the proposed class, are between the ages of 16 and

24, "low-income individual[s]," and face one or more specific obstacles to employment—including homelessness, experience being trafficked, or a lack of basic skills. 29 U.S.C. § 3194. Both the seriousness of, and the irreparability of this harm is "excruciatingly obvious." *Coal. for Basic Hum. Needs v. King*, 654 F.2d 838, 840–41 (1st Cir. 1981) (addressing harm caused by withholding of welfare assistance); *see Planned Parenthood S. Atl. v. Baker*, 941 F.3d 687, 707 (4th Cir. 2019) (holding that "diminished access to high-quality health care" is an irreparable harm warranting preliminary relief); *Edwards v. Habib*, 366 F.2d 628, 630 (D.C. Cir. 1965) (Skelly Wright, J., concurring) ("Certainly being evicted into the street is irreparable damage."); *Brown v. Artery Org., Inc.,* 654 F. Supp. 1106, 1118 (D.D.C. 1987) ("It is axiomatic that wrongful eviction constitutes irreparable injury."). Even if Plaintiffs are able to locate substitute housing and health care services, they will have no method of recovering any necessary expenses from Defendants at the end of this case. In addition, Plaintiffs who have worked hard in training and education programs will lose the opportunity to complete those programs, or to take advantage of supports as they transition into the workforce. Cabrera Decl. ¶¶ 13–14; Burkes Decl. ¶¶ 7–10; Davis-Newman Decl. ¶¶ 8–9; Sasser Decl. ¶ 11; Christensen Decl. ¶ 9; Shauger Decl. ¶ 11; Davis Decl. ¶¶ 8–15. These harms are serious and cannot be remedied at the conclusion of this litigation.

The *NJCA* temporary restraining order does not eliminate the risk of such irreparable harm to Plaintiffs. This Court "has no 'power over or knowledge of whether, and if so, when" the relief in that case "will be lifted or modified." *Whitman-Walker Clinic, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 485 F. Supp. 3d 1, 59 (D.D.C. 2020) (quoting *Cook Cnty. v. McAleenan*, 417 F. Supp. 3d 1008, 1030 (N.D. Ill. 2019)). For this reason, "courts routinely grant follow-on injunctions against the Government, even in instances when an earlier nationwide injunction has already provided plaintiffs in the later action with their desired relief." *Id.* (collecting cases).

**III.    The balance of equities and the public interest support the grant of a preliminary injunction.**

As to the final factors, the balance of equities and the public interest support Plaintiffs' requested relief. Plaintiffs' interest in avoiding the harms caused by DOL's actions far outweigh any interest Defendants have in shutting down a congressionally created and funded program, without compliance with the requisite procedure. The public interest is plainly not served by depriving Plaintiffs of housing and related services, and requiring them to rely on already stressed government and non-profit social service agencies. Moreover, "there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *Newby*, 838 F.3d at 12 (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). Plaintiffs' "extremely high likelihood of success on the merits is a strong indicator that [injunctive relief] would serve the public interest." *Id.* Congress has made the judgment that the public interest is served by the continued operation of the Job Corps program, and of centers remaining open until and unless stakeholders are consulted, and that determination should be respected.

**IV.    Nationwide relief without security is appropriate.**

Because Plaintiffs have appropriately brought this case on behalf of a nationwide class, as detailed in the accompanying class certification motion, the Court should order the reopening of all 99 Job Corps centers and the resumption of Job Corps program operations nationwide. *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (recognizing that nationwide relief is appropriate where it is necessary to afford complete relief to a class).

*First*, to the extent the Court issues a stay pursuant to section 705, "the scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted and allows a court to 'set aside' an unlawful agency action." *Career Colls. & Sch.*

20

*of Texas v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024), *cert. granted on other grounds sub nom. Dep't of Educ. v. Career Colleges & Sch. of Texas*, 145 S. Ct. 1039 (2025); *see also Gomez*, 485 F. Supp. 3d at 203 (recognizing section 705 "'authorizes courts to stay agency action pending judicial review,' not just to enjoin their application to the injured parties before the court" (quoting *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 562 (D.C. Cir. 2015) (Kavanaugh, J., dissenting in part)).

