# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| ANARIA CABRERA, et al.,<br><br>*Plaintiffs*, *on behalf of themselves and others similarly situated*,<br><br>v.<br><br>U.S. DEPARTMENT OF LABOR, et al.,<br><br>*Defendants*. | Civil Action No. 25-1909 |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF CLASS CERTIFICATION

### INTRODUCTION

Plaintiffs submit this memorandum of law in support of their motion to certify, under Federal Rule of Civil Procedure 23(b)(2), a nationwide class of students at 99 Job Corps centers that Defendants, the United States Department of Labor (DOL) and its Secretary, have unlawfully directed be shut down. Job Corps centers offer low-income young people housing, services, vocational training, and education to help them become responsible and economically self-sufficient members of society. On May 29, 2025, Defendants unlawfully directed the closure of the 99 Job Corps centers within their purview and announced the suspension of Job Corps program operations. The proposed class seeks injunctive and declaratory relief reversing these unlawful actions.

The proposed class meets the class-certification requirements of Federal Rule of Civil Procedure 23(a) and (b)(2). The proposed class satisfies Rule 23(a)'s numerosity requirement because it contains tens of thousands of students, whose joinder would be impracticable. The commonality requirement is satisfied because all members of the proposed class share the same injury—losing access to Job Corps services—and their claims rise and fall on the same legal questions—whether Defendants' shut down of Job Corps centers and suspension of Job Corps program operations is

lawful. The typicality requirement is satisfied because each member would bring the same claim and seek the same relief as the rest of the proposed class: the vacatur of Defendants' actions and continuation of normal operations at Job Corps centers. And the adequacy requirement is satisfied because each proposed class representative has the same claims as other members of the proposed class: loss of services from Job Corps. There are no conflicts of interest within the proposed class and the proposed class representatives have demonstrated their commitment to vigorously prosecuting the action, such as by providing detailed declarations that provide the factual bases for the present action.

Rule 23(b)(2) is satisfied because Defendants, by shutting down Job Corps, have acted "on grounds that apply generally to the class" and "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

## BACKGROUND

"The objective of Job Corps is to support responsible citizenship and provide young people with the skills they need to lead to successful careers that will result in economic self-sufficiency and opportunities for advancement in in-demand industry sectors or occupations or the Armed Forces, or to enrollment in postsecondary education." 20 C.F.R. § 686.110. Under current law, Job Corps enrollment is limited to low-income individuals between the ages of 16 and 24, who face one or more specified barriers to employment, including homelessness. 29 U.S.C. § 3194. Job Corps currently serves approximately 25,000 young people around the country, more than 4,500 of whom were homeless before joining Job Corps. At the start of 2025, there were 99 Job Corps centers throughout the country, operated by contractors pursuant to two-year contracts.[1]

---

[1] There are also twenty-five "Civilian Conservation Corps" centers owned and operated by the U.S. Department of Agriculture, in partnership with Job Corps. Those centers are not the subject of the actions challenged here.

Participants in the programs at these centers receive not only education and training, but also housing, a biweekly living allowance, and medical, dental, and mental health services, among others.

On May 29, 2025, Defendants announced the immediate closure of all 99 Job Corps centers, without undertaking the process required by law, and "paus[ing]" Job Corps program operations. *US Department of Labor Pauses Job Corps Center Operations*, DOL (May 29, 2025), https://www.dol.gov/newsroom/releases/osec/osec20250529, ECF No. 3-2 at 12–13. Defendants instructed contractors who operated Job Corps centers to immediately begin shuttering those centers—which they did. Some Job Corps members like Plaintiff Athena Sasser were given less than a week to find alternative housing, leaving some no place to sleep but the street. Declaration of Athena Sasser ("Sasser Decl.") ¶ 8, ECF No. 3-6; Declaration of Deondre Burkes ¶ 4, ECF No. 3-4.

On June 4, 2025, in a lawsuit filed in the United States District Court for the Southern District of New York, the court entered a temporary restraining order enjoining "the elimination of the Job Corps program." *See Nat'l Job Corps Ass'n v. Dep't of Lab.*, No. 25-cv-04641-ALC, 2025 WL 1577843, at *1 (S.D.N.Y. June 4, 2025). That order has been extended until June 25. *Id.*, ECF No. 54. As a result, the wind-down of operations has mostly paused, Job Corps centers have reopened, and Plaintiffs have generally been able to return to their housing and job training, though some services remain disrupted. For example, medical services have not resumed at the Quentin N. Burdick Job Corps Center in Minot, North Dakota, attended by Plaintiffs Sasser and Christensen. Sasser Decl. ¶ 9, ECF No. 3-6; Declaration of Logan Christensen ¶ 7, ECF No. 3-7.

