# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANARIA CABRERA, *et al.*,

    *Plaintiffs, on behalf of themselves and others similarly situated*,

        v.

U.S. DEPARTMENT OF LABOR, *et al.*,

    *Defendants*.

Civil Action No. 25-1909 (DLF)

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND STAY

Arthur Ago (DC Bar No. 463681)
Aaron S. Fleisher[*][†] (NY Bar No. 4431052)
Southern Poverty Law Center
1101 17th St. NW Ste. 705
Washington, DC 20036

Scott D. McCoy[*] (FL Bar No. 1004965)
Sam Boyd[*] (FL Bar No. 1012141)
Carli Raben[*] (FL Bar No. 1036013)
Southern Poverty Law Center
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131

Adam R. Pulver (DC Bar No. 1020475)
Michael T. Kirkpatrick (DC Bar No. 486293)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

Michael Tafelski[*] (GA Bar No. 507007)
Diego A. Soto[*] (DC Bar No. 1029607)
Southern Poverty Law Center
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030

*Counsel for Plaintiffs*

[*] *Admitted* pro hac vice
[†] *Not admitted to practice law in DC*

July 2, 2025

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

SUPPLEMENTAL BACKGROUND ................................................................................... 3

ARGUMENT ...................................................................................................................... 4

I.  This Court has jurisdiction over Plaintiffs' claims. ............................................. 4

    A.  Plaintiffs' claims are not contractual. .................................................... 4

    B.  Recipients of Job Corps services have standing to challenge DOL's directives terminating those services. ...................................................... 6

II.  Plaintiffs are likely to succeed on the merits of their claims. ............................. 8

    A.  DOL directed the closure of 99 Job Corps centers without complying with statutory requirements. ............................................................... 8

    B.  The indefinite suspension of Job Corps program operations is contrary to law... 11

    C.  The performance improvement plan provision does not provide statutory authority for DOL's actions. ............................................. 13

    D.  DOL's failure to consider all relevant factors, including other options, renders its actions arbitrary and capricious. .......................................... 13

    E.  The indefinite suspension of Job Corps program operations violates the Impoundment Control Act. .................................................................. 15

III.  The imminent loss of Job Corps housing, education and training services, and health care constitutes non-speculative irreparable harm. ................................... 16

IV.  The continuation of a congressionally mandated program is in the public interest. ......... 18

V.  Relief should not be limited to the named plaintiffs. ........................................ 19

VI.  Neither a bond nor a stay pending appeal are appropriate. ............................... 19

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.A.R.P. v. Trump,*
   145 S. Ct. 1364 (2025)......................................................................................................... 19

*Agudas Chasidei Chabad of United States v. Russian Federation,*
   No. 1:05-CV-1548-RCL, 2020 WL 13611456 (D.D.C. Nov. 6, 2020)..................................... 6

*AIDS Vaccine Advocacy Coalition v. U.S. Department of State,*
   770 F. Supp. 3d 121 (D.D.C. 2025)................................................................................. 5, 15

*American Center for International Labor Solidarity v. Chavez-DeRemer,*
   No. 25-1128 (BAH), 2025 WL 1795090 (D.D.C. June 30, 2025) ........................................... 5

*American Federation of Television & Radio Artists, Washington-Baltimore Local v. National*
   *Labor Relations Board,*
   462 F.2d 887 (D.C. Cir. 1972)............................................................................................ 12

*American Radio Relay League, Inc. v. Federal Communications Commission,*
   524 F.3d 227 (D.C. Cir. 2008)............................................................................................ 14

*Americans for Safe Access v. Drug Enforcement Administration,*
   706 F.3d 438 (D.C. Cir. 2013).............................................................................................. 7

*Angelica S. v. U.S. Department of Health and Human Services,*
   No. 25-CV-1405 (DLF), 2025 WL 1635369 (D.D.C. June 9, 2025) ............................... 18, 19

*Black Bear Sports Group, Inc. v. Amateur Hockey Ass'n of Illinois,*
   962 F.3d 968 (7th Cir. 2020) ................................................................................................ 7

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
   401 U.S. 402 (1971) .................................................................................................... 10, 14

*City of New Haven v. United States,*
   809 F.2d 900 (D.C. Cir. 1987)............................................................................................ 15

*Crowley Government Services, Inc. v. General Services Administration,*
   38 F.4th 1099 (D.C. Cir. 2022)............................................................................................. 5

*Department of Homeland Security v. Regents of the University of California,*
   591 U.S. 1 (2020) .............................................................................................................. 14

*DSE, Inc. v. United States,*
   169 F.3d 21 (D.C. Cir. 1999).............................................................................................. 20

*Federal Prescription Service, Inc. v. American Pharmacy Ass'n*,
  636 F.2d 755 (D.C. Cir. 1980) ................................................................... 20

*\*Hardaway v. District of Columbia Housing Authority*,
  843 F.3d 973 (D.C. Cir. 2016) ..................................................................... 6

*Judulang v. Holder*,
  565 U.S. 42 (2011) ...................................................................................... 14

*\*Loper Bright Enterprises v. Raimondo*,
  603 U.S. 369 (2024) ................................................................................ 2, 9

*\*Megapulse, Inc. v. Lewis*,
  672 F.2d 959 (D.C. Cir. 1982) ..................................................................... 4

*National Council of Nonprofits v. Office of Management and Budget*,
  No. CV 25-239 (LLA), 2025 WL 597959 (D.D.C. Feb. 25, 2025) ........................ 20

*National Job Corps Ass'n v. Department of Labor*,
  1:25-cv-04641-ALC, 2025 WL 1577843 (S.D.N.Y. June 4, 2025) ........................... 3

