# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANARIA CABRERA, et al.,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF LABOR, et al.,<br><br>    *Defendants*. | Civil Action No. 1:25-cv-01909-DLF |

## DEFENDANTS' OPPOSITION TO
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

BACKGROUND .............................................................................................................................2

LEGAL STANDARD .....................................................................................................................4

ARGUMENT ...................................................................................................................................5

I.      The Court Lacks Jurisdiction to Consider Class Certification ...........................................6

II.     Plaintiffs Fail to Satisfy Rule 23(a)'s Requirements for Class Certification .....................7

        A.     Plaintiffs Do Not Adequately Represent the Interests of the Proposed Class Members ................................................................................................................8

        B.     Plaintiffs Fail to Satisfy Rule 23(a)'s Commonality and Typicality Requirements .........................................................................................................11

III.    Plaintiffs Also Fail to Satisfy Rule 23(b)(2) .....................................................................13

CONCLUSION ..............................................................................................................................15

## TABLE OF AUTHORITIES

**CASES**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................8, 10

*Brown v. District of Columbia*,
    928 F.3d 1070 (D.C. Cir. 2019) .............................................................................. 11, 13

*Bynum v. District of Columbia*,
    214 F.R.D. 27 (D.D.C. 2003) ..........................................................................................13

*C.G.B. v. Wolf*,
    464 F. Supp. 3d 174 (D.D.C. 2020) ................................................................................15

*Daskalea v. Wash. Humane Soc'y*,
    275 F.R.D. 346 (D.D.C. 2011) .........................................................................................5

*Dep't of Educ. v. California*,
    145 S. Ct. 966 (2025) ........................................................................................................6

*Forras v. Rauf*,
    812 F.3d 1102 (D.C. Cir. 2016) .......................................................................................7

*Garcia v. Johanns*,
    444 F.3d 625 (D.C. Cir. 2006) .....................................................................................5, 7

*Garnett v. Zeilinger*,
    323 F. Supp. 3d 58 (D.D.C. 2018) ...................................................................................7

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) ....................................................................................................5, 11

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) ..........................................................................................................6

*Gur-Ravantab v. Georgetown Univ.*,
    345 F.R.D. 1 (D.D.C. 2023) .............................................................................................8

*Harris v. Med. Transp. Mgmt., Inc.*,
    77 F.4th 746 (D.C. Cir. 2023) ..........................................................................................5

*In re Lorazepam & Clorazepate Antitrust Litig.*,
    289 F.3d 98 (D.C. Cir. 2002) ...........................................................................................7

*In re Navy Chaplaincy*,
    306 F.R.D. 33 (D.D.C. 2014) .........................................................................................11

*J.D. v. Azar*,
    925 F.3d 1291 (D.C. Cir. 2019) .................................................................................... 5, 8

*Lewis v. U.S. Parole Comm'n*,
    743 F. Supp. 3d 181 (D.D.C. 2024) ............................................................................... 5, 6

*Lightfoot v. District of Columbia*,
    273 F.R.D. 314 (D.D.C. 2011) .................................................................................... 13, 15

*Mayfield v. Dalton*,
    109 F.3d 1423 (9th Cir. 1997) ............................................................................................ 9

*Megapulse, Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982) ........................................................................................... 6

*O.A. v. Trump*,
    404 F. Supp. 3d 109 (D.D.C. 2019) ................................................................................. 11

*Perry Cap. LLC v. Mnuchin*,
    864 F.3d 591 (D.C. Cir. 2017) ........................................................................................... 6

*Richardson v. L'Oreal USA, Inc.*,
    991 F. Supp. 2d 181 (D.D.C. 2013) ................................................................................. 14

*Ross v. Lockheed Martin Corp.*,
    No. 16-cv-2508, 2020 WL 4192566 (D.D.C. July 21, 2020) .......................................... 15

*Steele v. United States*,
    200 F. Supp. 3d 217 (D.D.C. 2016) ................................................................................... 6

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ........................................................................................................... 7

*Travelers United, Inc. v. Hyatt Hotels Corp.*,
    761 F. Supp. 3d 97 (D.D.C. 2025) ..................................................................................... 7

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................................... 5, 11, 13, 14

**STATUTES**

5 U.S.C. § 705 ............................................................................................................................. 4

29 U.S.C. §§ 3191-3212 .............................................................................................................. 2

