UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANARIA CABRERA, *et al.*,

    *Plaintiffs, on behalf of themselves and others similarly situated*,

    v.

U.S. DEPARTMENT OF LABOR, *et al.*,

    *Defendants*.

Civil Action No. 25-1909 (DLF)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Plaintiffs seek certification of a class of nearly 25,000 individuals who will lose their access to Job Corps services as a result of the decision by Defendants Department of Labor and Secretary of Labor (collectively, DOL) to "pause" Job Corps center operations nationwide.

In opposing class certification, DOL begins by arguing that the Court lacks jurisdiction over this action. As explained in Plaintiffs' reply in support of their motion for preliminary injunction, however, this Court has jurisdiction because Plaintiffs' claims are not disguised contract claims, and, absent judicial relief, the challenged DOL actions will cause Plaintiffs to suffer injury-in-fact.

DOL also offers two arguments that lack support in case law and that, if accepted, would make class certification virtually impossible in any factual circumstance. Contrary to their theory, the proposed class representatives are adequate to represent the interests of the class and have no conflict with class members who might choose not to avail themselves of Job Corps services if those services are restored. No relief sought in this action would prevent those class members from making that decision, or in any other way harm such class members. Moreover, the possibility that

1

DOL might have a lawful basis to shutter some Job Corps centers in compliance with statutory requirements for doing so is irrelevant to the analysis of Rule 23(a)(2) and (3)'s commonality and typicality requirements. This case challenges the action DOL *has* taken, not other actions that DOL hypothetically could have taken or might take in the future. Because the action DOL took applied to all 99 Job Corps centers, the proposed representatives' claims are the same as those of every other member of the proposed class. Similarly, as to Rule 23(b)(2)'s requirements, it is beyond dispute that DOL has "acted or refused to act on grounds that apply generally to the class," and DOL's speculation that it could take *different* actions that would make distinctions between the centers does not change that fact.

## ARGUMENT

I.  **This Court has jurisdiction over Plaintiffs' motion for class certification because the Tucker Act does not apply and Plaintiffs have standing.**

DOL's claim that the Tucker Act divests this Court of jurisdiction over Plaintiffs' claims is wrong for the reasons Plaintiffs laid out in their reply to the same argument in DOL's opposition to Plaintiffs' motion for a preliminary injunction. *See* ECF 28 at 4–6. "There cannot be exclusive jurisdiction under the Tucker Act if there is no jurisdiction under the Tucker Act." *Tootle v. Secretary of Navy*, 446 F.3d 167, 177 (D.C. Cir. 2006). DOL has conceded that "Plaintiffs are not parties to contracts with DOL, nor are they in privity of contract." ECF 20 at 15. Because Plaintiffs do not bring contract-based claims, this Court has jurisdiction.

Although DOL relies on *Department of Education v. California*, 145 S. Ct. 966, 968 (2025) (per curiam), that order is inapposite. There, the Court stayed pending appeal an order requiring the government to pay out past-due grant obligations because "the APA's limited waiver of immunity does not extend to orders to enforce a contractual obligation to pay money." *Id.* (cleaned up). Here, Plaintiffs do not seek to enforce any contractual obligation and do not seek monetary

2

relief. Rather, Plaintiffs challenge DOL's failure to comply with its statutory obligations under 29 U.S.C. §§ 3197(a)(1) and 3198(d).

DOL repeats its argument that Plaintiffs have failed "to sufficiently show that they will suffer an actual or imminent injury" from DOL's action. ECF 33 at 7. Plaintiffs, however, have submitted unrebutted evidence that they will lose housing (rendering some homeless), job training, medical care, and other valuable services if their Job Corps centers close. As explained in Plaintiffs' prior briefing, losing access to such services is an injury that confers standing under well-established case law. *See* ECF 3-1 at 10; ECF 28 at 6–8.

## II. Plaintiffs satisfy the requirements of Rule 23(a).

DOL does not dispute that Plaintiffs have satisfied Rule 23(a)'s numerosity requirement. Each of their arguments as to the other requirements of Rule 23 lack merit.

