# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| ANARIA CABRERA, *et al.*,<br><br>    *Plaintiffs, on behalf of themselves and others similarly situated*,<br><br>    v.<br><br>U.S. DEPARTMENT OF LABOR, *et al.*,<br><br>    *Defendants*. |

Civil Action No. 25-1909 (DLF)

## COMBINED MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Arthur Ago (DC Bar No. 463681)
Aaron S. Fleisher[*][†] (NY Bar No. 4431052)
Southern Poverty Law Center
1101 17th St. NW
Washington, DC 20036

Scott D. McCoy[*] (FL Bar No. 1004965)
Sam Boyd[*] (FL Bar No. 1012141)
Carli Raben[*] (FL Bar No. 1036013)
Southern Poverty Law Center
2 S. Biscayne Blvd. Ste. 3200
Miami, FL 33131

Adam R. Pulver (DC Bar No. 1020475)
Michael T. Kirkpatrick (DC Bar No. 486293)
Public Citizen Litigation Group
1600 20th St. NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

Michael Tafelski[*] (GA Bar No. 507007)
Diego A. Soto[*] (DC Bar No. 1029607)
Southern Poverty Law Center
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030

*Counsel for Plaintiffs*

[*] *Admitted* pro hac vice
[†] *Not admitted to practice law in DC*

February 27, 2026

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.    The Tucker Act does not bar Plaintiffs' claims. ................................................. 2

II.    Plaintiffs are entitled to summary judgment on each of their claims. ............... 5

    A.    No alternative remedies are available. ...................................................... 5

    B.    DOL has failed to comply with the requirements of 29 U.S.C. § 3209(j). ............. 6

    C.    DOL's suspension of Job Corps center operations is contrary to other provisions of the Workforce Innovation and Opportunity Act. ...................................... 8

    D.    DOL's suspension of Job Corps center operations was arbitrary and capricious. . 10

    E.    DOL's indefinite suspension of Job Corps center operations exceeded its statutory authority................................................................................................. 13

    F.    DOL violated the Impoundment Control Act....................................................... 13

III.    Vacatur is the appropriate remedy, making class certification unnecessary. .................. 14

CONCLUSION............................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C.R. v. Noem,*
   __ F. Supp. 3d __, No. 25-CV-3962 (EK) (TAM), 2025 WL 3228840
   (E.D.N.Y. Nov. 19, 2025)...................................................................................................... 15

*Agudas Chasidei Chabad of United States v. Russian Federation,*
   No. 05-CV-1548 (RCL), 2020 WL 13611456 (D.D.C. Nov. 6, 2020) ...................................... 5

*American Academy of Pediatrics v. HHS,*
   No. 25-CV-4505 (BAH), 2026 WL 80796 (D.D.C. Jan. 11, 2026) ........................................... 3

*Ass'n for Education Finance and Policy v. McMahon,*
   No. 25-CV-999 (TNM), 2026 WL 523023 (D.D.C. Feb. 25, 2026) ......................................... 4

*Burlington Truck Lines, Inc. v. United States,*
   371 U.S. 156 (1962) ............................................................................................................... 11

*Campaign Legal Center v. FEC,*
   520 F. Supp. 3d 38 (D.D.C. 2021)......................................................................................... 14

*Central United Life Insurance Co. v. Burwell,*
   827 F.3d 70 (D.C. Cir. 2016)................................................................................................... 12

*City of Brookings Municipal Telephone Co. v. FCC,*
   822 F.2d 1153 (D.C. Cir. 1987)............................................................................................... 11

*Council for Opportunity in Education v. U.S. Department of Education,*
   No. 25-CV-03491 (TSC), 2026 WL 120984 (D.D.C. Jan. 16, 2026) ...................................... 5

*Crowley v. GSA,*
   38 F.4th 1099 (D.C. Cir. 2022).............................................................................................. 3, 5

*Dinkel v. MedStar Health, Inc.,*
   880 F. Supp. 2d 49 (D.D.C. 2012).......................................................................................... 14

*El Rio Santa Cruz Neighborhood Health Center, Inc. v. HHS,*
   396 F.3d 1265 (D.C. Cir. 2005)................................................................................................. 5

*Florida Power & Light Co. v. Lorion,*
   470 U.S. 729 (1985) ................................................................................................................ 10

*Garcia v. Vilsack,*
   563 F.3d 519 (D.C. Cir. 2009)................................................................................................... 5

*Global Health Council v. Trump,*
  153 F.4th 1 (D.C. Cir. 2025)...................................................................... 13

*Harmon v. Thornburgh,*
  878 F.2d 484 (D.C. Cir. 1989)................................................................... 14

\*In re Aiken County,*
  725 F.3d 255 (D.C. Cir. 2013)................................................................ 9, 12

