**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ANARIA CABRERA, et al.,

     *Plaintiffs,*

     v.

U.S. DEPARTMENT OF LABOR, et al.,

     *Defendants*.

Civil Action No. 25-1909-DLF

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 3

I.      The Tucker Act Divests This Court of Jurisdiction ............................................................ 3

II.     Plaintiffs' APA Claims Fail ............................................................................................... 7

        A.      Plaintiffs' APA claims should be dismissed because there are adequate
                alternative remedies available (Claims 1-5). ........................................................ 7

        B.      The Department was not mandated to follow any procedure to pause Job
                Center operations (Claim 1). ................................................................................... 8

        C.      The Department did not violate a statutory or regulatory prohibition when
                it paused operations at the privately run Job Corps centers (Claim 2). ................ 10

        D.      The Department did not exceed its statutory authority (Claim 4). ....................... 12

        E.      The Department's decision to pause centers was not arbitrary and
                capricious (Claim 3). ............................................................................................. 13

        F.      The Department did not violate appropriations law (Claim 5). ............................ 16

CONCLUSION .............................................................................................................................. 16

**TABLE OF AUTHORITIES**

**Cases**

*Aliceville Hydro Assocs. v. FERC,*
800 F.2d 1147 (D.C. Cir. 1986) ................................................................................ 9

*Am. Radio Relay League, Inc. v. FCC,*
524 F.3d 227 (D.C. Cir. 2008) ............................................................................... 14

*Ass'n for Educ. Fin. & Pol'y v. McMahon,*
No. 25-CV-999 (TNM), 2026 WL 523023 (D.D.C. Feb. 25, 2026) ..................... 5, 6

*Block v. Cmty. Nutrition Inst.,*
467 U.S. 340 (1984) ............................................................................................ 7, 8

*Bowen v. Massachusetts,*
487 U.S. 879 (1988) ............................................................................................... 7

*City of Brookings Mun. Tel. Co. v. FCC,*
822 F.2d 1153 (D.C.Cir.1987) ............................................................................. 14

*Farmers Union Cent. Exch., Inc. v. Fed. Energy Regul. Comm'n,*
734 F.2d 1486 (D.C. Cir. 1984) ........................................................................... 14

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.,*
460 F.3d 13 (D.C. Cir. 2006) ........................................................................... 8, 12

*Glob. Health Council v. Trump,*
153 F.4th 1 (D.C. Cir. 2025) ................................................................................ 16

*Inv. Co. Inst. v. U.S. Commodity Futures Trading Comm'n,*
891 F. Supp. 2d 162 (D.D.C. 2012) ..................................................................... 13

*Massachusetts v. NIH,*
164 F.4th 1 (1st Cir. Jan. 5, 2026) .......................................................................... 6

*Megapulse, Inc. v. Lewis,*
672 F.2d 959 (D.C. Cir. 1982) ............................................................................... 4

*Nat'l Ass'n of Home Builders v. EPA,*
682 F.3d 1032 (D.C. Cir. 2012) ........................................................................... 13

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n,*
606 U.S. ---, 145 S. Ct. 2658 (2025) .................................................................. 3, 6

*Oceana, Inc. v. Evans,*
384 F. Supp. 2d 203 .............................................................................................. 14

*Planned Parenthood of Greater N.Y. v. HHS,*
No. 25-CV-2453 (BAH), 2025 WL 2840318 (D.D.C. Oct. 7, 2025) ...................... 6

*Spectrum Leasing Corp. v. United States,*
764 F.2d 891 (D.C. Cir. 1985) ............................................................................... 6

*V.I. Hous. & Fin. Auth. v. Fed. Emergency Mgmt. Agency,*
728 F. Supp. 3d 17 (D.D.C. 2024) ..................................................................... 2, 8

*V.I. Hous. & Fin. Auth. v. Fed. Emergency Mgmt. Agency*,
151 F.4th 409 (D.C. Cir. 2025) ........................................................... 2

*Window Covering Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
82 F.4th 1273 (D.C. Cir. 2023) .......................................................... 13