Such relief should not be conditioned on the posting of security. Plaintiffs seek relief under section 705, which does not contain a bond requirement. *See Am. Fed. of Teachers v. Dep't of Educ.*, No. CV SAG-25-628, 2025 WL 1191844, at *23 (D. Md. Apr. 24, 2025) ("[I]n the U.S. District Court for the District of Columbia, where preliminary relief under the APA is most frequently issued, this principle is so well-established that bond is rarely—if ever—discussed in Section 705 decisions."); *Prairie Prot. Colorado v. USDA APHIS Wildlife Servs.*, No. 19-CV-2537-WJM-KLM, 2019 WL 4751785, at *1 n.2 (D. Colo. Sept. 30, 2019) ("Rule 65(c) requires a court granting an injunction to consider a bond amount, whereas § 705 contains no such requirement.").

*Second*, as to Plaintiffs' request for a preliminary injunction, Federal Rule of Civil Procedure 65(c) "vest[s] broad discretion in the district court to determine the appropriate amount of an injunction bond," *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999), "including the discretion to require no bond at all," *P.J.E.S. ex rel. Escobar Francisco v. Wolf*, 502 F. Supp. 3d 492, 520 (D.D.C. 2020) (quoting *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 107 (D.D.C. 2012)). The equities weigh against any bond here, "where the defendants are already constitutionally required to" spend the funds appropriated for Job Corps program operations "in accordance with the yearly appropriations bill, … a bond would merely impose a financial barrier

to litigation for plaintiffs seeking to vindicate their statutory … rights." *Widakuswara v. Lake*, No. 1:25-CV-1015-RCL, 2025 WL 1166400, at \*17 (D.D.C. Apr. 22, 2025), *stay denied in relevant part*, 2025 WL 1521355 (D.C. Cir. May 28, 2025). *See also League of United Latin Am. Citizens v. Exec. Off. of the President*, No. CV 25-0946 (CKK), 2025 WL 1187730, at \*62 (D.D.C. Apr. 24, 2025) (quoting *Aviel v. Gor*, No. CV 25-778 (LLA), 2025 WL 1009035, at \*12 (D.D.C. Apr. 4, 2025)) (declining to require bond "as a condition of obtaining an injunction against unlawful executive action" where doing so "would risk deterring other litigants from pursuing their right to judicial review of unlawful executive action," and thus "would 'contravene the interests of justice.'"); *NRDC v. Morton*, 337 F. Supp. 167, 168 (D.D.C. 1971) (imposing nominal bond where substantial security "would have the effect of denying the plaintiffs their right to judicial review of administrative action").

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for a preliminary injunction and stay, and order Defendants to halt efforts to close the 99 Job Corps centers and resume Job Corps program operations pending conclusion of this action.

Dated: June 18, 2025

Respectfully submitted,

/s/ Adam R. Pulver
Adam R. Pulver (DC Bar No. 1020475)
Michael T. Kirkpatrick (DC Bar No. 486293)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

Arthur Ago (DC Bar No. 463681)
Aaron S. Fleisher[*†] (NY Bar No. 4431052)
Southern Poverty Law Center
1101 17th St. NW Ste. 705
Washington, DC 20036

Scott D. McCoy[*] (FL Bar No. 1004965)
Sam Boyd[*] (FL Bar No. 1012141)
Carli Raben[*] (FL Bar No. 1036013)
Southern Poverty Law Center
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131

Michael Tafelski[*] (GA Bar No. 507007)
Diego A. Soto[*] (DC Bar No. 1029607)
Southern Poverty Law Center
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030

*Counsel for Plaintiffs*

[*] *Motion for* pro hac vice *admission forthcoming*

[†] *Not admitted to practice law in DC*

23