**PROPOSED CLASS**

The proposed class is: "All individuals enrolled, as of May 29, 2025, in Job Corps programs at centers operated by contractors that were subject to the suspension of Job Corps program operations announced by the Department of Labor on that date." *See* Compl. ¶ 43. The claims of the

proposed class are all based on the same nucleus of facts described above, and their claims would be fully and finally resolved by this Court's orders. All members of this proposed class have been harmed by Defendants' actions, as they will lose access to Job Corps services if the centers are shut down and the suspension of Job Corps programs is allowed to go into effect. Even the small number of class members who will have left Job Corps in the time between May 29 and the Court's ruling on the pending preliminary injunction motion are eligible for Job Corps services for an additional three months if they left without graduating or a full year if they graduated. *See* Job Corps Policy and Requirements Handbook § 4.4, https://prh.jobcorps.gov/Placement%20Services/4.4%20Transition%20Services/ (last visited June 17, 2025). All claims are asserted on behalf of the class, all relief requested is based on Defendants' common course of conduct directed at the class, and all class members seek uniform relief: reversal of the shutdown of Job Corps centers and of the suspension of Job Corps program operations.

**ARGUMENT**

**I.    Plaintiffs meet the requirements of Rule 23(a).**

To certify a class under Rule 23, the Court must first find that Plaintiffs satisfy the requirements of Rule 23(a). Rule 23(a) requires the proposed class to satisfy four criteria:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). All four are satisfied here.

As the Supreme Court observed recently in issuing temporary injunctive relief for a putative class, "[p]reliminary relief is 'customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits.'" *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1368 (2025) (citations omitted).

### A. Numerosity

The proposed class is sufficiently numerous because it contains thousands of members. *See* Dep't of Lab., Job Corps Transparency Report 2025, Apr. 30, 2025, https://www.dol.gov/sites/dol-gov/files/ETA/jobcorps/reports/Job-Corps-Transparency-Report-2025.xlsx (reflecting that over 16,000 students were enrolled at contractor-operated centers at start of fiscal year 2023); Dep't of Lab., Performance Report for Job Corps, PY 2024, Qtr 9/30/2024, https://jobcorps-gov.s3.us-west-2.amazonaws.com/2025-01/QUARTERLY%20QPR%20PY%202024%20QTR%201%209-2024.pdf (last visited June 17, 2025) (reflecting that over 29,000 students were served by Job Corps program in third quarter of 2024). Demonstrating impracticability "does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *DL v. District of Columbia*, 302 F.R.D. 1, 11 (D.D.C. 2013), *aff'd*, 860 F.3d 713 (D.C. Cir. 2017) (citation omitted). "Numerosity is presumed at a level of 40 members." *Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003) (citation omitted). This class is far larger.

### B. Commonality

To establish commonality, Plaintiffs must identify an issue of fact or law whose resolution "is central to the validity of each" class member's claim. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality requirement does not demand that all questions of law or fact at issue be common; "'even a single common question' will do." *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2013) (quoting *Wal-Mart Stores*, 564 U.S. at 359). Commonality is thus generally satisfied where, as in this case, the lawsuit challenges a "uniform policy or practice" that affects all class members. *DL*, 860 F.3d at 724.

Here, all questions of law and fact are common to all class members. Plaintiffs allege that Defendants' uniform policies of directing all 99 Job Corps centers closed and suspending Job

Corps program operations are unlawful and should be set aside under the Administrative Procedure Act because they were taken without observance of required procedure and are arbitrary, capricious, and contrary to law in various ways and in excess of statutory authority. *See* Compl. ¶¶ 50–70. The merits of these claims turn solely on questions of law common to all class members. And while there are unlikely to be any factual disputes relevant to the claims of the proposed class, any such disputes will concern Defendants' actions and be common to all class members. No facts specific to individual class members are needed to resolve their claims.

### C. Typicality

The claims of the proposed class representatives are "typical of the claims … of the class." Fed. R. Civ. Pro. 23(a)(3). Typicality is "liberally construed" and is "ordinarily met 'if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.'" *In re McCormick & Co., Pepper Prods. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194, 237 (D.D.C. 2019) (citation omitted); *see also Wal-Mart Stores*, 564 U.S. at 348–49 (a class representative must "possess the same interest and suffer the same injury as the [putative] class members").