*\*National Job Corps Ass'n v. Department of Labor*,
  1:25-cv-04641-ALC, 2025 WL 1752414 (S.D.N.Y. June 25, 2025) ............ 4, 7, 8, 9, 10, 16, 19

*R.I.L.-R v. Johnson*,
  80 F. Supp. 3d 164 (D.D.C. 2015) ............................................................... 18

*Safari Club International v. Zinke*,
  878 F.3d 316 (D.C. Cir. 2017) ..................................................................... 9

*Securities and Exchange Commission v. Chenery*,
  318 U.S. 80 (1943) ...................................................................................... 12

*Spectrum Leasing Corp. v. United States*,
  764 F.2d 891 (D.C. Cir. 1985) ..................................................................... 5

*Texas v. U.S. Environmental Protection Agency*,
  829 F.3d 405 (5th Cir. 2016) ....................................................................... 19

*\*Tootle v. Secretary of Navy*,
  446 F.3d 167 (D.C. Cir. 2006) ..................................................................... 4

*Trump v. CASA, Inc.*,
  No. 24A884, 2025 WL 1773631 (June 27, 2025) ........................................ 4, 19

iii

*United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Industries, AFL-CIO v. Thornburgh,*
Civ. A. No. 90–2342, 1991 WL 171463 (D.D.C. Aug. 21, 1991) ........................................... 20

*United States v. Wilson,*
No. 25-cv-545 (DLF), 2025 WL 1009047 (D.D.C. Mar. 13, 2025)....................................... 12

*Widakuswara v. Lake,*
No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025) ....................................... 5

*Winter v. Natural Resources Defense Council,*
555 U.S. 7 (2008) ....................................................................................... 16

**Statutes**

29 U.S.C. § 3191(1) ....................................................................................... 13

29 U.S.C. § 3193 ....................................................................................... 11

29 U.S.C. § 3194(a) ....................................................................................... 17

*29 U.S.C. § 3197(a)(1) ....................................................................................... 11, 12

29 U.S.C. § 3197(c) ....................................................................................... 11

*29 U.S.C. § 3197(d)(1) ....................................................................................... 12

29 U.S.C. § 3198(a)(1) ....................................................................................... 11

29 U.S.C. § 3199 ....................................................................................... 11

*29 U.S.C. § 3209(f)(2) ....................................................................................... 2, 10

29 U.S.C. § 3209(f)(4) ....................................................................................... 12

*29 U.S.C. § 3209(j) ....................................................................................... 2, 8, 11

*29 U.S.C. § 3211(c) ....................................................................................... 2, 8, 11

**Rules**

Federal Rule of Civil Procedure 65(c) ....................................................................................... 20

**Other Authorities**

71 Am. Jur. 2d Specific Performance § 1 (2025) ........................................................................ 6

Merriam-Webster.com Dictionary (June 18, 2025) .................................................................. 8

## INTRODUCTION

Congress established the Job Corps program for the benefit of young people who face obstacles in obtaining employment. By statute, Congress directed the Department of Labor to provide Job Corps participants with training and education, housing, health care, and other services. On May 29, 2025, though, Defendants, the Department of Labor and the Secretary of Labor (collectively, DOL), announced the indefinite "suspension of [Job Corps] program operations" Job Corps Pause FAQs (Ex. 3).[1] DOL directed 99 Job Corps centers to commence "shutdown activities," and to cease providing services by June 30, 2025, Matz Decl. (Ex. 1) ¶ 12. Plaintiffs are a putative class of young people enrolled and living at the 99 Job Corps centers who, absent judicial relief, will lose access to Job Corps-provided housing, education and training, health care, and other services.

DOL does not dispute these facts and it does not dispute that it did not abide by the statutory requirements that apply to the "closure" of any Job Corps center. Rather, in opposing Plaintiffs' request for a preliminary injunction and for a stay pursuant to 5 U.S.C. § 705, DOL first seeks to evade judicial review of its failure to comply with those requirements, and other requirements imposed on it by the Workforce Innovation and Opportunity Act (WIOA), by characterizing Plaintiffs' claims as contract claims and by claiming the loss of Job Corps services does not constitute an injury. That DOL carried out its decisions to close centers and suspend the program providing Plaintiffs with vital services by terminating contracts with third parties, however, is irrelevant to this Court's jurisdiction over Plaintiffs' claims—which are not based on any contractual rights. Their Administrative Procedure Act (APA) claims, based on obligations

---

[1] All cited Exhibits are attached to the previously filed Declaration of Adam R. Pulver (ECF 3-2).

imposed by WIOA, are properly brought in this Court—there is no other venue in which they could bring them. DOL's other jurisdictional argument, that the recipients of government-provided housing, education and training, or medical services do not suffer an injury-in-fact from the deprivation of those services if it is possible that they could obtain housing or services elsewhere, is contrary to well-established law.

On the merits, DOL's primary argument is that it has not "closed" any Job Corps center as that term is used under the statute. But this Court "must exercise independent judgment in determining the meaning of [the] statutory provision," and adopt "the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). Here, ordering a "shutdown" of a Job Corps center while informing students they should not expect to return and describing the decision as "aligned" with the recommendation to permanently eliminate the Job Corps program, is a "closure" of that Center, under the best reading and indeed any reasonable reading of the statute. That DOL previously suspended operations of Job Corps centers under different factual circumstances without complying with the requirements of 29 U.S.C. §§ 3209(j) and 3211(c) does not alter the statute's plain meaning.

DOL's reliance on 29 U.S.C. § 3209(f)(2), which it reads as providing it unreviewable authority to indefinitely suspend the operations of Job Corps centers without undertaking the statutory closure requirements, is misplaced, as that statute does nothing of the sort. Instead, that provision only gives DOL the authority to issue and follow "performance improvement plans" for centers that meet certain requirements and take certain steps as part of those plans—none of which include program suspensions. No performance improvement plans are at issue here. DOL's other merits arguments similarly rely on overbroad notions of deference and discretion, untethered to the relevant statutory provisions. Moreover, while DOL's view that the Job Corps program is

wasteful or ineffective may authorize the agency to take steps to improve the program, that view cannot justify overriding the statutory requirement that the program exist and operate nationwide, DOL's failure to consider other relevant factors including students' reliance interests, or its lack of authority to impound appropriated funds.