29 U.S.C. § 3191 .......................................................................................................................... 1

29 U.S.C. § 3194 .......................................................................................................................... 2

29 U.S.C. § 3197 ................................................................................................................2

31 U.S.C. § 1341 ..........................................................................................................3, 12

**RULES**

Fed. R. Civ. P. 23 .....................................................................................................5, 8, 13

## INTRODUCTION

Job Corps is a no-cost nationwide career-training program administered by the United States Department of Labor ("DOL") that was intended to help low-income young adults complete high school in a "primarily residential" setting and launch careers in the private sector or military. *See* 29 U.S.C. § 3191(1). These laudable objectives, however, have consistently gone unfulfilled. Indeed, as confirmed in an April 2025 DOL report analyzing Job Corps' recent performance and operational costs, the Job Corps program is plagued by low graduation rates, unsafe conditions for participants, and significant financial challenges, including a substantial (and enduring) operating deficit. On May 29, 2025, DOL accordingly announced that it would pause operations at all Job Corps centers operated by private contractors by June 30, 2025, and the Department provided current Job Corps enrollees with a variety of services and resources to help them transition out of the program.

On June 18, 2025, seven Job Corps participants filed this lawsuit to challenge what they call DOL's "closure" of all privately-operated Job Corps centers and the "indefinite suspension of Job Corps program operations" under the Administrative Procedure Act ("APA"). Not content to limit their claims to themselves alone, Plaintiffs also seek to represent a class consisting of all Job Corps participants enrolled at the 99 centers in which operations were paused.

Plaintiffs' motion to certify such a class should be denied. As a threshold matter, because the Court lacks jurisdiction over Plaintiffs' underlying claims, it likewise lacks jurisdiction to address class certification. And even if the Court were to conclude otherwise, Plaintiffs fail to show, as they must, that they satisfy all of the requirements for class certification. They have not demonstrated that they adequately represent the interests of all their proposed class members. Plaintiffs separately fail to show that their claims are common to and typical of the claims that

1

could be brought by members of their proposed class. And Plaintiffs also fail to show that they are entitled to the class-wide relief that is essential to properly maintaining a class action under Rule 23(b)(2).

## BACKGROUND

The background for this case is set forth in Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Defendants' PI Opposition"), *see* Defs.' PI Opp'n at 2-10, ECF No. 20, which need not be restated at length here.

Job Corps is a residential career and education-training program that was intended to assist eligible participants with completing their high school education and to provide those participants with vocational training to help prepare them to enter the workforce, move on to higher education, or join the military. McGee Decl. ¶¶ 2-3, ECF No. 20-2; *see* 29 U.S.C. § 3194(a) (listing the eligibility requirements for participating in Job Corps). The program is administered by DOL, and as of May 2025, DOL had entered into contracts with several private entities to operate 99 Job Corps centers located throughout the country. Matz Decl. ¶¶ 4-5, ECF No. 20-1; *see* 29 U.S.C. § 3197(a)(1)(A) (providing that DOL "shall enter into an agreement with a Federal, State, or local agency"; a "career and technical education school"; or "a private organization, for the operation of each Job Corps center"). Job Corps' governing statute, the Workforce Innovation and Opportunity Act ("WIOA"), 29 U.S.C. §§ 3191-3212, does not prescribe a minimum number of Job Corps centers that must be in operation or mandate that such centers operate in particular locations.

In April 2025, DOL released a "Job Corps Transparency Report" analyzing the recent financial performance and operational costs of the Job Corps program. McGee Decl. ¶ 7; *see id.*, Ex. 1-2. That report confirmed that the Job Corps program yields low average graduation rates (ranging between 32 and 38 percent), high average costs per student (more than $80,000 per

2

student per year), and even higher average costs per program graduate (between roughly $155,000 and $188,000 per graduate, depending on the definition used). *Id.*, Ex. 1. The report also confirmed that Job Corps participants earn relatively low average wages (less than $17,000 annually) upon separating from the program, *id.*, and it noted the nearly 15,000 "[s]erious [i]incident[s]" that were reported at Job Corps centers in program year 2023, including sexual assaults, acts of violence, drug use, and "[b]reaches of [s]afety or [s]ecurity," *id.*, Ex. 3.