### A. The named Plaintiffs' claims are typical of those of the class and reflect common questions of law and fact.

DOL's arguments as to typicality and commonality rest on the assertion that, to avoid a budget deficit, it *could* in the future close some subset of the 99 Job Corps centers that it subjected to the May 29, 2025, pause and that, if it did so, the subset of class members who would be affected by such a hypothetical decision would no longer have claims in common with or typical of those of the rest of the class. This action, though, challenges a single agency action that affects every member of the proposed class, and hypothetical future actions by the agency are irrelevant.

DOL cites instances in the past where it claims to have "paused" operations at a Job Corps center for budgetary reasons. Whether or not such pauses were lawful is not before the Court. What is before the Court is the lawfulness of the "pause in operations at contractor-operated Job Corps centers nationwide" DOL announced on May 29, 2025. News Release, Pls. Ex. 2 (ECF 3-2). Each proposed class member's claims as to whether that "pause" was an unlawful closure of the centers,

violated provisions of the Workforce Innovation and Opportunity Act, was arbitrary and capricious, and resulted in a deferral or impoundment in violation of appropriations law are identical. Hence, "*resolution of each plaintiff's claim* turns on a common *question* (or questions)" and … common *proof* leads to a common *answer* (or answers) to that question for each plaintiff." *Brown v. Dist. of Col.*, 928 F.3d 1070, 1080 (D.C. Cir. 2019). The May 29 pause is common as to all class members, and its lawfulness will be resolved on common proof. Indeed, in opposing Plaintiffs' motion for a preliminary injunction, DOL made no suggestion that any differences across the 99 Job Corps centers it "paused" played any role in its decision or would be relevant to the merits of Plaintiffs' claims.

If DOL were to take a new action in the future with respect to closure of Job Corps centers on different grounds, the Court could revisit the class definition if appropriate. *See Angelica S. v. HHS*, No. 25-CV-1405 (DLF), 2025 WL 1635369, at *11 (D.D.C. June 9, 2025) (recognizing that class definition may later be altered as facts change). But for now, there is no difference among the 99 centers as to the claims here.

      **B.**      **Plaintiffs adequately represent the interests of the class.**

As Plaintiffs have explained, they have the same claims as, and no conflicts with, the proposed class. Defendants, however, argue that the named Plaintiffs—who want to continue to receive Job Corps services from centers that have been closed—are not adequate class representatives because some members of the proposed class may not want to continue participating in Job Corps. *See* ECF 33 at 8–10. DOL misunderstands the standard for adequacy of representation for a Rule 23(b)(2) class challenging government action. In any such case, some class members will wish to assert their rights while others may not wish to do so. But courts are "reluctant to find the class representatives inadequate" even if "some class members have an explicit desire to maintain the status quo." Rubenstein, *Newberg on Class Actions* § 3:64; *see J.D.*

4

*v. Azar*, 925 F.3d 1291, 1314 (D.C. Cir. 2019) (finding no conflict of interest between class representatives and the class "even if varying class members might make varying ultimate decisions" about whether to exercise their right to the remedy ordered by the court); *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) ("Conflicts of interest are rare in Rule 23(b)(2) class actions seeking only declaratory and injunctive relief.").

DOL relies on *Mayfield v. Dalton*, 109 F.3d 1423 (9th Cir. 1997), in which Marine Corps members challenged a Department of Defense program to collect and store their DNA samples. There, the court held that some members of the proposed class might actively want their DNA samples stored for purposes of identifying their remains if they were killed in action and, therefore, that their interests conflicted with those of the proposed class representatives. *Id.* at 1427. But, as the D.C. Circuit has explained, even "[a]ssuming *Mayfield* was correctly decided," there is a difference between a case where the relief sought would make what some class members wanted impossible and a case like this one, where "the relief ultimately sought in the action would not itself impose a tangible harm" on class members who remain free to forego the remedy. *J.D.*, 925 F.3d at 1318. That is, unlike in *Mayfield*, the relief requested in this case will not require class members to continue to participate in Job Corps programs. The facts of the other cases on which DOL relies are even farther removed from the facts here. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (in asbestos case, interests of plaintiffs seeking immediate payouts conflicted with those who had not yet been harmed and sought ample fund for future payments); *In re Navy Chaplaincy*, 306 F.R.D. 33, 54 (D.D.C. 2014) (interest of named plaintiffs seeking "institutional reform" conflicted with members of the proposed class who preferred money damages).