\*Make the Road New York v. Noem,*
  No. 25-5320, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025).................... 15

*Massachusetts v. NIH,*
  164 F.4th 1 (1st Cir. Jan. 5, 2026) .............................................................. 4

\*Megapulse, Inc. v. Lewis,*
  672 F.2d 959 (D.C. Cir. 1982)..................................................................... 3

\*Motor Vehicle Manufacturers Ass'n of the United States v. State Farm Mutual Automobile
  Insurance Co.,*
  463 U.S. 29 (1983) .................................................................................... 11

*National Endowment for Democracy v. United States,*
  795 F. Supp. 3d 63 (D.D.C. 2025)............................................................ 12

*National Mining Ass'n v. U.S. Army Corps of Engineers,*
  145 F.3d 1399 (D.C. Cir. 1988)................................................................ 14

\*NIH v. American Public Health Ass'n,*
  606 U.S. __, 134 S. Ct. 2658 (2025) ........................................................... 4

*O.A. v. Trump,*
  404 F. Supp. 3d 109 (D.D.C. 2019)........................................................... 15

*Planned Parenthood of Greater New York v. HHS,*
  No. 25-CV-2453 (BAH), 2025 WL 2840318 (D.D.C. Oct. 7, 2025)......... 4

*Porwancher v. National Endowment for the Humanities,*
  792 F. Supp. 3d 107 (D.D.C. 2025)............................................................ 4

*Sargent v. Block,*
  576 F. Supp. 882 (D.D.C. 1983)............................................................... 15

*Spectrum Leasing Corp. v. United States,*
  764 F.2d 891 (D.C. Cir. 1985)..................................................................... 4

*Tootle v. Secretary of the Navy*,
  446 F.3d 167 (D.C. Cir. 2006) .......................................................................... 6

*Trump v. CASA*,
  606 U.S. 831 (2025) ................................................................................... 14, 15

*Western Union Corp. v. FCC*,
  856 F.2d 315 (D.C. Cir. 1988) ........................................................................ 11

**Statutes**

5 U.S.C. § 704 ....................................................................................................... 5

5 U.S.C. § 706(2)(B) ........................................................................................... 13

5 U.S.C. § 706(2)(D) ............................................................................................. 8

28 U.S.C. § 1491(a)(1) ......................................................................................... 2

29 U.S.C. § 3193 ............................................................................................. 9, 10

29 U.S.C. § 3197(a)(1) ......................................................................................... 9

29 U.S.C. § 3197(c) .............................................................................................. 8

29 U.S.C. § 3198(a) ........................................................................................... 3, 8

29 U.S.C. § 3199 .................................................................................................. 9

29 U.S.C. § 3209(f) .............................................................................................. 7

29 U.S.C. § 3209(j) ........................................................................................ 3, 6, 7

29 U.S.C. § 3211(c) .......................................................................................... 3. 8

Pub. L. No. 119-75 .............................................................................................. 12

**Legislative History**

H.R. Rep. No. 105-93 (1998) ............................................................................... 7

**Other Authorities**

71 Am. Jur. 2d Specific Performance § 1 (2025) ................................................. 4

Restatement (Second) of Contracts § 357 (Am. L. Inst. 1981)......................................................... 4

*Merriam-Webster.com Dictionary* (June 18, 2025),
   https://www.merriam-webster.com/dictionary/close................................................................. 6

Edward D. Re, Remedies: Cases and Materials 281 (2d ed. 1987) ................................................. 5

Russell T. Vought, Director, Office of Management and Budget, Letter to Sen. Susan Collins
   (May 2, 2025),
   https://www.whitehouse.gov/wpcontent/uploads/2025/05/Fiscal-Year-
   2026-Discretionary-Budget-Request.pdf.................................................................................... 12

## INTRODUCTION

Seven months ago, in granting Plaintiffs' motion for preliminary relief, this Court recognized that Defendants Department of Labor and Secretary of Labor (collectively, DOL) cannot evade the statutory requirements for closing Job Corps centers simply by using the word "pause" to describe the decision to indefinitely suspend the Centers' operations with no plans to restart them. The relevant law has not changed in that time. The factual record has evolved, though, and made clear that DOL's use of the word "pause" rather than "close" in describing its actions was an attempt to downplay its decision to flout Congress's statutory direction. DOL had no intention of resuming operations at any of the 99 centers or even to consider doing so; its May 29, 2025 action reflected the decision to "eliminate" the Job Corps program permanently.