**Statutes**

5 U.S.C. § 704........................................................................................ 7

28 U.S.C. § 1491 .................................................................................... 8

29 U.S.C. § 3197(a)(1)...................................................................4, 11, 12

29 U.S.C. § 3197(c) .............................................................................11

29 U.S.C. § 3198(a) .............................................................................11

29 U.S.C. § 3209(j) ............................................................................... 5

Workforce Innovation and Opportunity Act,
29 U.S.C. §§ 3191-3212 ............................................................. *passim*

**Regulations**

48 C.F.R. 52.249-1 ............................................................................. 13

48 C.F.R. § 52.249-2 ..................................................................... 1, 2, 12

48 C.F.R. § 52.249-2(a)....................................................................... 10

**INTRODUCTION**

Plaintiffs' claims are premised on framing the actions of the Department of Labor as a plan to close the Job Corps Program. But the only final agency action taken by the Department was the cancellation[1] of contracts for the privately operated Job Corps Centers, which allowed the Administration an opportunity to evaluate the Job Corps Program consistent with the Administration's priorities. AR1068-79. Because the only action taken by the Department, and the action challenged here, is the termination of contracts, these claims should be channeled under the Tucker Act; Plaintiffs' motion for summary judgment should be denied; and Defendants' motion for summary judgment granted.

The Department "determined that continued performance of the current Job Corps Center operations contracts is not in the Department's best interest." AR1070. Accordingly, pursuant to its authority to cancel contracts, 48 C.F.R. § 52.249-2, the Department decided that "all current [Job Corps Center] operator contracts should be terminated on an immediate basis." AR1069-71. Rather than state that this was the first step to close the program, the Department's decisionmaking at the time explicitly did not include "any future plans for the program" and instead reflected that "this action will provide DOL leadership an opportunity to assess the Job Corps program's alignment with the Administration's workforce priorities." AR1070.

Plaintiffs rely on undated, unsigned memoranda detailing plans to close the Job Corps Program. But these memoranda do not reflect the actual decision made by the Department, which was to cancel all current Job Corps Center operator contracts. AR1069. In short, Plaintiffs theory

---

[1] The Department terminated some contracts (effective June 30, 2025), extended current contracts to end on June 30, 2025, or did not extend contracts beyond June 30, 2025. Defendants use the terms "cancellation" or "termination" of contracts throughout the brief to collectively refer to these actions.

of "closure" turns on actions not taken by the Department. And Plaintiffs are unable to challenge any future, even considered but not taken action by the Department.

As a result, Plaintiffs cannot succeed in framing their claims as a challenge to the Department's closure of the Job Corps centers in violation of the Workforce Innovation and Opportunity Act ("WIOA"). 29 U.S.C. §§ 3191-3212. Rather, their claims are essentially contract claims, and this Court does not have jurisdiction under the Tucker Act. And due to the availability of the Tucker Act, Plaintiffs have alternate relief, barring their Administrative Procedure Act (APA) claims. Plaintiffs speculate that they may not have standing in the Court of Federal Claims, but even if Plaintiffs are foreclosed from relief in that court, that would not entitle them to relief under the APA. *V.I. Hous. & Fin. Auth. v. Fed. Emergency Mgmt. Agency*, 728 F. Supp. 3d 17, 30 (D.D.C. 2024), *aff'd sub nom. V.I. Hous. Fin. Auth. v. Fed. Emergency Mgmt. Agency,* 151 F.4th 409 (D.C. Cir. 2025) (holding that plaintiffs' APA claim was barred because the Federal Arbitration Act (FAA) provided alternative relief and also holding that Plaintiffs were barred from receiving that alternative FAA relief).

Even if the Court were to reach Plaintiffs' APA claims, each of Plaintiffs claims is based on the "closure" of Job Corps centers. But as detailed in Defendants' opening brief, ECF 89-1 at 19-23, the Department did not close the centers; it merely cancelled contracts. AR1069-70. In contrast, to close the centers, the Department recognized that it must "publish a Federal Register Notice as required by WIOA sec.159 providing advance notice of center closures." AR1081. To the extent Plaintiffs' claims are predicated on a "closure," they necessarily fail.