As set out above and in more detail in concurrently filed declarations of the named plaintiffs, each proposed class representative has the same injury as the proposed class: they were enrolled in Job Corps on May 29, 2025, and lost housing, education, and other services when their Job Corps center was shut down and Job Corps operations were suspended. Each is also either still enrolled in their Job Corps center or would return to enrollment if a permanent injunction were entered on behalf of the proposed class. Each proposed class representative also seeks the same relief as the proposed class: reversal of Defendants' unlawful actions so they can continue their education and receive the services they are entitled to from Job Corps.

D.  **Adequacy of Representation**

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Two criteria for determining the adequacy of representation are generally recognized: (1) the named representative must not have antagonistic or conflicting interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel." *Thorpe v. District of Columbia*, 303 F.R.D. 120, 150 (D.D.C. 2014) (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)).

The proposed class representatives have claims that are the same as those of the proposed class and seek the same remedies as the proposed class. Plaintiffs are not aware of any conflicts of interest within the proposed class. Undersigned counsel are also not aware of any conflicts of interest among members of the proposed class. The proposed class representatives have demonstrated their commitment to vigorously prosecuting the action, including by providing declarations that illustrate the factual bases for the present action, ECF Nos. 3-3 to 3-9, vigilantly monitoring the status of the case, and remaining in regular contact with counsel, thus, representing the interests of the class.

Proposed class counsel, Public Citizen Litigation Group and the Southern Poverty Law Center, also satisfy Rule 23(g). Under Rule 23(g), a court that certifies a class must also appoint class counsel and consider:

> i. the work counsel has done in identifying or investigating potential claims in the action;
>
> ii. counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

7

iii. counsel's knowledge of the applicable law; and

iv. the resources that counsel will commit to representing the class[.]

The undersigned counsel have performed significant work both identifying and investigating potential claims in the action in the less than three weeks since Defendants' May 29 shutdown announcement. Counsel have located seven plaintiffs from across the nation and submitted detailed declarations for them. ECF Nos. 3-3 to 3-9. As set forth in the attached declarations, counsel collectively have decades of experience in complex civil litigation, claims under the Administrative Procedure Act, and/or class actions. Declaration of Adam Pulver ¶¶ 3–6; Declaration of Scott McCoy ¶¶ 6–7.

Finally, because this case concerns primarily legal questions, resources required will be more limited than in some other class actions. Regardless, Plaintiffs' counsel have committed to providing the resources needed to vigorously represent Plaintiffs throughout litigation of this case. Pulver Decl. ¶ 7; McCoy Decl. ¶¶ 8–9.

## II. Plaintiffs meet the requirements of Rule 23(b).

Plaintiffs seek certification of a class for injunctive and declaratory relief under Rule 23(b)(2). A class qualifies for certification under Rule 23(b)(2) when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "A principal purpose of Rule 23(b)(2) class actions is to enable class resolution of civil-rights claims alleging classwide deprivations of protected rights." *J.D. v. Azar*, 925 F.3d 1291, 1314 (D.C. Cir. 2019); *see also Wal-Mart Stores*, 564 U.S. at 360 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." (citation and internal quotation marks omitted)).

Here, Plaintiffs challenge Defendants' decisions to shut down all 99 Job Corps centers and suspend Job Corps program operations. These decisions affect all members of the proposed class in the same way, ending their receipt of all Job Corps services effective June 30, 2025, or sooner. Their injuries can be remedied through an injunction requiring Defendants to reverse the closure of the 99 Job Corps centers and resume Job Corps' statutorily mandated program operations. Plaintiffs seek only injunctive and declaratory, not monetary, relief. Finally, the injunctive relief would benefit all class members because they are all enrolled in centers that would close absent court action and are all entitled to services that have been, or will be, halted.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully move to certify the proposed class and appoint the proposed class representatives and Plaintiffs' counsel to represent the certified class.

June 18, 2025

Respectfully submitted,

/s/ Michael T. Kirkpatrick
Michael T. Kirkpatrick (DC Bar No. 486293)
Adam R. Pulver (DC Bar No. 1020475)
Public Citizen Litigation Group
1600 20th St. NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

Arthur Ago (DC Bar No. 463681)
Aaron S. Fleisher[*†] (NY Bar No. 4431052)
Southern Poverty Law Center
1101 17th St. NW Ste. 705
Washington, DC 20036

Scott D. McCoy[*] (FL Bar No. 1004965)
Sam Boyd[*] (FL Bar No. 1012141)
Carli Raben[*] (FL Bar No. 1036013)
Southern Poverty Law Center
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131

9

Michael Tafelski[*] (GA Bar No. 507007)
Diego A. Soto[*] (DC Bar No. 1029607)
Southern Poverty Law Center
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030

*Counsel for Plaintiffs*

[*] *Motion for* pro hac vice *admission forthcoming*

[†] *Not admitted to practice law in DC*