As to the other factors, DOL's glib dismissal of the harms Plaintiffs will suffer as a result of DOL's actions is shocking. The loss of Job Corps-provided housing, training and education, and health care services is an irreparable injury, and, absent judicial relief, certain to occur. Given the evidence of what happened at Job Corps centers around the country as they began "shutdown operations" at DOL's direction, the fact that DOL has sent students lists of resources, and a DOL request that nonprofit and other government partners assist putative class members, does not disprove the threat of irreparable injury.

As each of the relevant factors weigh strongly in Plaintiffs' favor, the Court should grant the Plaintiffs' request for a preliminary injunction and section 705 stay, postpone DOL's suspension of Job Corps operations and closures of 99 Job Corps centers pending resolution of this action, and enjoin any efforts in furtherance of that suspension and those closures.

## SUPPLEMENTAL BACKGROUND

At the time Plaintiffs filed their motion, DOL's actions with respect to the Job Corps program were subject to a temporary restraining order issued by the United States District Court for the Southern District of New York, in a case brought by Job Corps program operators, contractors, and an individual participant. *See Nat'l Job Corps Ass'n v. DOL*, No. 25-cv-04641, 2025 WL 1577843, at *1 (S.D.N.Y. June 4, 2025) (*NJCA I*). On June 25, 2025, that court granted the plaintiffs' motion for a preliminary injunction, finding that the plaintiffs were likely to succeed on the merits of their claims and that the other factors weighed in favor of a preliminary injunction. *Nat'l Job Corps Ass'n v. DOL*, No. 25-cv-04641, 2025 WL 1752414 (S.D.N.Y. June 25, 2025)

(*NJCA II*). As to the scope of relief, the court held that its injunction would apply "nationwide, including having full force in the District of Columbia pending the outcome of that litigation, except that the injunction will not supersede any contrary ruling by the Court in the District of Columbia or any other federal circuit or district courts outside of the Second Circuit." *Id.* at *10. Since that injunction was issued, the *NJCA* court has requested supplemental briefing regarding the impact, if any, of the Supreme Court's ruling in *Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631 (June 27, 2025). That briefing is currently due on July 11, 2025. *See Nat'l Job Corps Ass'n v. DOL*, No. 25-cv-04641, Dkt. No. 63 (S.D.N.Y. June 30, 2025).

## ARGUMENT

### I. This Court has jurisdiction over Plaintiffs' claims.

#### A. Plaintiffs' claims are not contractual.

DOL argues that Plaintiffs' claims are subject to the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act. Opp'n 11–14. Under well-established precedent, DOL is wrong.

For one, "[t]here cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act." *Tootle v. Secretary of Navy*, 446 F.3d 167, 177 (D.C. Cir. 2006). And DOL concedes that there is no Tucker Act jurisdiction over Plaintiff's claims, because, in their words, "Plaintiffs are not parties to contracts with DOL, nor are they in privity of contract." Opp'n 15.

That Plaintiffs' claims are not contractual in nature is plain under the D.C. Circuit's well-established *Megapulse* standard. As that court has explained, whether an APA claim is a disguised contract claim and thus subject to exclusive Tucker Act jurisdiction "depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982). As to the first

*Megapulse* factor, "What matters is what the court must examine to resolve the case: If a plaintiff's claim depends on interpretations of statutes and regulations rather than the terms of an agreement negotiated by the parties, the claim is not in essence contractual." *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817, at *12 (D.C. Cir. May 3, 2025) (Pillard, J., dissenting from grant of stay pending appeal) (citing *Crowley Gov't Servs., Inc. v. GSA*, 38 F.4th 1099, 1109–10 (D.C. Cir. 2022)), *stay pending appeal vacated by* 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025) (en banc) (adopting Judge Pillard's reasoning). Here, Plaintiffs' claims do not depend on the interpretation of any contract terms, but rather on interpretation of the relevant statute, WIOA. It is WIOA, not any Job Corps center operator contract, that requires DOL to maintain a national Job Corps program, that requires Job Corps centers to provide specific services to eligible students like members of the putative class, that requires DOL to provide advance notice and an opportunity for comment before closing a center, and that requires DOL to consider specific factors in deciding whether and how to close a center.

As to the second *Megapulse* factor, Plaintiffs seek vacatur of (and, preliminarily, a stay of and injunction against) DOL's suspension of Job Corps program operations and the closure of 99 Job Corps centers. Such relief is "precisely the relief that is afforded—indeed, *required*—by and routinely granted under the APA." *AIDS Vaccine Advocacy Coal. v. U.S. Dep't of State*, 770 F. Supp. 3d 121, 135 (D.D.C. 2025). Although DOL suggests that the requested relief is equivalent to "the classic contractual remedy of specific performance," Opp'n 14 (quoting *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985)), the remedy of "specific performance" refers to an order that a party perform specific contractual obligations, based on a finding of an actual or threatened breach of contract. *See Am. Ctr. for Int'l Labor Solidarity v. Chavez-DeRemer*, No. 25-1128 (BAH), 2025 WL 1795090, at *18 (D.D.C. June 30, 2025) ("The equitable remedy

of specific performance 'is available only to protect contract rights.'" (quoting 71 Am. Jur. 2d Specific Performance § 1 (2025)); *Agudas Chasidei Chabad of United States v. Russian Fed'n*, No. 1:05-CV-1548-RCL, 2020 WL 13611456, at *22 (D.D.C. Nov. 6, 2020) ("[S]pecific performance 'is a form of injunctive relief that compels the defendant to perform [a] contract with the plaintiff.'" (quoting Edward D. Re, Remedies: Cases and Materials 281 (2d ed. 1987)). Here, Plaintiffs do not ask the Court to order the performance of any contractual obligations, but rather to perform *statutory* obligations. That DOL might have to honor existing contracts, or enter into different ones, to comply with its *statutory* obligations to keep the Job Corps centers that Plaintiffs and other putative class members attend open and providing services does not convert the relief sought into specific performance of any contract.