On May 29, 2025, DOL announced that it was "pausing the operation of the 99 contractor-operated Job Corps centers," McGee Decl. ¶ 8, and "initiating an orderly transition for students, staff, and local communities," *id.*, Ex. 3. DOL noted in a press release that the decision to pause operations "follow[ed] an internal review of the program's outcome and structure" and that the pause "will occur by June 30, 2025." *Id.* DOL further noted that "[t]he Job Corps program has faced significant financial challenges under its current operating structure," including an operating deficit of $140 million in program year 2024 and a similarly sizable projected deficit for program year 2025. *Id.*; *see id.*, Ex. 4 at 2 (stating that the pause in operations was prompted in part by the fact that the Job Corps program "has been in a financial crisis for years, creating constant uncertainty for participants and administrators"); *see also* Anti-Deficiency Act, 31 U.S.C. § 1341(a)(1)(A) (prohibiting federal employees from making or authorizing an expenditure from any appropriation or fund in excess of the amount available in the appropriation or fund, unless authorized by law). DOL subsequently notified Job Corps center operators that their contracts with DOL would either be allowed to expire or terminated for convenience, and that Job Corps-related operations should cease by June 30, 2025. Matz Decl. ¶¶ 12-13. In conjunction with the May 29 decision to pause operations at privately operated Job Corps centers, DOL provided Job Corps participants with various forms of assistance designed to connect participants with

3

employment- and training-related resources at the state, regional, and local level and to ensure participants' safe return to their homes of record. Bearden Decl. ¶¶ 2-14, ECF No. 20-3. Such assistance included coordinating with other federal agencies "to identify resources to assist eligible Job Corps students with housing, benefits, and other services"; "mobilizing mobile units and rapid response teams on the regional and local levels to connect students with alternative training and employment opportunities"; and reaching out to "Industry Intermediaries" to "identify resources and tools to support Job Corps students." *Id.* ¶¶ 4-5, 7.

On June 18, 2025, Plaintiffs filed a complaint challenging the "closure of Job Corps centers" and the "suspension of the Job Corps program" under the APA, Compl. ¶ 8, ECF No. 1, and simultaneously moved for a preliminary injunction and a stay under 5 U.S.C. § 705, *see* ECF No. 3. Plaintiffs also filed a motion for class certification, in which they ask the Court to certify a class consisting of "[a]ll individuals enrolled, as of May 29, 2025, in Job Corps programs at centers operated by contractors that were subject to the suspension of Job Corps program operations announced by the Department of Labor on that date." ECF No. 4.

## LEGAL STANDARD

"Rule 23(a) sets out the threshold criteria for eligibility as a class action," which are that (1) "the proposed class be 'so numerous that joinder of all members is impracticable'"; (2) "class members' claims share common questions of law or fact"; (3) "the claims or defenses of the named representative parties be typical of all class members"; and (4) "the representative parties be capable of providing adequate representation to the whole class." *Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 752 (D.C. Cir. 2023) (quoting Fed. R. Civ. P. 23(a)). "These four requirements are commonly referred to in shorthand as numerosity, commonality, typicality, and adequacy of representation, respectively." *Daskalea v. Wash. Humane Soc'y*, 275 F.R.D. 346, 355 (D.D.C.

4

2011). In addition to meeting Rule 23(a)'s prerequisites, a proposed class must also qualify as one of the three "types" of class actions "specified" in Rule 23(b). *Harris*, 77 F.4th at 752. Here, Plaintiffs have moved to certify their proposed class under Rule 23(b)(2), which requires them to demonstrate that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

"[T]he party seeking certification bears the burden of showing compliance with Rule 23." *J.D. v. Azar*, 925 F.3d 1291, 1316 (D.C. Cir. 2019) (per curiam). "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rather "[a] party seeking class certification must affirmatively demonstrate [its] compliance with" the Rule's multiple requirements. *Id.* A court in turn must "conduct a 'rigorous analysis'" to ensure that those requirements have been met, which "will entail some overlap with the merits of the plaintiff's underlying claim[s]." *Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 194 (D.D.C. 2024) (quoting *Wal-Mart*, 564 U.S. at 351); *see Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("[T]he class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'"). And a plaintiff's "[f]ailure to adequately demonstrate" any one of Rule 23's requirements "is fatal to class certification." *Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006).

**ARGUMENT**

The Court should deny Plaintiffs' motion for class certification. For the reasons explained in Defendants' PI Opposition, the Court lacks jurisdiction over Plaintiffs' claims, which necessarily precludes its consideration of the propriety of class certification. And Plaintiffs fail in any event to satisfy all of the prerequisites for class certification under Rules 23(a) and (b)(2).