Further, while DOL speculates that some Job Corps students might prefer the "transition services" it says it offered them after the Job Corps program was suspended, ECF 33 at 9–10, DOL

5

identifies no such members of the proposed class, nor does it assert definitively that they exist, even though it "monitored and reported progress on its transition efforts" and so presumably could have found them if they did. ECF 33 at 10 n.2; *see* ECF 20-3 (Bearden Decl.) ¶¶ 15–17 (stating that six regional offices took various measures to supervise transition services, including "rapid response team visits to Job Corps centers", and identified "success" in providing those services to some students); *see also Borum v. Brentwood Vill., LLC*, 324 F.R.D. 1, 18 (D.D.C. 2018) (rejecting the argument that the hypothetical existence of class members who opposed the relief sought by the class representatives was sufficient to defeat adequacy where no such members were identified).

More importantly, the relief that Plaintiffs seek would not keep class members from continuing to take advantage of services identified by DOL. The "transition services" that DOL listed were 1) temporary continuation of some existing Job Corps benefits like "providing students with originals of any earned credentials," 2) resources to address the harms from suspension of Job Corps like "ensuring that students were safely returned to their homes of record," or 3) referrals to other existing services like "their home state's Labor Exchange system." *See* ECF 20-3 (Bearden Decl.) ¶¶ 5–14. The first two of these categories will be irrelevant if Job Corps remains open: There will be no need to temporarily continue certain Job Corps benefits if the program is in operation, and there will be no need to reduce harms from something that does not occur. As to the final category, DOL does not suggest, nor can it, that students would lose eligibility for any of the services offered by other state and federal agencies or social services providers by virtue of Job Corps centers reopening. And nothing stops DOL from helping students seek non-Job Corps supports even if Job Corps remains open. DOL says it stopped offering these services after the New York court enjoined the suspension of Job Corps operations, but not that they were required

6

to do so by that injunction. ECF 33 at 10 n.2. Regardless, Plaintiffs here do not seek to bar DOL from offering these services. ECF 1 at 17.

**III.    The proposed class meets the requirements of Rule 23(b)(2) because it challenges a single action that can be "enjoined or declared unlawful."**

DOL's Rule 23(b)(2) argument largely repeats its commonality and typicality argument and fails for the same reasons. Because it might have the legal right to shut down some Job Corps centers by an action other than the one being challenged, DOL argues, the action it *did* take cannot be "enjoined or declared unlawful … as to all of the class members." ECF 33 at 14. This argument misapprehends the nature of Plaintiffs' claims and the relief they seek. Plaintiffs challenge a specific agency action: the shutdown of all 99 Job Corps centers and suspension of Job Corps operations, as described by the May 29 Press Release. *See* ECF 1 at ¶¶ 6–8, 50–70. And they ask this Court to set aside the action announced by the May 29 Press Release. They do not seek an injunction barring DOL from ever closing any Job Corps center. To the extent some other agency action would cause the closure of some subset of those 99 centers, that hypothetical agency action is not at issue in this case. *See Lewis v. U.S. Parole Comm'n*, 743 F. Supp. 3d 181, 202 (D.D.C. 2024) ("Where class-wide injunctive or declaratory relief is sought in a (b)(2) class action for an alleged group harm, there is a presumption of cohesion and unity between absent class members and the class representatives[.]" (citations omitted)).

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for class certification should be granted.

Dated: July 14, 2025                                Respectfully submitted,

/s/ Adam R. Pulver
Adam R. Pulver (DC Bar No. 1020475)
Michael T. Kirkpatrick (DC Bar No. 486293)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

Arthur Ago (DC Bar No. 463681)
Aaron S. Fleisher[*†] (NY Bar No. 4431052)
Southern Poverty Law Center
1101 17th St. NW Ste. 705
Washington, DC 20036

Scott D. McCoy[*] (FL Bar No. 1004965)
Sam Boyd[*] (FL Bar No. 1012141)
Carli Raben[*] (FL Bar No. 1036013)
Southern Poverty Law Center
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131

Michael Tafelski[*] (GA Bar No. 507007)
Diego A. Soto[*] (DC Bar No. 1029607)
Southern Poverty Law Center
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030

*Counsel for Plaintiffs*

[*] *Admitted* pro hac vice

[†] *Not admitted to practice law in DC*