In seeking summary judgment and opposing Plaintiffs' motion for summary judgment, DOL recharacterizes its May 29, 2025 action in two ways—neither of which is supported by the administrative record. First, DOL attempts to recast this challenge to the decision to "cease operations at all Job Corps center sites" permanently, AR1089, as a challenge to contract terminations over which this Court lacks jurisdiction. Plaintiffs, who are not federal contractors, seek to vindicate their statutory rights by vacatur of the agency's May 29, 2025 action. That, as a result of vacatur, DOL might have to spend money, via contracts or otherwise, to continue operating Job Corps centers and providing the services to which Plaintiffs are lawfully entitled does not deprive this Court of jurisdiction.

Second, DOL, ignoring inconvenient material in the administrative record, contends that what was clearly a decision to end the program was only a temporary action while it considered reforms. Nothing in the administrative record, however, suggests that the agency intended to revisit its decision to close the centers. And this Court has already rejected as circular DOL's assertion that its action was not a "closure" under the statute *because* DOL did not take the actions it is

1

required to do to close centers under the statute. As to the statutory requirements that obligate DOL to ensure the operation of Job Corps centers and provision of specific services to enrollees, DOL makes a similarly circular argument: that its decision to cease those services obviated its need to comply with the statutes mandating those services be provided.

As to Plaintiffs' showing that DOL's action was arbitrary and capricious, DOL fails to rebut the evidence identified in Plaintiffs' opening memorandum showing that DOL failed to adequately consider alternatives to shutting down all 99 Job Corps centers and failed to consider the disruptive impacts of its actions and Job Corps enrollees' reliance interests. Rather, DOL talismanically invokes "financial difficulties" with the Job Corps program. *See* ECF 89-1 (Defs. Mem.) at 25. But whether the program was experiencing financial difficulties or not, the relevant question here is not whether DOL correctly identified a problem, but whether its response to that problem—to shut down the 99 Job Corps centers entirely—was the product of reasoned decisionmaking. And because DOL cannot show that its choice was the product of considered judgment, supported by the record, taken after considering *all* relevant factors, DOL did not clear this bar.

Finally, for the second time in this case, DOL has chosen not to respond to Plaintiffs' arguments as to the appropriate remedy. It therefore waived any argument that the vacatur Plaintiffs requested in their moving papers is inappropriate. Thus, the Court should vacate and set aside as unlawful DOL's May 29, 2025 action "ceas[ing] operations at all Job Corps center sites," AR1080, as requested in Plaintiffs' motion. To do so, class certification is not necessary.

## ARGUMENT

### I.    The Tucker Act does not bar Plaintiffs' claims.

Repeating an argument rejected at the preliminary relief stage, DOL first argues that the Tucker Act, 28 U.S.C. § 1491(a)(1), deprives this Court of jurisdiction. ECF 89-1 at 20–26. DOL

suggests that because DOL has chosen to operate Job Corps centers via contracts no Job Corps student could ever challenge the closure of Job Corps centers. *Id.* at 23. DOL's argument mischaracterizes the facts, Plaintiffs' claims, and the relevant law.

The parties agree that whether the Tucker Act divests this Court of jurisdiction over Plaintiffs' APA claims is governed by the two-pronged test set out in *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982), which looks at "the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *See* ECF 89-1 at 22. "[T]he *Megapulse* test is conjunctive, requiring satisfaction of both elements to provide exclusive jurisdiction to the Court of Federal Claims." *Am. Acad. of Pediatrics v. HHS*, No. 25-CV-4505 (BAH), 2026 WL 80796, at *11 (D.D.C. Jan. 11, 2026) (citing *Crowley v. GSA*, 38 F.4th 1099, 1107 (D.C. Cir. 2022)). As explained in Plaintiffs' opening memorandum, neither of the *Megapulse* elements are satisfied here.

As to the first prong, DOL argues that "the source of the rights Plaintiffs assert are the contracts themselves," because DOL has used contractors to provide them with the services contemplated by statute. ECF 89-1 at 23. As this Court previously recognized, DOL is wrong: Plaintiffs' "asserted rights exist independently of any contract between DOL and the Job Corps center operators." ECF 53 (July 25, 2025 Mem. Op.) at 6–7; *see, e.g.*, 29 U.S.C. §§ 3198(a), 3209(j), 3211(c). Reflecting this fact, DOL points to no contractual provision that provides Plaintiffs with rights. Further, Plaintiffs do not, as DOL suggests, claim that they have a right for "*these* Job Corps centers operated by *these* contractors." ECF 89-1 at 23. Plaintiffs have a right to the continued provision of services at the Job Corps centers where they are enrolled. Had DOL terminated existing contracts and entered into new ones, or decided to operate the centers itself resulting in the continued provision of services, the statutory rights Plaintiffs invoke would likely

not have been violated. *See Ass'n for Educ. Fin. & Pol'y v. McMahon*, No. 25-CV-999 (TNM), 2026 WL 523023, at *9 (D.D.C. Feb. 25, 2026) (holding that claims that termination of programs violated statutory obligations were not contract claims, even though agency had carried out programs via contractors).