Plaintiffs' APA challenges—that the cancellation of Job Corps Center contracts is contrary to law and arbitrary and capricious—fail on the merits. The Department has the authority to cancel contracts. 48 C.F.R. § 52.249-2. In doing so, the Department considered the relevant factors for

2

whether the centers should continue operating: cost and participant outcomes. AR1097-1104. That the Department did not provide explanations for non-viable and non-significant alternatives does not make the action taken arbitrary and capricious, and the Department considered reliance interests by explicitly providing transition services for students. *See* Matz Decl. at Exs. 3-5. Accordingly, the Court should defer to the Department's judgment.

Finally, Plaintiffs bring an Impoundment Control Act (ICA) that under binding D.C. Circuit authority, fails. This Court therefore should enter judgment in the Department's favor on that claim as well.

Accordingly, the Court should deny Plaintiffs' Motion for Summary Judgment, grant Defendants' Motion for Summary Judgment, and enter judgment in the Government's favor.

## ARGUMENT

### I.     The Tucker Act Divests This Court of Jurisdiction

Plaintiffs seek specific performance of the contracts for each Job Corps center—a contract remedy. ECF 1, Compl., Prayer for Relief. Plaintiffs portray their request as vacating the Department's decision. But their Complaint asks the Court to reinstate the terminated contracts. Compl., Prayer for Relief (asking the Court to "[s]et aside the termination of the contracts for the 99 Job Corps centers," "[e]njoin Defendants' efforts to close the 99 Job Corps centers, and order Defendants to take steps necessary to resume the functioning of the 99 Job Corps centers and Job Corps program operations"). In asking the Court to vacate the Department's decision to "terminate[] [] the contracts," the Plaintiffs' position would compel the Department to continue contract services and payments terminated by the contract cancellations. *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. ---, 145 S. Ct. 2658, 2664 (2025) (Gorsuch, J. concurring) ("An order vacating the government's decision to terminate grants under the APA is in every meaningful

sense an order requiring the government to pay those grants."). Accordingly, the claims implicate the Tucker Act.

The parties agree that the operative test is the *Megapulse* test. ECF 91 at 3. Determining whether "a particular action" is "at its essence a contract action" not within the jurisdiction of the district court requires looking at the two *Megapulse* factors: "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982).

As stated in Defendants' opening brief, the source of the rights Plaintiffs assert are the contracts themselves. ECF 89-1 at 16. The Department provided the services demanded by Plaintiffs via contracts with Job Corps center operators. 29 U.S.C. § 3197(a)(1)(A). But for the contracts to operate Job Corps centers, Plaintiffs would not receive the specific benefits they want reinstated, including their specific training opportunities and resources.

Plaintiffs argue that their "rights exist independently of any contract between DOL and the Job Corps centers." ECF 91 at 3. But Plaintiffs' request belies that intent. Plaintiffs are not seeking to vindicate their rights to Job Corps program services, they are seeking to vindicate the contractual rights of the Job Corps operators by having their contracts reinstated and for the operators to operate the Job Corps program under those contracts exactly as they previously did. Compl., Prayer for Relief. (asking the Court to "[s]et aside the termination of the contracts for the 99 Job Corps centers," "[e]njoin Defendants' efforts to close the 99 Job Corps centers, and order Defendants to take steps necessary to resume the functioning of the 99 Job Corps centers and Job Corps program operations"). These rights are only available via the specific contracts for those specific Job Corps centers, making Plaintiffs rights grounded in the contracts, not the WIOA.

Plaintiffs concede that they do not have the right to "*these* Job Corps centers operated by

*these* contractors." ECF 91 at 3-4. But they maintain that they have "statutory rights" in the "continued provision of services." *Id.* But the services to which Plaintiffs assert they are entitled are provided via contract, therefore, the rights they seek are based on the services promised by contract, not statute.

Although the Court found that Plaintiffs were "assert[ing] that DOL violated *statutory* mandates by failing to comply with WIOA's procedural requirements" rather than asserting contractual rights, ECF 53 at 6-7, their filings do not reflect Plaintiffs' interest in participating in the WIOA's regulatory process. Thus, Plaintiffs have neither asked the Court to order the Department to follow WIOA's notice-and-comment procedures nor have they complained that they were not afforded the opportunity to comment. 29 U.S.C. § 3209(j). Rather, Plaintiffs ask the Court to reinstitute contracts and resume functioning of the 99 Job Corps centers—and those Job Corps centers would only "resume functioning" pursuant to the provisions of the terminated contracts. *See* Compl., Prayer for Relief (asking the Court to "[s]et aside the termination of the contracts for the 99 Job Corps centers," "[e]njoin Defendants' efforts to close the 99 Job Corps centers, and order Defendants to take steps necessary to resume the functioning of the 99 Job Corps centers and Job Corps program operations").