### B.    Recipients of Job Corps services have standing to challenge DOL's directives terminating those services.

DOL's arguments that Plaintiffs lack standing are meritless. First, because Plaintiffs do not seek to enforce any contractual obligations, DOL's argument that they lack standing to enforce such obligations, *see* Opp'n 15, is irrelevant. As discussed above, at 5, Plaintiffs seek to enforce statutory obligations.

Second, DOL's argument that Plaintiffs will not suffer an injury-in-fact from the loss of Job Corps-provided services, *see* Opp'n 16–17, is contrary to well-established precedent. "[P]laintiffs have long been empowered to challenge the rescission of government benefits in federal court," based on the theory that the deprivation of "benefit[s] to which [they] claim[] a legal entitlement" is a "cognizable injury." *Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 978 (D.C. Cir. 2016) (collecting cases). Here, Plaintiffs claim that they are entitled to Job Corps-provided services, and there is no question that those services will be terminated as a result of the challenged actions. *See, e.g.*, Notice of Termination for Convenience (Ex. 4) at 6 (directing Job

Corps centers to terminate services and "separate" every putative class member). The named Plaintiffs' declarations suffice to establish that the deprivation of these housing, education, job placement, medical and other services constitutes a concrete harm that suffices to establish an injury-in-fact. *E.g.*, Cabrera Decl. ¶¶ 12–13 (ECF 3-3) (loss of housing and ability to complete training program); Davis-Newman (ECF 3-5) ¶ 8 (loss of housing, training, transportation, and meals); Christensen Decl. (ECF 3-7) ¶ 7 (loss of medical services); *see NJCA II*, 2025 WL 1752414, at *6 (finding Job Corps' student's upcoming "loss of housing, educational opportunities, and meals at no cost" constitutes an injury-in-fact); *Ams. for Safe Access v. DEA*, 706 F.3d 438, 445 (D.C. Cir. 2013) (finding injury-in-fact where agency action "deprives [plaintiff] of services that he is entitled to receive free of charge from the [agency]"). DOL is wrong that the possibility that Plaintiffs may be able to obtain replacement services from other sources nullifies the injury. *Cf. Black Bear Sports Grp., Inc. v. Amateur Hockey Ass'n of Illinois, Inc.*, 962 F.3d 968, 971 (7th Cir. 2020) (recognizing that "mitigation is not a necessary component of justiciability").

Additionally, though irrelevant, DOL's assertions regarding the Plaintiffs' "alternatives" misstate the content of Plaintiffs' declarations. While DOL cites Plaintiff Logan Christensen's declaration for the assertion that "many [plaintiffs] have arranged for alternative housing," Opp'n 17, his declaration states only that he stayed with family members for one week after he was forced out of Job Corps housing as a result of DOL's challenged directives and that he returned to Job Corps housing when it reopened as a result of the *NJCA* temporary restraining order. *See* Christensen Decl. (ECF 3-7) ¶¶ 5–6. And while the declaration of Plaintiff Deondre Burkes states that he had a "potential job opportunit[y]," Opp'n 17, the declaration goes on to explain that, as a result of the challenged actions, his Job Corps center "has not followed through in getting [his]

interview scheduled, facilitating transportation to and from the interview, providing appropriate attire, and ensuring a smooth transition plan to stable housing." Burkes Decl. (ECF 3-4) ¶ 7. The loss of these support services is itself a harm. And while Plaintiff Anaria Cabrera has stated that she applied to and was accepted to a local community college, Cabrera Decl. (ECF 3-3) ¶ 14, *cited in* Opp'n 17, her declaration explains that, if the Job Corps center closes, she would "likely live at a homeless shelter or on the streets" while attending that school, *id.* These facts establish Plaintiffs' standing.

## II.    Plaintiffs are likely to succeed on the merits of their claims.

### A.    DOL directed the closure of 99 Job Corps centers without complying with statutory requirements.

Defendants do not dispute that they are required to follow specific public participation requirements, 29 U.S.C. § 3209(j), and decision-making requirements, *id.* § 3211(c), before closing a Job Corps center and in determining "how to carry out such closure," *id.* Nor do they dispute they did not do so with respect to any of the 99 centers at issue. Rather, their only argument in response to Plaintiffs' claims that they violated those statutory requirements is that they have not directed the "closure" of any center as that term is used in the statute, but rather have deployed nonreviewable discretionary authority to "pause" center operations. That argument is divorced from both the facts and the statutory text.

As explained in Plaintiffs' opening memorandum, under its ordinary meaning, to "close" something is "to suspend or stop the operations of" it. Pls.' Mem. 13 (quoting *Close*, Merriam-Webster.com Dictionary (June 18, 2025), https://www.merriam-webster.com/dictionary/close). DOL does not offer any competing definition. It simply states that "DOL standard of practice has long differentiated between a center 'closure' and a 'pause' or 'suspension' of center operations," pointing to a handful of occasions where it has "pause[d] center operations and /or place[d] centers

in 'inactive status.'" Opp'n 18–19. As the *NJCA* court recognized, those prior "pauses" and "suspensions" arose in markedly different factual circumstances, including temporary closures related to hurricane-related damage. *See NJCA II*, 2025 WL 1752414, at *8. But, more importantly, what constitutes a "closure" is a question of statutory interpretation that this Court must resolve for itself without deference to DOL practice. *See Loper Bright*, 603 U.S. at 401 (recognizing "abdication in favor of the agency is *least* appropriate" in interpreting the statutory "scope of an agency's own power"). And it is the substance of DOL's actions, not the label DOL has chosen, that matters and that must be assessed against the words of the statute. *Cf. Safari Club Int'l v. Zinke*, 878 F.3d 316, 332 (D.C. Cir. 2017) (recognizing that an agency may not escape notice-and-comment requirements under 5 U.S.C. § 553 based on artful labelling).