5

## I. The Court Lacks Jurisdiction to Consider Class Certification

As a threshold matter, the Court can only reach the issue of class certification if it has jurisdiction over Plaintiffs' underlying claims. *See Steele v. United States*, 200 F. Supp. 3d 217, 222 (D.D.C. 2016) (noting that a court "cannot certify a class before making a finding that it has subject matter jurisdiction"); *Lewis*, 743 F. Supp. 3d at 201 (addressing a motion for class certification only after deciding that the Court "ha[d] jurisdiction to hear the case"). As explained in Defendants' PI Opposition, however, Plaintiffs' challenge to DOL's decision to pause operations at all privately-operated Job Corps centers is inherently premised on the non-renewal or termination of government contracts, implicates the government's exercise of express contractual rights, and seeks to compel the government to continue providing—and paying for—services under those same contracts. *See* Defs.' PI Opp'n at 11-14. Plaintiffs' claims thus, "at [their] essence," are contract-based claims for specific performance over which this Court lacks jurisdiction. *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982); *see Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017) (observing that "specific performance is an explicitly contractual remedy"); *see also Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (per curiam) (explaining that "the APA's limited waiver of [sovereign] immunity does not extend to orders 'to enforce'" the Federal Government's "contractual obligation[s] to pay money'" (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). And therefore the Court likewise lacks jurisdiction to even consider class certification. *See Forras v. Rauf*, 812 F.3d 1102, 1105 (D.C. Cir. 2016) ("Without jurisdiction the court cannot proceed at all in any cause." (citation omitted)).

Additionally, Article III's standing requirements "apply with equal force" to plaintiffs "seeking to represent a class." *Travelers United, Inc. v. Hyatt Hotels Corp.*, 761 F. Supp. 3d 97,

6

110 (D.D.C. 2025); *see Garnett v. Zeilinger*, 323 F. Supp. 3d 58, 65 (D.D.C. 2018) ("[I]ndividual named plaintiffs representing a class must have standing to pursue their own individual claims at the time the suit was filed."). Standing is thus "a prerequisite to Rule 23 class certification because it goes to the court's jurisdiction." *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 107-08 (D.C. Cir. 2002). Yet as explained in Defendants' PI Opposition, Plaintiffs here have failed to sufficiently show that they will suffer an actual or imminent injury in fact as a result of the pause in Job Corps services they challenge. Defs.' PI Opp'n at 15-17; *see TransUnion LLC v. Ramirez*, 594 U.S. 413, 430-31 (2021) ("As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing."). Accordingly, because Plaintiffs have not adequately demonstrated their standing to sue, a prerequisite for class certification is absent here, which is fatal to their motion.

## II. Plaintiffs Fail to Satisfy Rule 23(a)'s Requirements for Class Certification

Plaintiffs in any event fail to satisfy the requirements of Rule 23(a). *See Garcia*, 444 F.3d at 631 (noting that "[f]ailure to adequately demonstrate any" of Rule 23's requirements "is fatal to class certification"). Although they demand that the Court reinstate all Job Corps center operations contracts and services as they existed before May 29, 2025, Plaintiffs have not demonstrated that they adequately represent the interests of every Job Corps participant, such as those who have benefitted from or prefer the various alternative resources that DOL provided them following the May 29 pause in operations, as well as those who the troubled Job Corps program did not help. And Plaintiffs separately fail to satisfy Rule 23(a)'s commonality and typicality requirements.[1]

---

[1] For purposes of Plaintiffs' present motion for class certification, Defendants do not challenge whether the proposed class satisfies the numerosity requirement, nor do Defendants object to the designation of Plaintiffs' counsel as class counsel, in the event the Court certifies the proposed class.

7

### A.     Plaintiffs Do Not Adequately Represent the Interests of the Proposed Class Members

One of the threshold requirements for class certification is that the proposed class representatives "must be able to 'fairly and adequately protect the interests of the class.'" *Gur-Ravantab v. Georgetown Univ.*, 345 F.R.D. 1, 3 (D.D.C. 2023) (quoting Fed. R. Civ. P. 23(a)(4)); *see Azar*, 925 F.3d at 1312 ("The adequacy requirement aims to ensure that absent class members will not be bound by the outcome of a suit in which they were not competently and fairly represented."). To satisfy this adequacy requirement, the class representatives "must not have antagonistic or conflicting interests with the unnamed members of the class." *Azar*, 925 F.3d at 1312 (citation omitted). That is, they "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997) (citation omitted). And the class representatives must also "appear able to vigorously prosecute the interests of the class through qualified counsel." *Azar*, 925 F.3d at 1312 (citation omitted).