As to the second *Megapulse* prong, DOL is wrong that Plaintiffs "seek[] the classic contractual remedy of specific performance." ECF 89-1 at 24 (quoting *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985)). To start, Plaintiffs do not seek specific performance; they seek vacatur of agency action. *See* Proposed Order (ECF 79-2). And DOL ignores Justice Barrett's concurrence (with which four other justices agreed) in *NIH v. American Public Health Ass'n*, 606 U.S. __, 134 S. Ct. 2658, 2661–62 (2025) (Barrett, J., concurring), which explained that even in a case brought by parties to a federal contract, district courts have jurisdiction to vacate an agency policy that directed the termination of those contracts. *See Massachusetts v. NIH*, 164 F.4th 1, 11 (1st Cir. Jan. 5, 2026) (citing Justice Barrett's concurrence for the principle that "challenges to agency-wide policies … belong in district court"); *Planned Parenthood of Greater N.Y. v. HHS*, No. 25-CV-2453 (BAH), 2025 WL 2840318, at *13 (D.D.C. Oct. 7, 2025) (recognizing *NIH* as preserving district courts' ability "to vacate unlawful agency policies, despite their inability to force payment of individual grants").

In each of the cases DOL does cite, the court found that the relief that *parties to a contract* were requesting constituted specific performance. *See* ECF 89-1 at 24–26. That parties to a contract would seek that form of relief makes sense because the remedy of specific performance "'is available only to protect contract rights' and cannot be ordered 'unless there has been a breach of contract.'" *Porwancher v. Nat'l Endowment for the Humanities*, 792 F. Supp. 3d 107, 113 n.2 (D.D.C. 2025) (first quoting 71 Am. Jur. 2d Specific Performance § 1 (2025); and then quoting

Restatement (Second) of Contracts § 357 cmt. a (Am. L. Inst. 1981)). It is "a form of injunctive relief that compels the defendant to perform [a] contract with the plaintiff.'" *Agudas Chasidei Chabad of United States v. Russian Fed'n*, No. 05-CV-1548 (RCL), 2020 WL 13611456, at *22 (D.D.C. Nov. 6, 2020) (quoting Edward D. Re, Remedies: Cases and Materials 281 (2d ed. 1987)). Here, though, as the Court explained in its earlier opinion, "[b]ecause DOL has not made a contractual promise to the plaintiffs, the remedy they seek is not properly characterized as one for specific performance." ECF 53 at 7 (citing *Crowley*, 38 F.4th at 1108); *see also Council for Opportunity in Educ. v. U.S. Dep't of Educ.*, No. 25-CV-03491 (TSC), 2026 WL 120984, at *8 (D.D.C. Jan. 16, 2026) (recognizing that where there is no operative contract between plaintiffs and the government "there can be no specific performance of that agreement").

In sum, because Plaintiffs' claims neither are based on contractual rights nor seek enforcement of any contractual rights, the Tucker Act does not displace this Court's jurisdiction under the Administrative Procedure Act (APA).

## II.    Plaintiffs are entitled to summary judgment on each of their claims.

### A.    No alternative remedies are available.

While relief under the APA is unavailable where an adequate alternative remedy exists, "[a]n alternative remedy will not be adequate under § 704 if the remedy offers only doubtful and limited relief," and "the court must give the APA a hospitable interpretation such that only upon a showing of clear and convincing evidence of a contrary legislative intent should the courts restrict access to judicial review." *Garcia v. Vilsack*, 563 F.3d 519, 522–23 (D.C. Cir. 2009) (internal citations and quotation marks omitted). To displace APA review, an alternative remedy must be "of the same genre" as that sought by the plaintiffs. *El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS*, 396 F.3d 1265, 1275 (D.C. Cir. 2005). No such remedy is available to Plaintiffs.

DOL briefly argues that Plaintiffs' APA claims should be dismissed because Plaintiffs have adequate alternative remedies under the Tucker Act. ECF 89-1 at 26; *see* 5 U.S.C. § 704 (providing that agency action is reviewable under the APA if "there is no other adequate remedy in a court"). As explained above, however, Plaintiffs do not raise contract claims. *See supra*, Part I. Because the relevant Court of Federal Claims jurisdiction is limited to contract claims, the Tucker Act does not afford Plaintiffs an adequate alternative to APA relief. *See Tootle v. Sec'y of the Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006) ("We categorically reject the suggestion that a federal district court can be deprived of jurisdiction [under the APA] by the Tucker Act when no jurisdiction lies in the Court of Federal Claims.").