This case, then, is unlike *Ass'n for Educ. Fin. & Pol'y v. McMahon (AEFP II)*, No. 25-CV-999 (TNM), 2026 WL 523023 (D.D.C. Feb. 25, 2026), invoked by Plaintiffs. ECF 91 at 4. In *AEFP II*, the Court denied Tucker Act arguments because

> the Department "*could*" resume these functions "through new contracts, but they also could choose to operate the studies and the peer-review program in-house or through grants or cooperative agreements." Assoc. Opp'n at 32, ECF No 35 (emphasis in original); Acad. Opp'n at 35, ECF No. 33 (Plaintiffs "challenge Defendants' failure to comply (by whatever means) with statutory mandates ...."). Any of these options would redress Plaintiffs' injuries, so their challenge amounts to more than a contract claim and thus does not require the Court of Claims. Mischaracterizing Plaintiffs' challenge will not defeat this Court's jurisdiction.

2026 WL 523023, at *9. Here, however, the Plaintiffs are seeking reinstatement of specific Job Corps Center contracts, rather than an order requiring Defendants to comply with the statutory notice-and-comment process for center closures.

As to the second *Megapulse* factor, Plaintiffs seek specific performance of the Job Corps center contracts. Plaintiffs ask the Court to "[s]et aside the termination of the contracts for the 99 Job Corps centers," "[e]njoin Defendants' efforts to close the 99 Job Corps centers, and order Defendants to take steps necessary to resume the functioning of the 99 Job Corps centers and Job Corps program operations."  Compl., Prayer for Relief. Thus, Plaintiffs "seek[] the classic contractual remedy of specific performance." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985). Plaintiffs state that they "seek vacatur," ECF 91 at 4, but the Supreme Court recognized "[a]n order vacating the government's decision to terminate grants under the APA is in every meaningful sense an order requiring the government to pay those grants." *NIH*, 145 S. Ct. at 2664 (Gorsuch, J. concurring).

Plaintiffs argue that Justice Barrett's concurrence in *NIH* should control, which allows challenges to both grant terminations and guidance underlying those terminations. ECF 91 at 4 (citing *NIH*, 145 S. Ct. at 2661-62). But Justice Barrett was clear that "plaintiffs' challenges to the grant terminations belong in the CFC, and their APA challenges to the guidance belong in district court." *NIH,* 145 S. Ct. at 2662 (Barrett, J. concurring). Courts have relied on that concurrence to uphold challenges to guidance and policies, not contract cancellations. *See Massachusetts v. NIH*, 164 F.4th 1, 11 (1st Cir. Jan. 5, 2026) (not channeling challenge to an agency policy to apply a reimbursement rate); *Planned Parenthood of Greater N.Y. v. HHS*, No. 25-CV-2453 (BAH), 2025 WL 2840318, at *13 (D.D.C. Oct. 7, 2025) (not channeling challenges to grant requirements). Here, Plaintiffs are not challenging any "guidance" promulgated by the Department of Labor or

6

"requirements" for Job Corps centers: they challenge the termination of the contracts providing services at Job Corps centers. Thus, under Justice Barrett's concurrence, their claims should be channeled to the Court of Federal Claims.

Finally, Plaintiffs argue that, because they are not parties to the contract, they cannot sue for specific performance. ECF 91 at 4-5. This may be true as third-party beneficiaries to these contracts, but not every set of plaintiffs can bring every type of claim. *See Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 346-47 (1984) (holding dairy consumers were not entitled to any relief). And no case cited by Plaintiffs, and certainly not *Megapulse*, examines whether the plaintiff could ultimately prevail in the Court of Federal Claims. ECF 91 at 5. The Court should not consider whether Plaintiffs have standing to assert contractual rights, and instead focus on the *Megapulse* factors, which directs channeling Plaintiffs' claims.