Under the statute's plain meaning, DOL's actions constitute "closures" of each of the 99 centers. *See NJCA II*, 2025 WL 1752414, at *7 (holding that DOL's "labeling of these actions as 'terminations' creates a distinction without difference"). For one, DOL itself refers to its action as a suspension of operations, which, as noted above, at 8, is the very definition of a closure. Further, the facts show that each of the 99 Job Corps centers has been ordered "closed."  DOL directed the 99 Job Corps centers to "shutdown," that is, cease to be open, as of June 30, 2025. *See*, *e.g.*, Notice of Termination for Convenience (Ex. 4) at 1 ("You shall begin immediately all work necessary to provide a safe, orderly, and prompt shutdown of center operations"); *id.* at 8 ("While shutdown activities continue…"). It referred to "the cessation of operations at [each] Job Corps Center after June 30th." Notice of Intent Not to Exercise Next Option (Ex. 5) at 1. It told center operators to make clear that the shutdown was *not* temporary, and that students should not have any "expectation" to return to the "suspended" centers. Notice of Termination for Convenience (Ex. 4) at 7. Neither its contemporaneous explanations of its actions nor any evidence produced by

DOL indicate that DOL has *any* intention of reopening any of the 99 Job Corps centers, or resuming their provision of services. To the contrary, in the *NJCA* case, "DOL concede[d] that there are no discussions concerning the consolidation or reopening of any of the centers." *NJCA II*, 2025 WL 1752414, at *8.

Other than its own practice, the only thing DOL points to as support for its notion that an indefinite suspension of operations at a Center is different from a closure of that center is 29 U.S.C. § 3209(f), which it says grants it "discretionary authority to pause center operations and/or place centers in 'inactive status,'" and makes the exercise of that authority unreviewable under the APA. Opp'n 27. But that statutory provision, far from supporting DOL, bolsters Plaintiffs' argument. Section 3209(f) requires DOL to develop and implement performance improvement plans for centers that meet specific criteria, and identifies seven steps that DOL may take pursuant to such a plan:

> (A) providing technical assistance to the center;
>
> (B) changing the career and technical education and training offered at the center;
>
> (C) changing the management staff of the center;
>
> (D) replacing the operator of the center;
>
> (E) reducing the capacity of the center;
>
> (F) relocating the center; or
>
> (G) closing the center.

29 U.S.C. § 3209(f)(2). DOL does not assert that it has developed or implemented a performance improvement plan for any of the shuttered centers, or that the threshold requirements for imposing such a plan were satisfied as to each of those centers. Therefore, this statute does not apply.

Even where the statute *does* apply, nothing in it gives DOL "authority to pause center operations," Opp'n 19, much less makes the exercise of any such authority unreviewable under the APA. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (emphasizing that the "committed to agency discretion by law" exception to APA review is "very narrow" and applies only in "rare instances"). The term "pause" or "suspension" appears nowhere in the list of authorized actions. As to the first six listed actions, each contemplates, unlike here, that a center's operations will continue, albeit in some modified way. It is only the seventh action, "closing the center," which could encompass DOL's actions here. And there is no suggestion that a closure of a center pursuant to a section 3209(f)(2) performance improvement plan may be achieved without compliance with the requirements contained in section 3209(j).

Since DOL has directed the closure of 99 Job Corps centers without following the requirements of section 3209(j) and section 3211(c), Plaintiffs are likely to succeed on their claims that DOL acted contrary to those statutory provisions.

**B.      The indefinite suspension of Job Corps program operations is contrary to law.**

DOL has not only directed each of the 99 Job Corps centers to cease operating, but it has announced a "suspension of program operations" for the entire Job Corps program more broadly. *See* Job Corps Pause FAQs, Ex. 3. Plaintiffs are likely to succeed on their claim that this broader suspension is contrary to law. *See* Compl. ¶¶ 55–56.

As explained in Plaintiffs' opening memorandum, sections 3193, 3197(a)(1), 3197(c), 3198(a), and 3199(a)–(c), require the existence of the Job Corps program, the operation of Job Corps centers, and the provision of services to students at these centers. *See* Pls. Mem. 14. The continued operation of Civilian Conservation Centers by USDA does not, as DOL now suggests, *see* Opp'n 23, suffice to satisfy these requirements. For one, as part of its contemporaneous explanation of the challenged actions, DOL stated that it "does not contract with center operators

11

at the USDA sites," and that "USDA owns and operates their 24 centers." Job Corps Pause FAQs (Ex. 3) at 2. In the Matz Declaration, DOL reaffirmed that it "does not contract with center operators at the 24 USDA Forest Service sites." Matz Decl. (ECF 20-1) ¶ 12. Without citation, DOL's counsel now suggests that DOL *does* contract for the operation of those sites, and that such contracts satisfy its obligations under 29 U.S.C. § 3197(a)(1) to enter into contracts "for the operation of each Job Corps center." Opp'n 23. The Court should not credit this unsupported factual assertion, which is contrary to the record evidence and the agency's contemporaneous explanations. *Cf. SEC v. Chenery*, 318 U.S. 80, 95 (1943) (holding that an agency action "cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained"); *United States v. Wilson*, No. 23-CR-427-1 (DLF), 2025 WL 1009047, at *8 (D.D.C. Mar. 13, 2025) (rejecting agency's "*post hoc* justification adopted in response to litigation").