Here, Plaintiffs seek to represent a class consisting of "[a]ll individuals enrolled, as of May 29, 2025, in Job Corps programs at centers operated by contractors that were subject to the suspension of Job Corps program operations announced by [DOL] on that date." ECF No. 4-1 at 3. According to Plaintiffs, the proposed class representatives and class members have all suffered the "same injury"—namely, the loss of "housing, education, and other services" that they all received as Job Corps participants. *Id.* at 6. Plaintiffs further assert that "[e]ach proposed class representative also seeks the same relief as the proposed class"—*i.e.*, the reinstatement of all Job Corps services as they existed before May 29, 2025. *Id.* Under Plaintiffs' telling, then, the May 29, 2025 pause in Job Corps operations was universally detrimental to every Job Corps participant, and Plaintiffs assume in turn that a return to the pre-pause status quo will be universally beneficial

to those same participants. *See, e.g.*, *id.* at 9 (claiming that the injunctive relief Plaintiffs seek "would benefit all class members"). But these assumptions are unsubstantiated and indeed undermined by the record before the Court.

As an initial matter, Plaintiffs do not acknowledge—let alone grapple with—the fact that many proposed class members may not welcome a return to pre-May 29 Job Corps centers plagued by poor performance outcomes, strapped finances, and incidents of sexual assault, drug use, and violence. *See, e.g.*, McGee Decl., Ex. 1 (noting that Job Corps participants earn less than $17,000 annually on average "post separation" and the nearly 15,000 reports of "infractions" at Job Corps centers, including over 1,700 reported "[a]cts of [v]iolence"); *cf. Mayfield v. Dalton*, 109 F.3d 1423, 1427 (9th Cir. 1997) (concluding that the named plaintiffs "could not properly represent a class of all service members who were compelled to participate in" a Department of Defense DNA-collection program "because there were undoubtedly people among the broad [proposed] class . . . who did not oppose the [program], and who, in fact, approved of it and wished the policies fully enforced").

Moreover, Plaintiffs completely overlook DOL's extensive efforts to provide Job Corps participants with various transition and support services following the May 29, 2025 pause in operations. Specifically, DOL worked with other federal agencies to "identify resources to assist eligible Job Corps students with housing, benefits, and other services"; coordinated with American Job Centers, state and local agencies, and regional DOL offices to provide students with alternative training and employment opportunities; and reached out to "Industry Intermediaries" to identify resources and tools to support Job Corps students, including pre-apprenticeships and registered apprenticeship program opportunities. Bearden Decl. ¶¶ 4-5, 7. DOL likewise provided students with resources and assistance related to their transition out of Job Corps centers and tasked Job

9

Corps operators with "ensuring that students were safely returned to their homes of record." *Id.* ¶¶ 12-13.[2]  As a result of these transition efforts, many of the proposed class members that Plaintiffs wish to represent have thus obtained access to a range of alternative employment-, training-, and housing-related resources and opportunities.  And Plaintiffs have not shown that those resources and opportunities are somehow less beneficial or less preferable to those members than the Job Corps services the members previously received.

Plaintiffs instead ask the Court to simply infer from *their* unique circumstances that the reinstatement of the same Job Corps programs and services that existed prior to May 29, 2025, is warranted for everyone in their proposed class.  *See, e.g.*, ECF No. 4-1 at 7 (asserting without any record support that the proposed class representatives "seek the same remedies as the proposed class").  But Plaintiffs' desire to return to the pre-May 29 status quo necessarily differs "[i]n significant respects" from the preferences of class members who may benefit or have already benefitted from the alternative resources and opportunities offered to them following the pause in Job Corps operations.  *Amchem*, 521 U.S. at 626 (finding no adequacy of representation where "the interests of those within the single class [were] not aligned").  Plaintiffs accordingly have not shown, as is their burden, that their interests are aligned with every Job Corps participant across all 99 privately-operated Job Corps centers.  *Cf. In re Navy Chaplaincy*, 306 F.R.D. 33, 54 (D.D.C. 2014) (concluding that the named plaintiffs were "not adequate representatives" because "their paramount interest" in the "advancement of their collective goal of institutional reform" was "not necessarily aligned with the individual interests of *each class member*" (emphasis added)).