### B.    DOL has failed to comply with the requirements of 29 U.S.C. § 3209(j).

DOL does not dispute that 29 U.S.C. § 3209(j) requires it to engage in public notice and participation procedures prior to closing any Job Corps center and that it did not do so here. DOL contends that those statutory requirements do not apply to its action because "the specific challenged action was not a *permanent* closure of the contractor-operator centers." ECF 89-1 at 20 (emphasis added). This argument is supported by neither the statute—which does not use the word "permanent"—nor the factual record. DOL cannot evade the requirements of section 3209(j) by calling indefinite closure a "pause."

To begin, Defendants mischaracterize Plaintiffs' discussion of the meaning of the term "close" in the statute. ECF 89-1 at 27. Plaintiffs have explained that "close" is best defined by its dictionary definition: to "suspend or stop the operations." *See* ECF 79-1 at 27 (Pls. Mem.) (quoting Close, *Merriam-Webster.com Dictionary* (June 18, 2025), https://www.merriam-webster.com/dictionary/close). DOL suggests that citing this definition is a concession that a "closure is permanent rather than temporary." ECF 89-1 at 27. It is unclear why that is so, as neither the "suspension" or "stopping" of operations is inherently permanent. Further, as Plaintiffs explained

in their opening memorandum, ECF 79-1 at 27–29, the statutory context shows that an indefinite suspension of operations at a center is a closure triggering section 3209(j). The statute lists seven acts DOL can take when a center is not performing well—a closure, and six other steps short of closure which leave a center operational in some shape or form. 29 U.S.C. § 3209(f). To take *any* of the section 3209(f) steps, DOL must follow specific procedural requirements. *Id.* To read the statute as giving DOL an eighth option—indefinitely shuttering centers, as to which no procedural requirements apply—would be inconsistent with the statutory scheme.

DOL argues that the fact that the statute "has no procedure to 'reopen' a 'closed' center," ECF 89-1 at 20, supports its argument that the statute authorizes indefinite "pauses" without any statutory constraints. The statute, though, has no procedure for "opening" centers at all. The relevant statutory provisions were added after the Job Corps program was created to ensure public participation "regarding the possible loss of any of the [then-existing] invaluable Job Corps Centers" and to ensure that the decision to close any of the "scarce centers be closely scrutinized." H.R. Rep. No. 105-93, at 553–54 (1998). Opening, or even "reopening," centers does not implicate this concern.

DOL's invocation of prior agency practice is also irrelevant. Not only is the lawfulness of those past "pauses" not before this Court, but the facts of those cases are not either. And here, the administrative record shows that DOL *did* intend to permanently shutter each of the 99 centers. DOL's explicit "goal" was "to cease operations at all Job Corps center sites to align with" a budget proposal that would eliminate the program. AR1080. DOL called for each center to develop a "detailed *closure* timeline." AR1090 (emphasis added). And there is *nothing* in the record that shows DOL was considering reopening any of the centers despite repeated assertions from DOL's counsel in this litigation. The agency's final decision memo is clear: the only thing that DOL

7

planned to do in the future with respect to the 99 centers was to publish notice of the closures as required by 29 U.S.C. § 3209(j). AR1080. But the fact that DOL had not yet done what Congress required it to do when closing a center does not circularly mean DOL did not close a center.

For these reasons, and those set forth in Plaintiffs' opening memorandum, Plaintiffs are entitled to summary judgment on the first count of the complaint brought pursuant to 5 U.S.C. § 706(2)(D). *See* ECF 1 at ¶¶ 50–52.

### C. DOL's suspension of Job Corps center operations is contrary to other provisions of the Workforce Innovation and Opportunity Act.

The second count of the complaint alleges that DOL's closure of the centers and indefinite suspension of Job Corps program operations was contrary to law as it violates several other provisions of the Workforce Innovation and Opportunity Act (WIOA). ECF 1 at ¶¶ 53–57. Plaintiffs are entitled to summary judgment on that count as well.

As discussed in Plaintiffs' opening memorandum, 29 U.S.C. § 3211(c) requires DOL to "establish" and "use" specific written criteria to determine when a center is "to be closed and how to carry out such closure." DOL does not offer any relevant response. Its sole reference to that provision mistakenly quotes language that appears in 29 U.S.C. §§ 3197(c) and 3198(a). *See* ECF 89-1 at 23. Because DOL closed the 99 centers, as discussed above, and the record does not indicate any use of the criteria that section 3211(c) mandates in making that decision, summary judgment is appropriate.

As to the other statutory provisions, DOL's arguments are both circular and inconsistent with its arguments that it did not close the 99 Job Corps centers. DOL's argument is essentially that it is not required to comply with the statutory requirements for closing Job Corps centers *because* it suspended the operations of (i.e., closed) those centers.