## II. Plaintiffs' APA Claims Fail

### A. Plaintiffs' APA claims should be dismissed because there are adequate alternative remedies available (Claims 1-5).

Review under the APA is available only where "there is no other adequate remedy in a court." 5 U.S.C. § 704. The requirement that a plaintiff have "no other adequate remedy in a court," *id.*, reflects that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). Plaintiffs reiterate their arguments that their claims are not contractual, so they do not have Tucker Act remedies. ECF 91 at 6. But as discussed above and in Defendants' opening brief, ECF 89-1 at 13-19, this action is, in essence, a contract action, and there are Tucker Act remedies available.

Plaintiffs argue that APA remedies are displaced only where the alternative remedy is of the "same genre" as that sought by plaintiffs. ECF 91 at 5. Although true the Tucker Act typically

only allows for money damages, Congress established those limited remedies for breach of contract with the Government. *See generally* 28 U.S.C. § 1491. It would be odd if a plaintiff could evade those restrictions on contract remedies by styling their claims as APA claims when Congress specifically intended to foreclose other forms of relief. *Block*, 467 U.S. at 346-47  (holding dairy consumers could not bypass Congressional scheme for market order challenges restricted to dairy producers and receive relief dairy producers were not entitled to). Similarly, that Plaintiffs might be foreclosed from relief in the alternative avenue does not entitle them to maintain APA claims. *V.I. Hous. & Fin. Auth*, 728 F. Supp. 3d at 30 (holding that plaintiffs' APA claim was barred because the Federal Arbitration Act (FAA) provided alternative relief and also holding that Plaintiffs were barred from receiving that alternative FAA relief).

**B.      The Department was not mandated to follow any procedure to pause Job Center operations (Claim 1).**

Each of Plaintiffs' APA claims is premised on a non-existent factual predicate, namely, that the Department "closed" the Job Corps centers. Instead, the Department merely exercised its right to terminate its contracts with operators of Job Corps centers in order to determine how to proceed with the program. The only action taken by the Department at the time this challenge was brought was the cancellation of these contracts.

Plaintiffs argue that the agency decided to close the centers and thus failed to follow the proper procedure for closing the centers. The Department's actual decision, however, was that "all current [Job Corps Center] operator contracts should be terminated on an immediate basis." AR1070. Plaintiffs attach undue significance to an unsigned memorandum detailing plans to close the centers. "[P]lans themselves are generally unreviewable; it is only specific actions implementing the plans that are subject to judicial scrutiny." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 21 (D.C. Cir. 2006). And here, the only specific action implemented

was the cancellation of contracts. There is no avenue for Plaintiffs to challenge any alleged "future intention" of the agency. *Id.*

Plaintiffs argue that "close" can mean a temporary pause, so the Department's pause of the Job Corps centers would constitute a closure. ECF 91 at 6-7. But this interpretation does not square with past Department practice and would create absurd results. It is undisputed that the Department has previously paused centers where the center suffered damage from natural disasters and that the Department has resumed operations at previously paused centers when circumstances allowed resumption of operations. *See* McGee Decl., Ex. 1 and Ex. 4. Under Plaintiffs' interpretation, these pauses would be "closures"—requiring notice-and-comment procedures. And the Department would have to continue operating a hurricane-damaged center notwithstanding the safety and security risks that it would create. Plaintiffs argue that the Department's past practice of pausing centers has no bearing on this case. ECF 91 at 7. But "agency practices consistently followed for long periods of time may be entitled to judicial deference." *Aliceville Hydro Assocs. v. FERC*, 800 F.2d 1147, 1151 (D.C. Cir. 1986). The Department has previously paused centers that were non-functional due to natural disasters. *See* McGee Decl., Ex. 1 and Ex. 4; Matz Decl., Ex. 8 (Hurricane Maria) and Ex. 9 (Hurricane Irma). Additionally, the Department has either resumed operations at previously paused centers or permanently closed them according to WIOA's provisions. McGee Decl. ¶ 12 and Ex. 7 (describing the resumption of operations at two of the three paused hurricane-damaged centers in Puerto Rico and the closure of the third).