Further, the best reading of Congress's directive that "Job Corps centers may *include* Civilian Conservation Centers … that are located primarily in rural areas," 29 U.S.C. § 3197(d)(1) (emphasis added), is *not* that the operation of Civilian Conservation Centers is alone sufficient to satisfy DOL's statutory obligations to ensure the operation of Job Corps centers. "The word 'includes' is a term of enlargement, not of limitation, and … the reference to certain entities or categories is not intended to exclude all others." *Am. Fed'n of Television & Radio Artists, Washington-Baltimore Loc. v. NLRB*, 462 F.2d 887, 890 (D.C. Cir. 1972). Had Congress intended for DOL to be able to satisfy its obligations under the Job Corps program solely by the operation of USDA-run Civilian Conservation Centers, it would have used a different word. This conclusion is confirmed by other statutory provisions that treat Civilian Conservation Centers differently from other Job Corps centers, and that contemplate that there will be some Job Corps centers that are

12

Civilian Conservation Centers and some that are not. *See*, *e.g.*, 29 U.S.C. § 3209(f)(4). In addition, the 24 Civilian Conservation Centers, located in rural areas in fifteen states, cannot be said to form a "national Job Corps program" as contemplated by Congress. *Id.* § 3191(1).

### C.    The performance improvement plan provision does not provide statutory authority for DOL's actions.

Plaintiffs have also challenged DOL's suspension of Job Corps program operations as an action taken in excess of statutory authority. *See* Compl. ¶¶ 63-65. As explained in Plaintiffs' opening memorandum, it is well-established that the authority to administer a program does not inherently provide the authority to halt that program. *See* Pls. Mem. 17 (collecting cases). The only statutory authority DOL points to in response, Opp'n 20, is the section 3209(f)(2) provision requiring DOL to "develop and implement a performance improvement plan" in certain scenarios.[2] But as explained above, at 10–11, nothing in that provision provides authority to do anything outside the context of a performance improvement plan for a particular Job Corps center. Even then, it does not authorize a pause of operations other than via closing a center consistent with statutory requirements. Finally, it says nothing about DOL's authority to suspend operations for the Job Corps program *en toto*. Section 3209(f)(2) thus cannot serve as the basis of authority for the challenged actions.

### D.    DOL's failure to consider all relevant factors, including other options, renders its actions arbitrary and capricious.

Plaintiffs have pointed to numerous important factors that DOL failed to consider before taking the drastic measures of shutting 99 Job Corps centers and suspending Job Corps program

---

[2] DOL also argues that Plaintiffs cannot bring a "non-APA *ultra vires*" claim that would improperly duplicate "their arguments that DOL 'exceeded its authority.'" Opp'n 25 (quoting Pls. Mem. 17). Plaintiffs do not bring any non-APA *ultra vires* claims, though. Each of Plaintiffs' five claims for relief are explicitly based on the APA, 5 U.S.C. § 706(2). *See* Compl. ¶¶ 50–70.

operations with one month's notice—including the reliance interests of students like plaintiffs, the predictable chaos that would (and did) ensue at centers around the country, the possibility of less drastic measures, and the statutory directive that the program continue, despite the problems that DOL cited as having "been publicly known" "for years." Pls. Mem. 15–16 (quoting Job Corps Pause FAQ (Ex. 3) at 9). Plaintiffs also explained why the "Transparency Report" that DOL purported to rely upon was deeply flawed. *Id.* at 16.

DOL has not meaningfully responded to these arguments. Instead, it simply invoked the reasons that Plaintiffs already explained are insufficient to satisfy the requirements of reasoned decision-making, and asks the Court to "defer" to the agency's determination that the program should not continue. Opp'n 22–23. A court's review of agency action alleged to be arbitrary and capricious, however, must be "searching and careful." *Overton* Park, 401 U.S. at 416. Here, DOL offers reasons why, in its view, perceived problems with the Job Corps program warranted action. But it has not shown why it concluded that the appropriate response was the complete, sudden shutdown of 99 centers. Because there is no evidence that DOL considered all relevant factors (reliance interests, alternatives, statutory requirements) in deciding to take the particular course of conduct it ultimately chose, that choice was arbitrary and capricious. *See DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 29 (2020) (holding that "[t]he fact that there may be a valid reason not to" choose a given alternative option "does not establish that [an agency] considered that option or that such consideration was unnecessary"); *Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 242 (D.C. Cir. 2008) (recognizing that an agency must consider "responsible alternatives to its chosen policy"); *cf. Judulang v. Holder*, 565 U.S. 42, 64 (2011) ("[C]heapness alone cannot save an arbitrary agency policy.").

E.    The indefinite suspension of Job Corps program operations violates the Impoundment Control Act.

Plaintiffs are also likely to succeed on their claim that DOL has violated the Impoundment Control Act by indefinitely suspending Job Corps program operations and, thus, refusing to spend the money Congress appropriated to fund those operations. DOL emphasizes its discretion as to *how* to use appropriated funds. Opp'n 24. As noted in the very case it cites for that proposition, however, "the appropriations laws reflect an exercise of Congress's own, core constitutional power to determine *whether and how much* money is spent." *AVAC*, 770 F. Supp. 3d at 147. Thus, if, as DOL argues, continuing to operate the Job Corps program in the way it had would create a "potential risk of another significant program budget deficit," DOL can make changes to the program to avoid a deficit. But DOL cannot decide not to spend the appropriated funds at all, as it has done by completely suspending Job Corps program operations.