---

[2] DOL paused its transition efforts on June 4, 2025, after a district court in the Southern District of New York issued a temporary restraining order against the Department in a related case. Bearden Decl. ¶ 18; *see Nat'l Job Corps Ass'n v. Dep't of Labor*, No. 1:25-cv-4641-ALC (S.D.N.Y. June 4, 2025), ECF No. 23.  But DOL monitored and reported progress on its transition efforts up until that date.  Bearden Decl. ¶¶ 15-17.

10

Plaintiffs therefore cannot adequately represent the class they want certified, and their motion should be denied on that basis alone.

### B. Plaintiffs Fail to Satisfy Rule 23(a)'s Commonality and Typicality Requirements

Rule 23(a)'s commonality and typicality requirements "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal-Mart*, 564 U.S. at 349 n.5 (citation omitted). The two requirements accordingly "tend to merge" in many cases. *Falcon*, 457 U.S. at 157 n.13; *see O.A. v. Trump*, 404 F. Supp. 3d 109, 155 (D.D.C. 2019) ("The second and third requirements, commonality and typicality, often overlap."). To meet these requirements, it is not enough to show that a complaint "raises common 'questions'" or that the proposed class members "have all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 349-50. Rather, a party seeking class certification must "affirmatively demonstrate" that its claims "depend upon a common contention" that is "capable of classwide resolution." *Id.* at 350. In other words, a class may be certified only if "*resolution of each plaintiff's claim* turns on a common *question* (or questions) and if common *proof* leads to a common *answer* (or answers) to that question for each plaintiff." *Brown v. District of Columbia*, 928 F.3d 1070, 1080 (D.C. Cir. 2019) (emphasis in original).

Plaintiffs cannot meet that standard here. Their various APA claims are all (erroneously) predicated on the alleged "closure" of all 99 privately-operated Job Corps centers. *See* ECF No. 3-1 at 13-18. Yet irrespective of what Plaintiffs assert about the legality of pausing operations at all such centers, DOL undisputedly can pause operations at *some* of those centers, especially when—as was the case as recently as December 2024—doing so is necessitated by budgetary

11

shortfalls. *See* McGee Decl., Ex. 9 at 7-9 (describing DOL's decision in December 2024 to pause operations at two Job Corps centers to help address a projected operating deficit). Indeed, Plaintiffs themselves acknowledge that "Congress did not mandate the operation of any particular" Job Corps center. ECF No. 3-1 at 1. And pauses in operations in at least some centers will continue to remain essential in light of DOL's legal obligation under the Anti-Deficiency Act to avoid incurring a budget deficit within the Job Corps program. *See* 31 U.S.C. § 1341; *see also* McGee Decl., Ex. 3 (noting that the Job Corps program is projected to operate at a sizable deficit in program year 2025).

Given that budgetary realities (combined with poor performance metrics) necessitate operational pauses within the Job Corps program, certain members of Plaintiffs' proposed class will not be able to access the same programs at the same Job Corps centers that were available to them before May 29, 2025. And given the legal constraints imposed by the Anti-Deficiency Act on DOL's authority to fund the Job Corps program, that subset of class members would not have a tenable challenge to any such pause in the specific Job Corps services they previously received. In other words, the common issue Plaintiffs purport to raise here—namely, whether a pause in the Job Corps services that Plaintiffs and the proposed class members received at their respective Job Corps centers is lawful—cannot be answered uniformly with respect to every class member. Plaintiffs thus fail to satisfy Rule 23(a)'s requirement of a "common *question*" with a "common *answer* . . . for *each*" class member. *Brown*, 928 F.3d at 1080 (emphasis added); *see Wal-Mart*, 564 U.S. at 350 (explaining that commonality requires that proposed class members share claims that hinge on a "common contention," the "truth or falsity" of which can be resolved in "one stroke").