First, 29 U.S.C. § 3197(c) requires each center to be "operated" in a particular manner, and 29 U.S.C. § 3198(a) requires each center to provide certain services to Plaintiffs and other enrollees. DOL does not dispute that as a result of its May 29, 2025 action, the 99 centers would no longer be operating in the required manner or providing the required services. DOL offers the irrelevant statement that it concluded "that the centers were falling short 'from a policy and programmatic perspective' and 'that this action will provide DOL leadership an opportunity to assess the Job Corps program's alignment with the Administration's workforce priorities.'" ECF 89-1 at 24 (quoting AR1070). The Administration's doubts as to whether Job Corps aligns with its priorities is not a defense to noncompliance with the statute where Congress has mandated the program exist and operate. *See In re Aiken Cnty.*, 725 F.3d 255, 260 (D.C. Cir. 2013) (Kavanaugh, J.) ("[T]he President and federal agencies may not ignore statutory mandates or prohibitions merely because of policy disagreement with Congress.").

DOL asserts that it was not required to comply with 29 U.S.C. § 3197(a)(1), which requires the Department to enter into agreements for the operation of each Job Corps center "because Job Corps centers are not operational after the contract terminations." ECF 89-1 at 31. Similarly, DOL suggests that it was not required to provide assessment and counseling for program enrollees as required by 29 U.S.C. § 3199 because it terminated the contracts to provide those services. *See id.* This logic is entirely circular: DOL cannot evade its statutory obligation to enter into agreements for the operation of Job Corps centers by terminating its agreements for the operation of Job Corps centers. And DOL cannot evade its obligation to provide services by deciding not to provide those services.

Finally, DOL claims that it did not violate 29 U.S.C. § 3193, which mandates the existence "within the Department of Labor [of] a 'Job Corps'" because "the USDA operated centers

remained operational following the challenged decision." ECF 89-1 at 31. But, as Plaintiffs pointed

out in their opening memorandum, the agency's decision memo *also* provided for the closure of

those centers via a "joint USDA/DOL effort to cease Job Corps operations." AR1087–88; *see*

AR1080–81. DOL does not address this aspect of the challenged decision. DOL described its own

action as an "operation" to "[i]mmediately cease all Job Corps center operations (including 24

USDA CCCs)." AR1081. That was the action approved of by the Secretary of Labor. *See* AR1069

("We are good to execute on this for 3pm today."). And that action is contrary to section 3193.

## D.    DOL's suspension of Job Corps center operations was arbitrary and capricious.

In their opening memorandum, Plaintiffs identified three related aspects of DOL's

reasoning that rendered its May 29, 2025 action arbitrary and capricious. First, DOL did not

adequately consider and explain its rejection of less drastic and disruptive measures to deal with

perceived problems with the Job Corps program. ECF 79-1 at 32–34. Second, DOL failed to

consider several relevant and important factors, including how its chosen course of sudden mass

closure would impact Job Corps enrollees like Plaintiffs, the inefficiency of ending training

programs mid-stream, and the practical inability for centers to provide meaningful "transition

services" to every Job Corps enrollee on a compressed timeline. *Id.* at 34–35. Third, DOL did not

consider the reliance interests of Job Corps participants who had enrolled in the program with a

reasonable expectation that they would be able to complete the vocational training programs to

which they had been accepted and would have a place to live while doing so. *Id.* at 36.

While Plaintiffs identified evidence throughout the record showing these flaws in DOL's

decisionmaking, DOL in response does not point to anything in the record showing that it *did*

consider these important factors. Rather, pointing to the program's "financial difficulties," DOL

asserts that "financial condition" is an appropriate consideration for an agency to "consider in

evaluating and making decisions about program operations." ECF 89-1 at 32–33. That assertion is a *non sequitur*. Plaintiffs do not dispute that financial condition is *a* relevant consideration for DOL to consider in making decisions about Job Corps. But an agency must consider "*all* relevant factors," not only one relevant factor. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see Motor Vehicle Manufacturers Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (explaining that agency action is arbitrary and capricious where an agency "failed to consider an important aspect of the problem").