Here, the Department found that the program was in a "financial crisis" and remained a "high risk of violating the Anti-deficiency Act." AR214-215. To address that crisis the Department terminated its operations contracts thereby pausing operations at impacted centers. AR1070. Plaintiffs portray that decision as the first step of an intention to close the centers. ECF 91 at 7-8.

But elsewhere, Plaintiffs characterize the pause as the closure. ECF 79-1 at 19 ("Under the statutory text and context, DOL's directive 'closed' the 99 Job Corps centers without undertaking that process."). Both cannot be true. If Plaintiffs' theory is that the pause was the first step in an intention to close the centers, then Plaintiffs are not challenging any closure, and thus their closure-related claims fail.

Plaintiffs also argue that there is no mechanism to open any center, so the inability to reopen a closed center does not support distinguishing between a closed center and a paused center. ECF 91 at 7. But Plaintiffs fail to grapple with Defendants' argument: a paused center continues to exist as a Job Corps center until operations fully resume or it is closed in accordance with WIOA requirements, and operations can be restarted by procuring an operator to operate the center.  In contrast, closing a center is a final decision on the status of the center, taking into account the closure criteria used to justify closure and including the appropriate corresponding action to dispose of the real property. AR191. "Reopening" a center would require reversing the closure decision and may require, among other things, re-establishing a physical location for the center. Thus, there is a meaningful difference between a pause via a contract termination and a closure.

Based on the plain text and prior Department practice, the challenged action is not a closure subject to the WIOA's notice-and-comment requirements. Accordingly, the Department is entitled to judgment in its favor on Count I.

    **C.**    **The Department did not violate a statutory or regulatory prohibition when it paused operations at the privately run Job Corps centers (Claim 2).**

The Department acted within its contractual rights when it terminated its Job Corps contracts for convenience. 48 C.F.R. § 52.249-2(a). ("The Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer

10

determines that a termination is in the Government's interest . . . by delivering to the Contractor a Notice of Termination specifying the extent of termination and the effective date.").

Plaintiffs argue that the Department failed to "establish" and "use" specific written criteria to determine when a center is "to be closed and how to carry out such closure," and further that the Department failed to respond to that argument. ECF 91 at 8. Defendants did respond: "Plaintiffs attempt to point to several different provisions of WIOA to argue that the Department acted contrary to law, but these arguments are premised on the Department's action constituting a 'closure' of the Job Corps centers." ECF 89-1 at 23. And as the Department explained, it did not "close" job centers. *Id.* at 19-23. Thus, the Department did not need to follow statutory requirements for closures because it terminated its services contracts.

Plaintiffs also argue that "29 U.S.C. § 3197(c) requires each center to be 'operated' in a particular manner, and 29 U.S.C. § 3198(a) requires each center to provide certain services to Plaintiffs and other enrollees," ECF 91 at 9, and that Defendants' policy disagreements are not a basis to fail to deliver statutory services. *Id.* These sections cited by Plaintiffs, 29 U.S.C. § 3197(c) and 29 U.S.C. § 3198(a), only require services to be provided to enrollees. If a center's contract is terminated, that particular center is not available to serve enrollees. The Department does not violate these statutory sections under those circumstances. And the Department's decision is not properly characterized as a policy disagreement. The Department reasonably concluded that the program, as operated by the contractors, was "not helping students achieve intended outcomes or keeping them safe." AR1063. It was entirely reasonable for the Department to cancel their contracts.

Plaintiffs also miss the mark in interpreting 29 U.S.C. § 3197(a)(1), to mean Defendants must enter into agreements and operationalize each Job Corps center. ECF 91 at 9. That provision

11

simply requires the Department to enter into agreements for the operation of each Job Corps center, *if the Department is operationalizing that Job Corps center*. The statute is silent as to whether the Department is required to make any particular Job Corps center operational, and it does not prescribe the number of centers the Department must operate as a part of the Job Corps program; it only requires that if a Job Corps center is open, it is operationalized through agreements. 29 U.S.C. § 3197(a)(1)