DOL's counsel's statement that the agency "has not made any final agency decision as to the expenditure of [appropriated] funds," Opp'n 25, does not change this analysis. For one, it is belied by public statements indicating that this action has been taken to save taxpayer money and end Job Corps for policy reasons. *See* News Release (Ex. 2); Job Corps Pause FAQs (Ex. 3) ¶ 9; *see also* Opp'n 28 (arguing that the Court should deny the requested relief based on Defendants' conclusion that continuation of the Job Corps program is not desirable for policy reasons). Moreover, an agency's refusal to spend appropriated funds does not become lawful by calling it a "pause[]," particularly where, as here, that "pause" "was specifically 'designed to negate congressional budgetary policies.'" *AVAC*, 770 F. Supp. 3d at 147–48 (quoting *City of New Haven v. United States*, 809 F.2d 900 (D.C. Cir. 1987)).

15

III.    **The imminent loss of Job Corps housing, education and training services, and health care constitutes non-speculative irreparable harm.**

In their opening memorandum and accompanying declarations, Plaintiffs explained that the imminent closure of the 99 Job Corps centers will deprive them of the ability to complete vocational and other training, and to obtain workforce transition services, medical services, and housing; that such deprivations cannot be remedied at the conclusion of this litigation; and that they will face extraordinary difficulties in obtaining replacement housing and services. *See* Pls. Mem. 18–19. DOL does not dispute that such harms cannot be remedied by an award of monetary damages. Instead, it asserts that, even though DOL has directed each of the 99 Job Corps centers to cease providing these services, it is "speculative" that these harms will occur. Opp'n 26–27.

DOL's argument appears to rest on both factual and legal errors. To start, its assertion that no Plaintiff "has actually suffered [the identified] harms," *id.* at 26, is wrong. Several named plaintiffs *did* lose their housing as a result of DOL's actions, although some of them later returned to Job Corps housing after the issuance of a temporary restraining order in the *NJCA* case. *See* Sasser Decl. (ECF 3-6) ¶ 8; Christensen Decl. (ECF 3-7) ¶ 6; Shauger Decl. (ECF 3-8) ¶¶ 9–10, 12; Davis Decl. (ECF 3-9) ¶ 13. Even after the *NJCA* temporary restraining order, Plaintiffs continue to be denied access to educational programs, transition services, and medical services. *See* Cabrera Decl. ¶¶ 12–13; Burkes Decl. ¶ 7; Christensen Decl. ¶ 7; Shauger Decl. ¶¶ 11–14; Davis Decl. ¶ 14.

Moreover, the relevant question is not whether Plaintiffs have *already* suffered irreparable harm as a result of DOL's actions, but whether they are "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. NRDC*, 555 U.S. 7, 20 (2008). It is beyond dispute that Plaintiffs *will* lose access to Job Corps-provided services without such relief. That loss of services is irreparable harm that cannot be remedied at the close of this litigation. *Cf. NJCA II*, 2025 WL

16

1752414, at *9 (holding that Job Corps participant's "impending homelessness and inability to complete her culinary program are certainly irreparable").

DOL's assertion that Plaintiffs *may* be able to obtain replacement housing, health care, or job training and placement services does not establish that harm is unlikely. For one, it is contrary to Plaintiffs' declarations. Plaintiff Cabrera has explained that she will "likely end up in a homeless shelter" if she loses access to Job Corps dorms. Cabrera Decl. ¶ 13. This is not idle speculation, given that she previously "lived on the streets" and "sle[pt] in hotel lobbies" when she lost Job Corps housing during the COVID-19 pandemic. *Id.* ¶ 5. And unsurprisingly given that Job Corps participants must be both low-income and experiencing another specified barrier to employment, such as homelessness, 29 U.S.C. § 3194(a), Ms. Cabrera is not alone in fearing she will end up homeless should her Job Corps center close. Plaintiffs have attested to the fact that many other putative class members are already homeless as a result of DOL's direction that centers commence "shutdown operations." *See* Burkes Decl. ¶ 8; Christensen Decl. ¶ 6; Davis-Newman Decl. ¶ 7; Shauger Decl. ¶ 14; Davis Decl. ¶ 13.

Further, Plaintiffs have shown that alternative sources of housing, employment, or support services that may be available are inadequate and do not eliminate the harm that flows from DOL's actions. For example, Plaintiff Burkes, who has "been homeless for most of [his] life," has explained that if he cannot receive Job Corps job placement and housing services, he "will be back working menial jobs with starvation wages and no benefits and will barely have enough money to live." Burkes Decl. ¶¶ 9–10. Plaintiff Davis-Newman has explained that, unless he completes his Job Corps-sponsored construction foreman program, he will be forced to take a job with lower wages. Davis-Newman Decl. ¶ 9. The fact that some lower-paying jobs may be available to

Plaintiffs without Job Corps services does not mean that Plaintiffs will not be irreparably harmed by the loss of those services.

The vague "resources" that DOL asserts are available to the 25,000 Job Corps students who will suddenly lose access to housing and services, Opp'n 27, do not eliminate the risk of irreparable harm. These resources appear to be little more than lists of other government and private entities that might be able to assist students, accompanied by DOL "requests" to state and local workforce partners that they "assist current students" by "connecting them with education and employment opportunities." McGee Decl. ¶ 20-3. Even a strong desire by DOL that Plaintiffs acquire alternative sources of housing, training, and job placement assistance does not eliminate the likelihood of irreparable harm as a result of the termination of Job Corps services.