12

### III.     Plaintiffs Also Fail to Satisfy Rule 23(b)(2)

Class certification also is not warranted here because Plaintiffs have not demonstrated that their proposed class is entitled to the sort of single, indivisible remedy that is necessary for maintaining a class under Rule 23(b)(2). ECF No. 4-1 at 8 (seeking certification under Rule 23(b)(2)). That Rule is satisfied if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) "impos[es] two requirements: (1) that [the] defendant's actions or refusal to act are 'generally applicable to the class,' and (2) that [the] plaintiffs seek final injunctive relief or corresponding declaratory relief on behalf of the class." *Bynum v. District of Columbia*, 214 F.R.D. 27, 37 (D.D.C. 2003). "The key to the (b)(2) class," moreover, "is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (citation omitted). A party seeking class certification under Rule 23(b)(2) accordingly "must establish that the putative class is sufficiently cohesive to warrant class treatment." *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 329 (D.D.C. 2011).

Plaintiffs here challenge what they describe as DOL's "decisions" to "shut down" all 99 privately-operated Job Corps centers and to "suspend Job Corps program operations." ECF No. 4-1 at 9. And they demand as part of their prayer for relief that the Court "[s]et aside" DOL's "termination of" the 90 separate contracts the Department had with the private entities that operated Job Corps centers. Compl. at 17; *see* Matz Decl. ¶ 5 (explaining that "some of the contracts cover[ed] more than one center"). As explained above, however, a pause in operations in at least some of those centers is warranted by substantial budgetary shortfalls within the Job

13

Corps program and DOL's attendant obligation to avoid violations of the Anti-Deficiency Act. Plaintiffs' demand that *all* 99 privately-operated Job Corps centers be "reopen[ed]," ECF No. 3-1 at 20, is thus unfeasible as a practical matter. *Cf. C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 206 (D.D.C. 2020) (declining to certify a class under Rule 23(b)(2) in part because it was unclear whether the district court, in light of restrictions imposed by other statutes, had authority to grant the class-wide injunctive relief sought by the plaintiffs). Relatedly, the fact that operational pauses in at least some Job Corps centers are necessary means that not all members of Plaintiffs' proposed class face the same prospect of redress—that is, there will still be some members who will not be able to access the same services or the same Job Corps centers as they did before May 29, 2025. And because such budget- and performance-related pauses are no doubt permissible, that subset of class members would not be entitled to the injunctive relief Plaintiffs are trying to seek on those members' behalf—*i.e.*, a return to the pre-May 29 status quo for *all* Job Corps participants. *Cf. Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 203 (D.D.C. 2013) (finding certification under Rule 23(b)(2) improper in part because some members of the proposed class "face[d] a more difficult path to recovery" than other members, meaning that the interests of the two groups "diverge[d]").

In short, members of Plaintiffs' proposed class are differently situated in ways that render class-wide injunctive relief inappropriate in this case. Put another way, because DOL's decision to pause Job Corps operations cannot properly "be enjoined or declared unlawful . . . as to *all* of the class members" here, the relief Plaintiffs seeks is not "indivisible." *Wal-Mart*, 564 U.S. at 360 (emphasis added). And Plaintiffs' failure to satisfy that indispensable requirement for class certification under Rule 23(b)(2) means that their motion should be denied. *See id.* ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member

14

of the class."); *cf. Lightfoot*, 273 F.R.D. at 330 (denying certification under Rule 23(b)(2) in part because "a large number" of proposed class members "would be afforded relief to which they were not otherwise due"); *C.G.B.*, 464 F. Supp. at 206 ("The Court's uncertainty about its authority to issue 'an *indivisible* injunction benefiting all . . . [class] members at once' is another reason to decline class certification." (citation omitted)); *Ross v. Lockheed Martin Corp.*, No. 16-cv-2508, 2020 WL 4192566, at *8 (D.D.C. July 21, 2020) (declining to certify a Rule 23(b)(2) class in part because "it [was] hard to see how the Court could craft an 'indivisible' remedy . . . that would apply to the 'whole' class, as is necessary to sustain a valid (b)(2) class" (citation omitted)).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for class certification.

DATED: July 7, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

JACQUELINE COLEMAN SNEAD
Assistant Branch Director
Civil Division, Federal Programs Branch

*/s/ Zachary W. Sherwood*
ZACHARY W. SHERWOOD
Indiana Bar No. 37147-49
ZAREEN IQBAL
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 616-8467
Fax: (202) 616-8470
Email: zachary.w.sherwood@usdoj.gov

*Counsel for Defendants*

15