Moreover, as noted in Plaintiffs' opening memorandum, the existence of financial problems "did not grant the agency *carte blanche*" to do whatever it wanted. ECF 79-1 at 32. Under fundamental principles of administrative law, an agency must demonstrate a "rational connection between the facts found and the choice made" in addressing those problems. *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).[1] Further, "the agency must consider responsible alternatives; if they are rejected, it must explain why." *Western Union Corp. v. FCC*, 856 F.2d 315, 318 (D.C. Cir. 1988) (citing *City of Brookings Mun. Tel. Co. v. FCC*, 822 F.2d 1153, 1169 (D.C. Cir. 1987). Although DOL cites to two pages of the administrative record for the proposition that "the Department considered various strategies," ECF 89-1 at 26, neither is evidence of meaningful consideration of alternatives. The first cited page, AR1064, is a fact sheet that DOL released in conjunction with its announcement of the May 29, 2025 action and does not say anything about DOL's consideration of alternatives. The second, AR1104, identifies three

---

[1] As discussed in Plaintiffs' opening memorandum, ECF 79-1 at 16–19, the record makes clear that DOL chose to "eliminate" the Job Corps program and close all 99 centers without any plans to ever reopen them. The Court need not defer to DOL's assertion, without citation, that it merely chose to "terminate or extend its contracts with center operators pending further consideration," ECF 89-1 at 26, as there is no evidence of any contemplated "further consideration."

alternative cost-saving options that the agency was "contemplating" but says nothing about why those options were rejected.

DOL also briefly alludes to a desire to "assess the Job Corps program's alignment with the Administration's workforce priorities." ECF 89-1 at 26. This point reinforces that in May 2025 DOL decided to close the program. As DOL stated then, it was "ceas[ing] operations at all Job Corps center sites to align with the Trump Administration's workforce priorities and proposed budget," AR1080—a budget that would eliminate the Job Corps program, *see* Letter from Russell T. Vought, Dir., Off. of Mgmt. & Budget, to Sen. Susan Collins (May 2, 2025), https://www.whitehouse.gov/wpcontent/uploads/2025/05/Fiscal-Year-2026-Discretionary-Budget-Request.pdf. DOL's decision to eliminate the Job Corps program is also reflected in materials showing that it had a goal of "eliminating" "a massive federally operated program." AR91. But whether the Job Corps program is aligned with the Administration's workforce priorities or whether the Job Corps program should exist were not permissible considerations upon which DOL could base its decision. "Disagreeing with Congress's expressly codified policy choices isn't a luxury administrative agencies enjoy." *Cent. United Life Ins. Co. v. Burwell*, 827 F.3d 70, 73 (D.C. Cir. 2016). The President's then-pending budget request likewise cannot support DOL's action. *See Nat'l Endowment for Democracy v. United States*, 795 F. Supp. 3d 63, 71–72 (D.D.C. 2025) (holding agency action arbitrary and capricious where it was based on agency's "guesswork about future congressional appropriations" (quoting *Aiken Cnty.*, 725 F.3d at 260)).[2]

---

[2] Congress has since rejected the President's budget request and appropriated over $1.6 billion for Job Corps operations, while adding further limitations on DOL's ability to close Job Corps centers. *See* Consolidated Appropriations Act, Pub. L. No. 119-75, Div. B, Tit. I & § 115 (2026).

Because the agency failed to consider all relevant factors, including the impacts on students, their reliance interests, and less drastic alternatives, and because it relied on impermissible factors (such as the agency's disagreement with Congress), Plaintiffs are entitled to summary judgment on Count III of their complaint. *See* ECF 1 at ¶¶ 58–61.

**E.    DOL's indefinite suspension of Job Corps center operations exceeded its statutory authority.**

In their opening memorandum, Plaintiffs explained that, in ceasing all Job Corps center operations, DOL acted in excess of its statutory authority. *See* ECF 79-1 at 36–37. In response, DOL recharacterizes its action as an exercise of its "contractual authority to end contracts." ECF 89-1 at 24. But, again, Plaintiffs are not challenging the termination of any contract; they are challenging DOL's decision to "cease operations at all Job Corps center sites." AR1089. No statute authorizes DOL to end—via contract terminations or otherwise—Job Corps program operations, but that was DOL's *explicit* goal. *See* AR1080. Because no statute gave DOL the authority "to cease operations at all Job Corps center sites," *id.*, and "eliminate" the "massive federally operated program," AR91, Plaintiffs are entitled to summary judgment on their claim brought pursuant to 5 U.S.C. § 706(2)(B). *See* ECF 1 ¶¶ 62–65.

**F.    DOL violated the Impoundment Control Act.**

As noted in Plaintiffs' opening memorandum, Plaintiffs acknowledge that the D.C. Circuit's decision in *Global Health Council v. Trump*, 153 F.4th 1, 18–19 (D.C. Cir. 2025), bars the fifth count in their complaint based on DOL's violation of the Impoundment Control Act. For the reasons stated in their opening memorandum, Plaintiffs respectfully disagree with that decision and seek to preserve their arguments for further review.