Finally, Plaintiffs agree that the USDA-operated centers are operational but argue that the Department had an intention to close these centers as well. ECF 91 at 10. Plaintiffs point to an unsigned memorandum as the support for this intention, *id.* (citing AR1087-88). But this memorandum is not the decision—the decision presented to and ultimately adopted by the Department was the termination of the Job Corps center contracts. AR1069 ("Staff, please see below the written directive from Jihun Han, Chief of Staff (OSEC) to move forward in terminating center operations contracts."). Further, this very same unsigned memorandum provides as a part of its operational plan to pause Job Corps center operations that the "24 USDA sites will not be included in this plan." AR1080. There is no evidence in the record that the Department made the final decision to terminate the USDA operated centers. Even if there was a plan to terminate these centers at some point, Plaintiffs cannot challenge that plan. *Fund for Animals*, 460 F.3d at 21 ("[P]lans themselves are generally unreviewable; it is only specific actions implementing the plans that are subject to judicial scrutiny.").

Accordingly, the Department is entitled to judgment on Claim 2.

### D.    The Department did not exceed its statutory authority (Claim 4).

The Department has the authority to end contracts for convenience by providing notice or allowing contracts to expire without extension. *See, e.g.*, 48 C.F.R. § 52.249-2. ("The Government may terminate performance of work under this contract in whole or, from time to time, in part if

the Contracting Officer determines that a termination is in the Government's interest . . . by delivering to the Contractor a Notice of Termination specifying the extent of termination and the effective date."). And it is undisputed that the Department "notified [contractors] that the [Job Corps Center] contract[s] [are] being terminated completely for the Government's convenience in accordance with contract clause FAR 52.249-1." *See, e.g.*, AR1493.

Plaintiffs' recharacterization of the Department's decision is at odds with the Department's announcement, AR1077 ("This is a pause of operations across 99 non-federally operated Job Corps centers . . . We are not eliminating Job Corps."), and thus Plaintiffs cannot evade the conclusion supported by the record, namely, that Plaintiffs' issue is with the contract terminations themselves, which the Department has the express authority to do.

Accordingly, the Department is entitled to judgment on Claim 4.

### E.    The Department's decision to pause centers was not arbitrary and capricious (Claim 3).

The Department's decision to terminate its contracts and thereby pause operations at the impacted Job Corps centers was based on the financial difficulties associated with the program and poor student outcomes and therefore was not arbitrary and capricious. AR1087-1104. The parties agree that the financial condition of the program is a relevant factor, ECF 91 at 11, and the Court should defer to the agency's decisionmaking. *See Window Covering Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 82 F.4th 1273, 1288 (D.C. Cir. 2023) ("[C]ost-benefit analyses epitomize the types of decisions that are most appropriately entrusted to the expertise of an agency." (citation omitted)); *Inv. Co. Inst. v. U.S. Commodity Futures Trading Comm'n*, 891 F. Supp. 2d 162, 220 (D.D.C. 2012) ("This Court adheres to long-standing precedent, however, that it must 'review [an agency's] cost-benefit analysis deferentially." (quoting *Nat'l Ass'n of Home Builders v. EPA*, 682 F.3d 1032, 1040 (D.C. Cir. 2012))).

13

Plaintiffs raise three issues with the Department's decisionmaking: 1) it did not adequately consider and explain its rejection of less drastic and disruptive measures to deal with the financial difficulties of the program, 2) it did not consider factors such as the impact to students, the inefficiency of shutting down the program midyear, and the inability of centers to provide meaningful transition services, and 3) the reliance interest of students. ECF 91 at 10.

As to the first, the parties agree that the Department did consider alternatives to pausing the Job Corps centers. ECF 79-1 at 26. Plaintiffs' complaint is that the Department did not provide "*meaningful* consideration of alternatives." ECF 91 at 11. But that concedes that the Department considered alternatives, which all that is required. *Oceana, Inc. v. Evans*, 384 F. Supp. 2d 203, 241 (D.D.C.) ("[A]gencies have a duty to consider 'significant and viable alternatives'" (quoting *City of Brookings Mun. Tel. Co. v. FCC,* 822 F.2d 1153, 1169 (D.C.Cir.1987))). And the Department's explanation for rejecting those alternatives is implicit in its explanation for its decision: terminating the contracts would "provide DOL leadership an opportunity to assess the Job Corps program's alignment with the Administration's workforce priorities," AR1070, whereas other options would not. Plaintiffs' preference for an alternative not chosen is not basis for this Court to substitute their judgment for the Department's.