## IV.    The continuation of a congressionally mandated program is in the public interest.

As to the final preliminary injunction factors, DOL asserts that the continued operation of the Job Corps program is contrary to the public interest because, in its view, it is a failed program and a waste of money. Opp'n 28. But Congress has determined otherwise and expressed that determination via duly enacted statutes. Compliance with those statutes is in the public interest, and "the government 'cannot suffer harm from an injunction that merely ends an unlawful practice.'" *Angelica S. v. HHS*, No. 25-CV-1405 (DLF), 2025 WL 1635369, at *9 (D.D.C. June 9, 2025) (quoting *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015)). Further, DOL's professed concern as to "taxpayer costs," Opp'n 28, must be balanced against its own insistence that Plaintiffs can turn to other government agencies to make up for DOL's termination of services; prohibiting DOL from shifting costs from the Job Corps program to other already taxed programs is consistent with the public interest. As the *NJCA* court explained, DOL's "claimed hardship amounts to little more than a complaint that the DOL will be required to spend funds that Congress has already set aside for the operation of the Job Corps program. Such a 'hardship', to the extent

it could even be considered one, pales in comparison to the lost livelihood, educational
opportunities, shelter, [and] food … of Plaintiffs." *NJCA II*, 2025 WL 1752414, at *9.

## V.    Relief should not be limited to the named plaintiffs.

DOL's argument that any relief ordered by this Court "should be narrowly tailored to afford
relief only to the named Plaintiffs," Opp'n 28, ignores two crucial features of this case that
differentiate it from the cases it cites, as well as the Supreme Court's recent decision in *Trump v.
CASA, Inc.*, No. 24A884, 2025 WL 1773631 (June 27, 2025). For one, unlike in those cases,
Plaintiffs filed a motion for class certification concurrently with their motion for a preliminary
injunction. ECF 4. As the Supreme Court recently reaffirmed, "courts may issue temporary relief
to a putative class." *A.A.R.P. v. Trump*, 145 S. Ct. 1364, 1369 (2025). Alternatively, the Court may
certify the class and issue preliminary relief concurrently. *See Angelica S.*, 2025 WL 1635369, at
*12 (granting motion for class certification and motion for preliminary injunction concurrently).

Second, Plaintiffs seek not only a preliminary injunction, but a stay pursuant to section 705
of the APA. As explained in their opening memorandum, a section 705 stay is inherently not party-
specific. *See* Pls. Mem.  20–21. DOL has not addressed this argument or otherwise acknowledged
Plaintiffs' request for a section 705 stay. Any contrary argument is thus waived. *See Texas v. EPA*,
829 F.3d 405, 435 (5th Cir. 2016) (holding agency "waived any argument about the scope of the
stay" when it "offer[ed] nothing beyond [a] cursory comment" that a stay should be "narrowly
tailored").

## VI.    Neither a bond nor a stay pending appeal are appropriate.

DOL asks this Court to require Plaintiffs to post a bond, Opp'n 29, but it does not address
Plaintiffs' arguments that no security should be required in this case because section 705 contains
no bond requirement. Likewise, it does not counter Plaintiffs' argument that it would be an
appropriate exercise of this Court's discretion not to require a bond, given equitable considerations.

19

*See* Pls. Mem. at 21–22 (collecting cases).[3] To require low-income recipients of government services to post a $3 million-a-day bond as DOL requests would effectively deprive them of any ability to vindicate their rights to obtain such relief, and would not be a sound exercise of "the broad equitable authority granted by Rule 65(c)." *DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999); *see also Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980) (noting "the widely recognized discretion that a district court granting temporary injunctive relief has with respect to the security requirement of Rule 65(c)").

Defendants' cursory request for a stay pending appeal, ECF 20 at 37, does not address any of the stay factors and, in any event, is premature. *See Nat'l Council of Nonprofits v. OMB*, No. CV 25-239 (LLA), 2025 WL 597959, at *19 n.14 (D.D.C. Feb. 25, 2025); *United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., AFL-CIO v. Thornburgh*, No. CIV. A. 90-2342, 1991 WL 171463, at *1 (D.D.C. Aug. 21, 1991). If, after reviewing any forthcoming opinion and order, Defendants "believe that a stay pending appeal is warranted, they may make a request consistent with Federal Rule of Appellate Procedure 8," *Nat'l Council of Nonprofits*, 2025 WL 597959, at *19 n.14, at which point Plaintiffs could file a meaningful response.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for a preliminary injunction and stay. The Court should order postponement of the effective date of DOL's orders to shut down the 99 Job Corps centers at issue and its suspension of Job Corps program operations, and order Defendants to halt efforts in furtherance of those orders and suspension pending conclusion of this action.

---

[3] In the alternative, the Court may order the posting of a nominal bond in the amount of $1.00.

Dated: July 2, 2025                          Respectfully submitted,

                                             /s/ Adam R. Pulver
                                             Adam R. Pulver (DC Bar No. 1020475)
                                             Michael T. Kirkpatrick (DC Bar No. 486293)
                                             Public Citizen Litigation Group
                                             1600 20th Street NW
                                             Washington, DC 20009
                                             (202) 588-1000
                                             apulver@citizen.org

                                             Arthur Ago (DC Bar No. 463681)
                                             Aaron S. Fleisher*† (NY Bar No. 4431052)
                                             Southern Poverty Law Center
                                             1101 17th St. NW Ste. 705
                                             Washington, DC 20036

                                             Scott D. McCoy* (FL Bar No. 1004965)
                                             Sam Boyd* (FL Bar No. 1012141)
                                             Carli Raben* (FL Bar No. 1036013)
                                             Southern Poverty Law Center
                                             2 S. Biscayne Blvd. Ste. 3750
                                             Miami, FL 33131

                                             Michael Tafelski* (GA Bar No. 507007)
                                             Diego A. Soto* (DC Bar No. 1029607)
                                             Southern Poverty Law Center
                                             150 E. Ponce De Leon Ave. Ste. 340
                                             Decatur, GA 30030

                                             *Counsel for Plaintiffs*

                                             * *Admitted* pro hac vice
                                             † *Not admitted to practice law in DC*