### III.    Vacatur is the appropriate remedy, making class certification unnecessary.

It is well-established in this Circuit that where a court finds agency action unlawful, the "ordinary result" is vacatur of that action. *Nat'l Mining Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1988). That ordinary result is the correct one here: the Court should vacate DOL's May 29, 2025 suspension of operations at all 99 contractor-operated Job Corps centers. Under D.C. Circuit precedent, doing so will vacate the action in its entirety, not solely as applied to the centers where Plaintiffs are enrolled. *See Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989) (invoking the "[t]raditional administrative law principle" that "[w]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed"); ECF 53 ("Under this Circuit's precedent, the scope of relief under the APA is not party-restricted." (citing *Nat'l Mining Ass'n*, 145 F.3d at 1409)).

DOL's opposition memorandum fails to respond to Plaintiffs' vacatur argument or to address remedy at all. "It is well-settled that 'where a party fails to respond to arguments in opposition papers, the Court may treat those specific arguments as conceded.'" *Campaign Legal Ctr. v. FEC*, 520 F. Supp. 3d 38, 50 (D.D.C. 2021) (quoting *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 58 (D.D.C. 2012)). The Court should do so here—particularly given that this is the *second* time in this case that DOL failed to respond to arguments about remedy. In moving for preliminary relief, Plaintiffs asked the Court to issue a stay pursuant to 5 U.S.C. § 705 that would apply universally—an argument that DOL failed to respond to in its opposition. Nonetheless, the Court allowed DOL to provide a supplemental brief given the then-recent decision in *Trump v. CASA*, 606 U.S. 831 (2025). *See* July 9, 2025 Hearing Trans. 69:20 (Court's comment to DOL counsel: "I don't understand why you didn't respond at all to [Plaintiffs' §] 705 argument."); *id.* 72:16 (Court noting "normally, [it] would agree" with Plaintiffs that DOL's failure to respond to

14

an argument raised constitutes forfeiture). DOL's failure to address remedy is even more glaring given the Court's December 17, 2025 Order denying Plaintiffs' motion for class certification without prejudice where it noted that "the merits on summary judgment and the scope of any permanent relief are closely intertwined." Dec. 17, 2025, Minute Order.

As to the questions raised by the Court's Minute Order, based on DOL's failure to dispute that universal vacatur is the appropriate remedy in this case, Plaintiffs do not intend to file a renewed motion for class certification because all putative class members will be provided complete relief by that remedy. *See O.A. v. Trump*, 404 F. Supp. 3d 109, 154 (D.D.C. 2019) (noting that it is "unclear that class certification will serve any significant purpose" where a court has vacated the challenged agency action); *Sargent v. Block*, 576 F. Supp. 882, 888 (D.D.C. 1983) (finding class certification unnecessary where "the relief sought by the named plaintiffs would benefit all proposed class members"). The Supreme Court's decision in *CASA* does not make class certification necessary; to the contrary, the Court there explicitly did not address vacatur under the APA. *CASA*, 606 U.S. at 847 n.10; *see Make the Rd. N.Y. v. Noem*, No. 25-5320, 2025 WL 3563313, at *34 (D.C. Cir. Nov. 22, 2025) (statement of Millett, J. and Childs, J.) ("*CASA* is not a case about the scope of relief for agency review authorized by the APA."); *see also A.C.R. v. Noem*, __ F. Supp. 3d __, No. 25-CV-3962 (EK) (TAM), 2025 WL 3228840, at *18 (E.D.N.Y. Nov. 19, 2025) ("Class certification is unnecessary for purposes of seeking a stay and eventual vacatur APA Sections 705 and 706." (citing *CASA*, 606 U.S. at 847 n.10)). If, despite DOL's concession, the Court concludes that vacatur is not an appropriate remedy, Plaintiffs request the opportunity to renew their class certification motion.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for summary judgment on each of their claims, deny Defendants' cross-motion for summary judgment, and vacate the Department's May 29, 2025 suspension of Job Corps center operations.

Dated: February 27, 2026

Respectfully submitted,

/s/ Adam R. Pulver
Adam R. Pulver (DC Bar No. 1020475)
Michael T. Kirkpatrick (DC Bar No. 486293)
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

Arthur Ago (DC Bar No. 463681)
Aaron S. Fleisher[*][†] (NY Bar No. 4431052)
Southern Poverty Law Center
1101 17th St. NW
Washington, DC 20036

Scott D. McCoy[*] (FL Bar No. 1004965)
Sam Boyd[*] (FL Bar No. 1012141)
Carli Raben[*] (FL Bar No. 1036013)
Southern Poverty Law Center
2 S. Biscayne Blvd. Ste. 3200
Miami, FL 33131

Michael Tafelski[*] (GA Bar No. 507007)
Diego A. Soto[*] (DC Bar No. 1029607)
Southern Poverty Law Center
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030

*Counsel for Plaintiffs*

[*] *Admitted* pro hac vice

[†] *Not admitted to practice law in DC*