Plaintiffs also argue that the Department failed to explain why it did not pursue alternatives. ECF 91 at 11-12. But the Department was not required to explain its rejection of every proposed alternative—only "'significant and viable' alternatives." *Am. Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 242 (D.C. Cir. 2008) (quoting *Farmers Union Cent. Exch., Inc. v. Fed. Energy Regul. Comm'n*, 734 F.2d 1486, 1511 n.54 (D.C. Cir. 1984)).

As for any alleged inefficiencies or inabilities to provide transition services, the record is devoid of any evidence that a Job Corps center would have been unable to transition students. To

the contrary, the Department ensured that Job Corps participants were provided with transition resources and assistance. For example, the Notices of Termination attached a document setting forth the contracting officer's Orders Regarding Orderly Shutdown of Center Operations that instructed center operators to take all necessary steps to ensure students are safely separated and transported to their homes of record. *See* Matz Decl. at Exs. 3-5 ("Center Operator must take all necessary steps to ensure students are safely separated and transported to their home of record.") Those instructions were subsequently clarified by email dated June 1, 2025, in which the Department explained that "[t]he paramount consideration is the safety and well-being of students on center . . . there is no hard deadline for transferring students to their home of record, especially where their safety and well-being are concerned. We want to reiterate that [the Department] defer[s] to center operators regarding the length of time necessary to ensure that this transition is as safe and supportive as it can be in these circumstances." *Id*. These measures clearly were designed to reduce the impact on students and address any reliance interests, as Plaintiffs suggest were needed.

Moreover, the Department's notices to contractors directed them to register each student with the American Job Center nearest to his or her home of record and to register each student with his or her home state's Labor Exchange system as well as to discuss with each student the "Authorization to Share Job Corps Student Records for Program Eligibility" form. *See id.* at Exs. 6-7. "By signing, the student grants the Department of Labor permission to disclose certain information contained in the Job Corps Student Personnel File to assist students in identifying additional job placement, training, educational and other supportive services." *See id*. Through its "FAQs," the Department stated "[a]ll students [would] be connected with the resources they need to succeed as this transition takes place." *Id.* The FAQs also informed students of the Department's

intent to create a student resource page on the agency's website with links to other job opportunities. AR1078. Participants additionally would have received an eligibility determination for YouthBuild and WIOA youth programs offered at the state and local levels and would have been offered apprenticeship and Pell grant opportunities. *See* McGee Decl., Ex. 4; Frazier Decl. ¶ 5.

Finally, Plaintiffs argue that the Department's explicit goal to "assess the Job Corps program's alignment with the Administration's workforce priorities" via the pause was a decision to eliminate the Job Corps program. ECF 91 at 12. This just recycles Plaintiffs' arguments that the Department closed the Job Corps program, which it did not. *See supra* at Section II.A. And because the Department did not close the Job Corps program, it did not "disagree with Congress's expressly codified policy choice," ECF 91 at 12, and thus did not act arbitrarily or capriciously.

Accordingly, the Department is entitled to judgment on Claim 3.

### F.    The Department did not violate appropriations law (Claim 5).

Plaintiffs' fifth claim, which is predicated on the Department's alleged violation of the ICA, fails under *Global Health*. *See Glob. Health Council v. Trump*, 153 F.4th 1, 17 (D.C. Cir. 2025) ("[T]he grantees have no cause of action to undergird their claim that the defendants have acted contrary to law by violating the ICA"). Plaintiffs agree that their claim is barred. ECF 91 at 13. Accordingly, the Department is entitled to judgment on Claim 5.

### CONCLUSION

For the foregoing reasons, the Court should enter judgment in the Department's favor.

DATED: March 27, 2026                    Respectfully submitted,

                                         BRETT A. SHUMATE
                                         Assistant Attorney General

16

JACQUELINE COLEMAN SNEAD
Assistant Branch Director

*/s/ Michael Bruns*
Michael Bruns
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
michael.bruns@usdoj.gov

*Counsel for Defendants*

17